Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BOUVY,<br><br>          Plaintiff,<br><br>  v.<br><br>ANALOG DEVICES, INC., a Massachusetts company, as successor to LINEAR TECHNOLOGY CORPORATION; LINEAR TECHNOLOGY LLC, a Delaware company; LINEAR TECHNOLOGY ADMINISTRATIVE COMMITTEE; and DOE DEFENDANTS 1 – 20;<br><br>          Defendants. | Case No.: 19-cv-00881-DMS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**Violations of the Employee Retirement Income Security Act of 1974**<br><br>**Judge**: Honorable Dana M. Sabraw<br>**Courtroom**: 13A<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Michael Bouvy, by and through his attorneys, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys:

### NATURE OF THE ACTION

1.     This is a class action brought on behalf of participants in the Linear Technology 401(k) Plan (the "Plan") against Defendants (defined herein) for violations of their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA").

2.   Plaintiff was a participant in the Plan during the Class Period (defined below). Plan participants are limited to the investment options selected for the Plan by its fiduciaries. Defendants are "fiduciaries," as that term is defined under 29 U.S.C. § 1002(21)(A), with a duty to act solely in the interest of the Plan's participants and beneficiaries (the duty of loyalty) and to exercise the required skill, care, prudence, and diligence in administering the Plan and Plan assets (the duty of prudence).

3.     Plaintiff's claims arise in large part from Defendants' breach of their duties of loyalty and prudence to the Plan and its participants and beneficiaries by failing to diligently evaluate and monitor the investment options in its portfolio for both performance and cost. As indicated below, the funds selected and retained by Defendants had fees that were often multiples higher than the amounts they should have been. In failing to review the investment options and make changes in a timely manner, Defendants caused participants to pay excessive and unreasonable fees, costing millions of dollars of losses in their retirement savings.

4.     Specifically, Plaintiff alleges in Count I that Defendants breached their fiduciary duties by: (1) failing to adequately review the investment portfolio of the Plan to ensure that each investment option was prudent, both in cost and performance; (2) failing to assess how the lower cost share class equivalents of the Plan's mutual funds could be used to avoid the Plan's excessive fees; and (3) failing to remove higher-cost, underperforming investment options when lower-cost alternative investments were known (or should have been known) and were readily

available on the market.

5.     Plaintiff alleges in Count II that Defendants breached their fiduciary duties by failing to adequately review the Plan's total costs to ensure that the fees paid to service providers were not unreasonable or excessive.

6.     Plaintiff alleges in Count III that Defendants breached their fiduciary duties by failing to provide adequate disclosures to participants regarding the fees paid to service providers.

7.     Plaintiff alleges in Count IV that Defendants engaged in prohibited transactions by causing the Plan to enter into transactions where a service provider charged excessive fees or compensation and/or received the direct or indirect lending of money and use of Plan assets by or for its own benefit at the expense of Plan participants.

8.     Plaintiff alleges in Count V that certain Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration of the Plan's assets was delegated, despite the fact that such Defendants knew or should have known that such other fiduciaries were failing to manage the Plan in a prudent and loyal manner.

9.     Defendants' failure to rein in the Plan's costs caused significant losses to Plaintiff and the class members. As a result of Defendants' fiduciary breaches, the Plan has incurred substantial damages, including the erosion of millions of dollars of retirement savings and anticipated retirement income for the Plan's participants. This action seeks these losses to the Plan for which Defendants are liable pursuant to 29 U.S.C. §§ 1109 and 1132.

10.     Because the information and documents underlying Plaintiff's claims are, for the most part, solely in Defendants' possession, certain aspects of Plaintiff's allegations are based upon information and belief. At such time as Plaintiff has had the opportunity to conduct sufficient discovery, Plaintiff may, to the extent necessary and appropriate, further amend this Complaint.

## PARTIES

**Plaintiff**

11.    Plaintiff Michael Bouvy is a resident of Apple Valley, Minnesota. He was employed by Linear Technology Corporation from 2007 until October 2018 (including after the company merged with Analog Devices, as explained below), when he resigned from his position. He is a "participant" in the Linear Technology Corporation 401(k) Plan within the meaning of 29 U.S.C. § 1002(7), and his account was invested in the funds described below during the applicable Class Period (defined below).

12.    Prior to the time that Plaintiff's counsel began their investigation of the facts relating to this case in or about February 2019, Plaintiff did not have knowledge of all material facts (including, among other things, the availability of less expensive and better performing alternative investments or the total compensation paid for recordkeeping services provided to the Plan). Further, Plaintiff does not have actual knowledge of the specifics of Defendants' decision-making process with respect to the selection and monitoring of investment options (including Defendants' processes and motivations for selecting, monitoring, evaluating, and removing investments) or how Defendants searched for or negotiated with service providers because this information is solely within Defendants' possession prior to discovery. The facts about Defendants' decision-making process are generally not made public and have not been described to the Plan's participants.

**The Plan**

13.    Linear Technology Corporation is a technology company that supplies integrated circuits used in electronic equipment. On or around March 10, 2017, the assets and operations of Linear Technology Corporation were merged with Analog Devices Corporation ("Analog Devices"), a competing technology company with an overlapping product line. Before the merger, Linear Technology Corporation employed over 4,000 employees and operated design centers nationwide. Linear Technology Corporation provided retirement benefits to eligible

employees during the applicable Class Period (defined below) under the Linear Technology Corporation 401(k) Plan (the "Plan").

14.     The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34).

15.     The Plan is a qualified plan under 26 U.S.C. § 401, commonly referred to as a "401(k) plan."

16.     Linear Technology Corporation was the "Plan Sponsor" within the meaning of 29 U.S.C. § 1002(16)(B) until at least the end of 2016, as reported on the Plan's Form 5500 for 2016. Linear Technology Corporation was also the "Plan Administrator" under 29 U.S.C. § 1002(16)(A), controlling and managing the operation and administration of the Plan. Employees of Linear Technology Corporation signed the Plan's Form 5500 on behalf of the "Plan Administrator" from at least 2012 through 2016, including Steve Marsey, the Human Resources Director for Linear Technology Corporation (who signed 2012, 2013, 2014, and 2016) and Donald Zerio, the Vice President and Chief Financial Officer of Linear Technology Corporation (who signed 2015).

17.     In 2017, the Plan Sponsor and Plan Administrator changed from Linear Technology Corporation to Linear Technology LLC, as reported on the Plan's Form 5500 for 2017. Eileen Wynne, the Vice President and Chief Accounting Officer of Analog Devices from 2015 to present, signed the Plan's 2017 Form 5500 on behalf of the "Plan Administrator."

18.     At the time of the merger, there were approximately 2,369 participants in the Plan. After the merger, through at least the end of 2017, Analog Devices contributed to the Plan for former Linear Technology Corporation employees as part of the company's semi-annual profit sharing payouts. On information and belief, those former employees later became vested members of the Analog Devices 401(k) Plan.

19.     At all relevant times, Defendants contracted with third-party administrator Transamerica Retirement Solutions, LLC and affiliated entities (collectively, "Transamerica") to

serve as the Plan's recordkeeper. Defendants also contracted with State Street Bank and Trust Company to act as the Plan's custodian.

**Defendants**

20.    Linear Technology Corporation is a surrendered California corporation, headquartered—from the start of Class Period until June 8, 2017—in Milpitas, California. While an active company, Linear Technology Corporation designed, manufactured, and marketed high performance analog integrated circuits.

21.    Analog Devices Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts. Analog Devices designs, manufactures, and markets a broad line of integrated circuits that complemented (and competed with) the Linear Technology product line before acquiring it in 2017.

22.    Linear Technology LLC is a subsidiary of Analog Devices that was formed under the laws of the State of Delaware on May 2, 2017. Linear Technology LLC did not operate as a separate legal entity from Analog Devices. The decision makers at Linear Technology LLC and Analog Devices were the same. For example, Eileen Wynne, the Vice President and Chief Accounting Officer of Analog Devices who signed the Plan's 2017 Form 5500, also signed Linear Technology LLC's Application to Register as a Foreign Limited Liability Company, filed with the California Secretary of State on June 8, 2017. Additionally, Kevin Lanouette, Assistant General Counsel at Analog Devices, signed Linear Technology LLC's Certificate of Formation filed with the Delaware Secretary of State on May 2, 2017.

23.    Analog Devices acquired Linear Technology Corporation through a cash and stock transaction that was completed on March 10, 2017. Upon the completion of the acquisition, Analog Devices acquired the bulk of Linear Technology Corporation's assets and equipment. According to investor disclosures, the newly-merged company operates with "a combined

company leadership team with strong representation from both companies across all functions."[1]

Analog Device's executive officers as of November 22, 2017 included Steve Pietkiewicz as

Senior Vice President of Power Products, formerly the Vice President and General Manager of S

Power Products at Linear Technology Corporation. Analog Devices continued Linear

Technology Corporation's brand, which still exists to sell Linear Technology's power-

management products but does not exist as a separate division.

24.     Defendant Linear Technology Administrative Committee (the "Administrative

Committee") is comprised of employees of Linear Technology Corporation and, following the

merger, Analog Devices. As "Plan Administrator" during the Class Period, Linear Technology

Corporation had authority to appoint and delegate discretionary authority to the Administrative

Committee to control and manage the operation and administration of the Plan. Under this

authority, the Administrative Committee was, upon information and belief, responsible for

determining the investment funds made available under the Plan and selecting/supervising the

service providers to the Plan.

25.     When Analog Devices acquired Linear Technology Corporation, it continued its

operations, including the operation of the Plan. As a continuation of Linear Technology

Corporation's operations, Analog Devices assumed Linear Technology Corporation's past

fiduciary liabilities as the "Plan Sponsor" and "Plan Administrator." In 2017, these duties were

officially assigned by the Plan's governing documents to Linear Technology LLC, which acted as

an agent of Analog Devices. After the merger, Analog Devices continue to serve functionally as

the "Plan Sponsor" and "Plan Administrator" of the Plan, acting through Linear Technology

LLC.

26.     The current and former members of the Administrative Committee and any

individual or entity to whom it delegated any of its fiduciary functions, the nature and extent of

---

[1] Press Release, Analog Devices, Inc., Analog Drvices and Linear Technology to Combine
Creating the Premier Analog Technology Company (July 26, 2016),
https://investor.analog.com/static-files/f048bf8e-46d5-436c-8445-6d21b1262638

which have not been disclosed to Plaintiff, are also fiduciaries of the Plan under 29 U.S.C. § 1002(21) because they exercised authority or control regarding the management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. Because those entities and individuals are currently unknown to Plaintiff they are collectively named as Doe Administrator Defendants 1-10.

27.     Any individual or entity to whom Defendants delegated any of their fiduciary functions or responsibilities are also fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and 1105(c)(2). Because the individuals and/or entities that have been delegated fiduciary responsibilities by Defendants are not currently known to Plaintiff, they are collectively named as Doe Administrator Defendants 11-20.

28.     Each Defendant identified above as a Plan fiduciary is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)-(3) because it enabled other fiduciaries to commit breaches of fiduciary duties, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of its duties, and/or failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2) and (3).

30.     This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the district in which the subject plan was administered, where at least one of the alleged breaches took place, and where at least one defendant may be found.

## FACTUAL ALLEGATIONS

### I.     401(K) PLANS AND HIDDEN FEES

#### A.     401(k) Plans and Investment Options

31.     Defined contribution plans that are qualified as tax-deferred vehicles under Section 401 of the Internal Revenue Code, 26 U.S.C. §§ 401(a) and (k) (*i.e.*, 401(k) plans) have

become the primary form of retirement savings in the United States and, as a result, America's *de facto* retirement system. Most participants in 401(k) plans expect that their 401(k) accounts will be their principal source of income after retirement.[2]

32.     In a defined contribution plan, employees are limited to the investment options selected by the plan's fiduciaries. The employer (or other designated fiduciary) is obligated to assemble a diversified menu of investment options. Plan participants may invest in any of these "designated investment alternatives" that are included within the plan's menu of investment options.[3]

33.     Each investment alternative within a defined contribution plan is generally a pooled investment product managed by a professional fund manager. There are a number of different vehicles that investors can use to pool their money and centrally manage that money according to a defined investment objective. Examples include mutual funds, collective investment trusts, annuity separate accounts, or simply direct ownership of securities in a separate account structure. These vehicles may differ in terms of their legal structure, regulatory oversight, and product features, however they may not differ at all in terms of their underlying investments. In other words, an investment management company might offer the same investment strategy (i.e., identical portfolios of investments) as a mutual fund and as a collective investment trust, with the only differences being features such as fees and investment minimums that relate to the particular vehicle.

34.     Mutual funds are a common investment vehicle often found in 401(k) plans. Mutual funds consist of portfolios of equities, bonds, and/or other securities in which many individuals can invest. Three types of mutual funds commonly seen in 401(k) plans include

---

[2] *See* Saad, Lydia, 401(k) Regaining Importance as Future Income Source, Gallup, available at https://news.gallup.com/poll/209579/401-regaining-importance-future-income-source.aspx (last accessed May 1, 2019).

[3] A "designated investment alternative" is defined as "any investment alternative designated by the plan into which participants…may direct the investment of assets held in, or contributed to, their individual accounts." 29 C.F.R. § 2550.404a-5(h)(4).

money market funds, balanced funds, and target-date funds. Money market funds invest in the money markets, i.e., debt securities of a short-term nature, such as U.S. Treasury bills. Balanced funds invest in a mix of stocks and bonds. Target-date funds invest in other pooled investment products (such as other mutual funds) from different asset classes at a risk level that declines over time as the targeted retirement date approaches.[4]

35.     Pooled investment products such as mutual funds offer investors exposure to various asset classes. The broad asset classes generally include fixed investments (e.g., money market funds, guaranteed investment contracts, and stable value funds), bonds (i.e., debt securities), and equity or stock investments.[5]

36.     The investment menu design does not end with the selection of the investment products, such as the particular mutual fund or collective investment trust. These investment products often also offer multiple share classes.[6] The share classes represent the same investment targeted at different investors. Generally, more expensive share classes are targeted at smaller investors (such as individuals) with less bargaining power, while lower-cost share classes are targeted at institutional investors with more assets. In other words, in order to access the lower-cost share classes, investors must meet an investment minimum.

---

[4] Investment companies offer target date funds as a suite, that is, an array of target dates staggered either 5 or 10 years apart along with an "income" or "retirement" fund for investors who have already retired. For example, the JP Morgan Smart Retirement 2040 Fund is designed for an investor who expects to retire around 2040, while the JP Morgan Smart Retirement Income Fund is for investors who have already retired.

[5] Bonds are generally categorized by the issuer/borrower (e.g., U.S. government, foreign government, municipalities, corporation), the duration of the debt (e.g., "short-term," "intermediate term," and "long-term"), and the default risk associated with the borrower (e.g., "high-yield"). Equity investments are generally categorized by geography (i.e., investments in domestic versus international companies), size (e.g., "small cap," "mid cap," or "large cap"), and investment style (e.g., "growth," i.e., fast-growing companies, "value," i.e., more conservative or established stocks, or "blend," i.e., a mix of growth stocks, value stocks, and companies in between). *See* Ian Ayres & Quinn Curtis, *Beyond Diversification: The Pervasive Problem of Excessive Fees and "Dominated Funds" in 401(k) Plans*, 124 Yale L.J. 1476, 1485 (2015).

[6] The fund's share class is identifiable by an alphanumeric character or word at the end of the name of the fund. Some of the common alphanumeric characters are I, A, R-1 thru R-6, and some examples of the word identifiers are "investor," "advisor," "institutional," and "admiral."

37.     There is no difference between the share classes offered in a given investment vehicle other than the fees associated with them.

38.     The menu of investment options from which employers choose is ultimately constructed by the plan sponsor or delegate, though the actual assembly of the menu is often done in consultation with plan service providers.

39.     Unlike traditional defined retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or underperformance, 401(k) plan participants can only invest in the investment options made available to plan participants, so the participants bear the risk of poor investment selection choices, whether due to poor performance, high fees, or both.

**B.     401(k) Fees**

40.     There are various fees and expenses associated with the maintenance and management of the investment products in which defined contribution plan assets are invested. These costs can be broken down into two major categories: investment management expenses and administrative expenses.

41.     Investment management expenses are the fees that are charged by the firms offering the investment. When the investment is a mutual fund, these expenses are expressed by the fund's expense ratio, i.e., a percentage of the total amount invested in the fund. This percentage is an asset-based expense and is deducted from the fund's assets. This means that as the assets in the fund increase, the dollars deducted from the fund as part of the fund's investment expenses increase.

42.     The expense ratio of most mutual funds is comprised of three specific types of fees: a management fee, a "12b-1" fee, and a sub-transfer agency fee. The management fee is what the investment manager charges to manage the equities, bonds, and/or other securities within the fund. 12b-1 fees are an ongoing commission for the marketing and distribution of the fund and are typically 0.25%, 0.5%, or 1% annually. Sub-transfer agency fees (also known as

"sub-TA" fees) are for shareholder services such as recordkeeping and other administrative services. These fees are usually listed in the fund's prospectus as "Other Fees."

43.     Investment management fees depend in part on the fund's management style. Investment funds can be either actively or passively managed. Passive funds, popularly known as "index funds," seek to replicate the performance of a market index, such as the S&P 500, by purchasing a portfolio of securities matching the composition of the index itself, therefore producing returns that are very close to the market segment tracked by the index and offering low expenses. Actively managed funds, on the other hand, pick individual stocks and bonds and try to beat the market through superior investment selection, and are thus typically more expensive.

44.     Larger plans can lower investment management fees by selecting share classes only available to institutional investors or by negotiating directly with the investment manager to obtain a lower fee than is offered to individual mutual fund investors. The expense ratio of a given fund can vary considerably depending on the fund's selected share class. Typically, as a defined contribution plan grows, it qualifies for less expensive share classes. For example, larger plans typically qualify for share classes that do not have 12b-1 fees and lower sub-TA fees.

45.     Administrative expenses are the fees charged for the day-to-day operations necessary for administering the plan as a whole, such as recordkeeping, trustee and custodial services, accounting, etc.

46.     Recordkeeping is a necessary administrative service for any defined contribution plan. The cost of providing recordkeeping services depends on the number of participants in a plan, but has little to do with the amount of money in the participants' accounts, so it costs the same to provide recordkeeping to a participant with $1,000 in his or her retirement account as a participant with $100,000. Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee.

47.     The total cost of investing in a 401(k) plan is the total of administrative expenses

charged at the plan level and the cost of managing the particular funds in the chosen investment menu.

### C.     Hidden Fees in 401(k) Revenue Sharing Arrangements

48.     The administrative tasks described above are typically outsourced to one or more third-party service providers who may be paid directly by employers or plan sponsors, directly by the plan, or indirectly by the investments within the plan, often in the form of 12b-1 and/or sub-TA fees. The latter practice is known as "revenue sharing."

49.     Revenue sharing is classified as indirect compensation inasmuch as there is no direct line item expense charged to the plan, plan sponsor, or plan participants. Instead, third-party service providers are compensated indirectly by mutual funds or other investment providers that kick back part of their fees to the service provider. These kick back fees generally take the form of asset-based 12b-1 fees and/or sub-TA fees. In a revenue-sharing arrangement, an employer agrees to pay an asset-based fee—*i.e.*, an "expense ratio"—in which the fees are assessed against each dollar invested in the fund, rather than a flat expense. The fees paid by the plan then often include both the fund's management fee (i.e., the rate the fund's managers charge all investors) and additional amounts that the fund managers do not need to cover the cost of their services. That additional portion is then "shared" with plan service providers who do business with the plan or the fund. As a result, plan service providers or others who do business with the plan or fund often receive both a direct payment from the plan and additional indirect revenue-sharing payments from the plan, *i.e.*, revenue that the fund acquires and "shares" with them.

50.     The practice of revenue sharing means that some of the administrative costs for running the plan are ultimately paid out of the investment management fees, as income from fees collected by the managers of investment funds on the plan menu are passed back to the service provider as compensation for certain services (e.g., as 12b-1 fees and/or sub-TA fees).

51.     The Department of Labor ("DOL") requires plan sponsors to identify which of

their service providers are being paid via revenue sharing, a practice referred to as "indirect compensation" on the Form 5500. One reason for this required disclosure is that revenue sharing can create a conflict of interest in the construction of the plan menu. Employers select investment options for the plan with the guidance of service providers who, in many cases, receive revenue from funds that are included in the plan (through revenue sharing). The conflict of interest emerges when the service provider stands to receive greater compensation by selecting certain funds.

52.     However, service providers can hide the revenue flowing to them from the mutual funds they select for a given plan by developing so-called "bundled" service sets. The problem with "bundled" service arrangements is that it is extremely difficult to locate hidden revenue sharing fees and calculate the service provider's total compensation: often the "bundled" service provider (*e.g.*, a recordkeeper) will receive direct payments for its recordkeeping as well as indirect payments from the plan's investments, but it will not disclose to plan fiduciaries these hidden indirect payments between itself and the investment fund which holds the assets.

53.     As stated in the DOL's Field Assistance Bulletin 2002-3,[7] a fiduciary is required to "engage in an objective process designed to elicit information necessary to assess the qualifications of the provider, the quality of services offered, and the reasonableness of the fees charged in light of the services provided … such process should be designed to avoid self-dealing, conflicts of interest or improper influence."

54.     This is important guidance because often revenue sharing arrangements are made by service providers to benefit each other and as such a "bundled" recordkeeper provider may have an incentive to push a certain investment manager if they know they are going to receive revenue sharing unbeknownst to the plan fiduciaries. These deals are often cut between the providers themselves outside of the presence of the plan fiduciaries and are not disclosed to the

---

[7] U.S. Dep't of Labor, Field Assistance Bulletin 2002-3 (2002), available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2002-03.

1  employees or employer plan sponsor.

2       55.    Plan fiduciaries are required to probe into those hidden costs and find out if

3  revenue sharing is occurring and if so, what those hard dollar amounts are, what relationships

4  might exist between the parties, and whether the costs have actually been incurred. It is not

5  permissible or in the best interests of the plan participants if assets are being steered towards an

6  investment manager purely because fees will be kicked back to the recordkeeper.

7       56.    The cost of operating a retirement plan can vary widely based upon a number of

8  factors, including the amount of plan assets invested in the fund, the plan fiduciary's level of

9  sophistication and diligence in negotiating the fee agreement, the existence of revenue sharing

10 transfers between fund managers and service providers and the plan fiduciary's awareness of and

11 efforts to monitor them, and any separate financial interests held by the plan fiduciary and the

12 fund as they negotiate.

13      57.    One way a fiduciary can determine the reasonableness of the plan's total

14 administrative expenses and investment management fees is by comparison to other similarly-

15 sized plans. Publicly available surveys provide important information to help fiduciaries

16 understand the quality of their plan design and structure. For example, the Department of Labor

17 makes available a comprehensive database for the universe of 401(k) plans, which plan

18 fiduciaries can analyze.[8]

19 **II.    ERISA FIDUCIARY DUTIES**

20      58.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the

21 Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a) requires, in relevant part, that:

22
23      [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the

24 ─────────────────
   [8] The Form 5500, which all private-sector sponsors of 401(k) plans are required to file annually
25 with the DOL, contains information about the plan including the number of participants, total
   plan assets, and total contributions to and distributions from the plan. Generally, plans with 100
26 participants or more are required to file an additional audited report with the DOL. These reports
   generally contain information on the investments offered by the plan, assets in these investments,
27 and employer contribution structures.

28
─────────────────

participants and beneficiaries and –

(A)   for the exclusive purpose of
      (i) providing benefits to participants and their beneficiaries; and
      (ii) defraying reasonable expenses of administering the plan; [and]
(B)   with the care, skill, prudence, and diligence under the circumstances then
      prevailing that a prudent man acting in a like capacity and familiar with such
      matters would use in the conduct of an enterprise of like character and with like
      aims.

59.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in the plan. Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties."[9]

60.     ERISA, 29 U.S.C. §1132(a)(3), provides a cause of action against a fiduciary who breaches a fiduciary duty.

61.     ERISA, 29 U.S.C. §1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.

62.     ERISA, 29 U.S.C. §1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through the use of plan assets. ERISA, 29 U.S.C. §1109, further provides that such fiduciaries are subject to other equitable or remedial relief as a court may deem appropriate.

**A.     Duty of Loyalty**

63.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries. As the Department of Labor has repeatedly warned:

---

[9] *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).

> We have construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to, participants and beneficiaries as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.[10]

64.     Consistent with its duty of loyalty, a plan fiduciary must disclose material investment information to Plan participants.[11]

**B.     Duty of Prudence**

65.     Under 29 U.S.C. § 1104(a)(1)(C), a plan fiduciary must provide diversified investment options for a defined-contribution plan while also giving substantial consideration to the cost of those options.

66.     The Department of Labor has explained:

> To act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.[12]

67.     The Department of Labor also counsels that fiduciaries are responsible for ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate differences in fees and services between prospective service providers:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable. In comparing estimates from prospective service providers, ask which

---

[10] *See, e.g.,* U.S. Dep't of Labor, Advisory Opinion No. 98-04A (May 28, 1998), available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/advisory-opinions/1998-04a; U.S. Dep't of Labor, Advisory Opinion No. 88-16A (December 19, 1988).

[11] Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan, 504 F.3d 818, 823–24 (9th Cir. 2007).

[12] Id.

services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs. Some service

providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.[13]

68.     In a separate publication, the Department of Labor has written:

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided. By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.[14]

69.     Fiduciaries must pay close attention to the fees being paid out of plan assets to service providers, including recordkeeping. When expenses are paid from plan assets, fiduciaries must ensure that the assets are used "for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan."[15]  A prudent fiduciary will track the recordkeeper's expenses by demanding documents that

---

[13] U.S. Dep't of Labor, *Meeting Your Fiduciary Responsibilities* (2004), available at http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html.

[14] U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses* (2004), available at http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.

[15] U.S. Dep't of Labor, Advisory Opinion 2001-01A, 2001 WL 125092, at *1. *See* 29 U.S.C. § 1104(a)(1)(A).

summarize and contextualize the recordkeeper's compensation. In order to make an informed evaluation as to whether a recordkeeper or other service provider is receiving no more than a reasonable fee for the services provided to a plan, a prudent fiduciary must identify all fees, including (and especially) any discretionary or variable compensation.

70.     The Department of Labor also instructs fiduciaries to be vigilant in "negotiation of the specific formula and methodology" by which fee payments such as "revenue sharing will be credited to the plan and paid back to the plan or to plan service providers."[16] Fiduciaries must remain informed about overall trends in the marketplace regarding the fees being paid by other plans of similar sizes, as well as the recordkeeping rates that are available. This will generally include conducting a Request for Proposal process every three to five years as a matter of course, and immediately if the plan's recordkeeping expenses have grown significantly or appear high in relation to the marketplace.

71.     The Restatement instructs that "cost-conscious management is fundamental to prudence in the investment function," and should be applied "not only in making investments but also in monitoring and reviewing investments."[17]

72.     In this vein, the Department of Labor has explicitly stated that employers are held to a "high standard of care and diligence" and must both "establish a prudent process for selecting investment options and service providers" and "monitor investment options and service providers once selected to see that they continue to be appropriate choices."[18]

73.     The Supreme Court has held that the duty of prudence includes an ongoing duty to monitor a plan's investment options.[19] In so holding, the Supreme Court referenced with

[16] U.S. Dep't of Labor, Advisory Opinion 2013-03A, 2013 WL 3546834, at *4

[17] Restatement (Third) of Trust § 90, cmt. b.

[18] U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* (2013), at 2, available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf

[19] *Tibble v. Edison, Int'l*, 135 S. Ct. 1823 (2015)

approval the Uniform Prudent Investor Act, which recognizes that "the duty of prudent investing applies both to investing and managing trust assets…".[20] As the official comment further explains, "'managing' embraces monitoring, that is, the trustee's continuing responsibility for oversight of the suitability of investments already made as well as the trustee's decisions respecting new investments."[21]

### C.   Prohibited Transactions

74.     ERISA also categorically prohibits certain transactions between plans and "parties in interest."

75.     In particular, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(B) lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."[22]

## III.   THE LINEAR TECHNOLOGY 401(K) PLAN

76.     The Plan covers eligible employees of Linear Technology Corporation.

77.     The Plan's most recent Form 5500, filed with the U.S. Department of Labor, states that at the end of the 2017 plan year, the Plan had approximately $616 million in assets and 2,369 participants with account balances.

78.     Between May 6, 2013 and May 6, 2019 (the "Class Period"), the Plan's investment holdings have included a suite of JPMorgan target date mutual funds,[23]

_____

[20] *Id.* at 1828 (quoting Nat'l Conference of Comm'rs on Uniform State Laws, Uniform Prudent Investor Act § 2(c) (1994))

[21] Uniform Prudent Investor Act § 2 comment.

[22] 29 U.S.C. § 1106(a)(1).

[23] The target date suite is comprised of nine target date options—eight mutual funds for investors planning to retire in 2015, 2020, 2025, 2030, 2035, 2040, 2045, and 2050 and an "income" fund for already-retired investors. Because investors could only select one of the nine target date funds, these allegations count the entire suite as one investment option,

approximately 20 "core" mutual funds (equity, bond, balanced, index etc.) and at least one stable value fund. In 2013, the Plan's "core" mutual fund options included 16 equity funds, two bond funds, one balanced fund, two index funds, one money market fund, and one stable value fund.

79.     By the end of 2017, the Plan had added four additional equity funds and four additional bond funds and had removed four equity funds, one balanced fund, and one index fund.

80.     At all relevant times during the Class Period, Transamerica served as the Plan's recordkeeper.

81.     Taking into account all administrative and investment expenses within the Plan, and using the 2017 year-end balance (as reported in the Plan's Form 5500 for 2017) and publicly available information regarding each investment's expenses, Plaintiff estimates that the total plan costs for 2017 were over $5 million, equal to an average fund expense of 0.82% of the $616 million in plan assets.

82.     The Plan's average fund cost of 0.82% is extremely high for a defined-contribution plan with over $600 million in assets. In 2015, the average asset-weighted plan cost for plans with between $500 million and $1 billion in assets was 0.41%.[24] Ninety percent of plans with between $500 million and $1 billion in assets had total plan costs of less than 0.59%.[25] Therefore, in 2015, the Plan was twice as expensive as the average plan of a similar size and more expensive than over 463 of the 515 defined contribution plans with between $500 million and $1 billion in assets.[26]

83.     The expense ratios for the Plan's core investment options also lag significantly behind industry averages:

---

[24] See BrightScope and Investment Company Institute, The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2015 (March 2018) ("BrightScope/ICI Profile"), available at www.ici.org/pdf/ppr_18_dcplan_profile_401k.pdf.

[25] Id. at 54.

[26] Id. at 13.

- In 2015, the asset-weighted average expense ratios of domestic and international equity mutual funds for plans with between $500 million and $1 billion in assets were 0.45% and 0.60% respectively.[27] The domestic equity mutual funds offered in 2016[28] had expense ratios between 0.65% and 1.32%, and the international equity mutual funds had expense ratios between 0.84% and 1.12%.[29]

- In 2015, the asset-weighted average expense ratio of balanced mutual funds for plans with between $500 million and $1 billion in assets was 0.50% (for target date mutual funds) and 0.39% (for non-target date balanced mutual funds). The target date mutual funds in the Plan had expense ratios between 0.53% and 0.70%. The one non-target date balanced mutual fund in the Plan had an expense ratio of 0.75%.

- In 2015, the asset-weighted average expense ratio of domestic bond mutual funds for plans with between $500 million and $1 billion in assets was 0.33%.[30] The domestic bond mutual funds in the Plan had expense ratios of 0.65%, with two exceptions that were added in 2015.[31]

- In 2015, the asset-weighted average expense ratio of index mutual funds for plans with between $500 million and $1 billion in assets was 0.08%. The index funds

---

[27] *Id.* at 55-56 (providing description of the fee analysis).

[28] Expense ratio data for the Plan in 2015 was not available to Plaintiff at the time of filing this Complaint.

[29] This comparison relies on the net expense ratio disclosed to Plan participants instead of the gross expense ratio because it is unclear whether the ICI used net or gross expense ratio data to measure its asset-weighted average expense ratios. In this vein, this analysis likely understates the degree to which the Plan's investment options had above-average expenses.

[30] To Plaintiff's knowledge, there were no international bond mutual funds offered in the Plan.

[31] In 2015, the Plan added the Vanguard Short Term Investment Grade Administrative Fund, with an expense ratio of 0.10%, and the PIMCO Income Institutional Fund, with an expense ratio of 0.45%.

offered in the Plan in 2016 had expense ratios between 0.07% and 0.30%.[32]

84.     In short, at least 18 of the 20 core investment options for which data was available, had above-average expenses, based on data for the same type of fund. And many of those funds had expenses that were nearly double the category average.

85.     The Plan's total expenses also included a disproportionate amount of administrative fees. On average, 82% of total fees within a plan are investment management expenses, while administrative fees make up on 18% of the total fees.[33] According to the Plan's Form 5500, in 2017, the Plan paid $197,072 for investment advisory services, while $542,867 was spent on recordkeeping services. Thus, 26.3% of the Plan's total direct compensation costs were investment management expenses, while administrative fees (specifically, recordkeeping) made up 73.37%.

## IV.  DEFENDANTS' BREACHES OF FIDUCIARY DUTY

86.     Defendants' process for selecting, managing, and monitoring the Plan was neither prudent nor loyal. At all stages—including in selecting the Plan's investment options and in monitoring the cost and performance of these investments—Defendants failed to perform a standardized, routine, critical review of the Plan's investment options by impartial, unbiased fiduciaries, and/or Defendants were incentivized not to undertake such a review because they and/or affiliated companies were profiting from the higher fees.

87.     As indicated below, because Defendants stacked the Plan with high-cost funds, failed to investigate lower-cost alternatives, and failed to remove high-cost, underperforming

---

[32] In 2016, the Plan added the Fidelity Spartan Extended Market Advantage Index Fund, with an expense ratio of 0.07%. Before 2016, the other index funds available in the Plan were the Vanguard Total International Stock Index Fund, with an expense ratio of 0.10%, and the Transamerica Partners Institutional Stock Index Fund, with an expense ratio of 0.30%.  At all relevant times, at least 10% of the Plan's assets remained invested in the Transamerica Partners Institutional Stock Index Fund.

[33] Investment Company Institute & Deloitte Consulting LLP, Inside the Structure of Defined Contribution/401(k) Plan Fees 2013, at 17 (2014), available at http://www.ici.org/pdf/rpt_14_dc_401k_fee_study.pdf.

funds, the Plan's expenses are significantly higher than other comparable retirement plans.[34]

## A. Defendants Stacked the Plan with High-Cost Funds at The Expense of Plan Participants

88.     Defendants selected and retained certain investment options based upon revenue sharing relationships, thus foregoing lower-cost, better performing investment alternatives. These alternatives included identical share classes of the same mutual funds that charged lower fees because they paid less revenue sharing, institutional products by the same fund managers which offer materially identical investments for even lower cost, or alternative institutional products offered by different managers who are either unwilling to pay or pay less revenue sharing to the Plan's service providers.

89.     The Plan's offerings were selected and retained to maximize and conceal the true amount of compensation paid to service providers and/or to reduce the cost of the Plan to the Plan Sponsor, all at the expense of the Plan's participants. At all relevant times, most of the Plan's fund lineup (i.e., at least 80% of the funds included in the Plan's offerings) provided revenue sharing payments from the investment companies whose products Defendants selected to be on the Plan's platform. Those investment companies gave service providers a certain percentage of the income they received from Plan assets invested in their company's fund.

90.     Defendants failed to select lower-cost options and failed to remove certain high-cost funds in favor of lower-cost options either because they failed to perform a standardized, routine, critical review of the Plan's investment options and/or because they prioritized opportunities for revenue sharing, in furtherance of their own financial interests (and/or the financial interests of service providers) rather than the interests of Plan participants.

---

[34] Plaintiff did not have knowledge of all material facts (including, among other things, the availability of less expensive and better performing alternative investments), until shortly before this suit was filed. Further, Plaintiff does not have actual knowledge of the specifics of Defendants' decision-making process with respect to the selection and monitoring of investment options (including Defendants' processes and motivations for selecting, monitoring, evaluating, and removing investments) because this information is solely within Defendants' possession prior to discovery.

91.     Specifically, Defendants breached their duty of prudence to the Plan when they failed to procure the lowest-cost share class of numerous mutual funds in the Plan. Defendants also breached their duty of prudence when they failed to monitor the performance of expensive funds and remove or replace them with cheaper funds that offered substantially identical investment products with a history of better performance.

92.     In doing so, Defendants failed to make Plan investment decisions based solely on the merits of the investment funds and the interest of participants. Defendants therefore failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, and therefore in breach of their fiduciary duty of loyalty under 29 U.S.C. §1104(a)(1)(A).

   **1.     Defendants failed to procure the least expensive available share clas of numerous funds.**

93.     For at least nearly all of the investment options offered in the Plan, Defendants selected and retained higher-cost share classes when lower-cost *identical* mutual funds were available to the Plan.

94.     Many of the funds selected and retained by Defendants hold so-called "retail class" shares, which are generally intended for individual investors. Larger retirement plans have the ability to obtain cheaper share classes that offer the same or better performance. Less expensive share classes should have been available investment options for the Plan given the Plan's size.

95.     Despite the availability of less expensive share classes, Defendants selected and retained more expensive share classes based upon the revenue sharing opportunities available with the higher-cost share classes.

96.     The expenses for these funds are significantly higher than the expenses for the lower share class of identical mutual funds. Indeed, as shown by the chart below, the Plan paid

fees between 25% and 116% higher than it should have paid for the *identical* mutual fund product:

| Plan Mutual Fund | Plan Assets[35] | Fund Net Expense Ratio[36] | Identical Lower-Cost Fund ("LCF") | Identical LCF Net Expense Ratio[37] | Excess Cost to Plan |
|---|---|---|---|---|---|
| JPMorgan Small Cap Equity Fund Class A | $58,607,852 | 1.30% | JPMorgan Small Cap Equity Fund Class R5 | 0.80% | 62.50% |
| JPMorgan U.S. Equity Fund Class A | $28,723,076 | 0.94% | JPMorgan U.S. Equity Fund Class R6 | 0.44% | 113.64% |
| Virtus Ceredex Large-Cap Value Equity Fund Class I | $22,670,953 | 0.97% | Virtus Ceredex Large-Cap Value Equity Fund Class R6 | 0.72% | 34.72% |
| MainStay Large Cap Growth Fund Class R1 | $18,335,003 | 0.82% | MainStay Large Cap Growth Fund Class R6 | 0.64% | 28.13% |
| American Funds EuroPacific Growth Fund Class R-4 | $16,254,751 | 0.84% | American Funds EuroPacific Growth Fund® Class R-6 | 0.49% | 71.43% |
| AMG Managers Fairpointe Mid Cap Fund Class N | $15,528,364 | 1.11% | AMG Managers Fairpointe Mid Cap Fund Class Z | 0.80% | 38.75% |
| Goldman Sachs Mid Cap Value Fund Class A | $12,229,397 | 1.15% | Goldman Sachs Mid Cap Value Fund Class R6 | 0.82% | 40.24% |
| MFS Massachusetts Investors Growth | $11,874,543 | 0.74% | MFS Massachusetts Investors Growth | 0.38% | 94.74% |

[35] Plan assets are identified based on the Plan's 2016 Form 5500 filing with the U.S. Department of Labor. Fund net expense ratios are based on the Plan's 2016 Annual Fee Disclosure Notice, attached as Exhibit 1, unless otherwise indicated.

[36] *See* Exhibit 1.

[37] The LCF net expense ratios as of 2016 are not available to Plaintiff; therefore, the LCF net expense ratios are based off each fund's current prospectus.

| Plan Mutual Fund | Plan Assets[35] | Fund Net Expense Ratio[36] | Identical Lower-Cost Fund ("LCF") | Identical LCF Net Expense Ratio[37] | Excess Cost to Plan |
|---|---|---|---|---|---|
| Stock Fund Class R3 | | | Stock Fund Class R6 | | |
| American Funds Fundamental Investors Class R-4 | $10,196,549 | 0.65% | American Funds Fundamental Investors® Class R-6 | 0.30% | 116.67% |
| Baron Small Cap Fund Retail Class | $2,842,482 | 1.30% | Baron Small Cap Fund Institutional Class | 1.04% | 25% |
| Victory Munder Mid-Cap Core Growth Fund Class A | $2,409,859 | 1.32% | Victory Munder Mid-Cap Core Growth Fund Class R6 | 0.84% | 57.14% |
| Franklin Small Cap Value Advantage Class | $6,657,583 | 0.87% | Franklin Small Cap Value R6 Class | 0.62% | 40.32% |
| Oakmark Equity and Income Investor Fund | $16,869,331 | 0.75% | Oakmark Equity and Investor Institutional Fund | 0.59% | 27.12% |
| Fidelity Spartan Extended Market Premium Index | $15,602,192 | 0.07% | Fidelity Extended Market Index | 0.05% | 40% |
| Vanguard Total International Stock Index Institutional | $11,564,080 | 0.10% | Vanguard Total International Stock Index Institutional Plus | 0.07% | 42.86% |
| Vanguard Short Term Investment-Grade Adm | $4,902,911 | 0.10% | Vanguard Short Term Investment-Grade Institutional | 0.07% | 42.86% |
| JP Morgan Smart Retirement 2015 Institutional Fund | $2,889,051 | 0.58% | JP Morgan Smart Retirement 2015 R6[38] | 0.44% | 31.82% |
| JP Morgan Smart Retirement 2020 Institutional Fund | $7,120,622 | 0.63% | The JP Morgan Smart Retirement 2020 R6 | 0.45% | 40% |
| JP Morgan Smart Retirement 2025 Institutional Fund | $10,765,398 | 0.65% | The JP Morgan Smart Retirement 2025 R6 | 0.47% | 38.3% |

[38] The JP Morgan Smart Retirement R6 Class was launched November 3, 2014. Before that, the R5-class share was the lowest share class of the JP Morgan Smart Retirement target date funds.

| Plan Mutual Fund | Plan Assets[35] | Fund Net Expense Ratio[36] | Identical Lower-Cost Fund ("LCF") | Identical LCF Net Expense Ratio[37] | Excess Cost to Plan |
|---|---|---|---|---|---|
| JP Morgan Smart Retirement 2030 Institutional Fund | $7,866,343 | 0.67% | The JP Morgan Smart Retirement 2030 R6 | 0.48% | 39.58% |
| JP Morgan Smart Retirement 2035 Institutional Fund | $4,820,847 | 0.69% | The JP Morgan Smart Retirement 2035 R6 | 0.48% | 43.75% |
| JP Morgan Smart Retirement 2040 Institutional Fund | $2,099,367 | 0.70% | The JP Morgan Smart Retirement 2040 R6 | 0.49% | 42.86% |
| JP Morgan Smart Retirement 2045 Institutional Fund | $1,708,932 | 0.70% | The JP Morgan Smart Retirement 2045 R6 | 0.50% | 40% |
| JP Morgan Smart Retirement 2050 Institutional Fund | $1,346,017 | 0.70% | The JP Morgan Smart Retirement 2050 R6 | 0.49% | 42.86% |
| JP Morgan Smart Retirement Income Institutional Fund | $3,901,171 | 0.53% | JP Morgan Smart Retirement Income R6 | 0.42% | 26.19% |

97.     There is no material difference between the share classes selected and retained in the Plan and the alternative share classes listed above, aside from costs.[39] The lower-cost share classes were available during the Class Period and would have provided an identical version of the same investment, including the same fund manager and an identical mix of investments within each fund.

98.     Given the Plan's size, Defendants had sufficient bargaining power to obtain the lowest-cost share class available at any given time for the Plan's investment lineup. Defendants also had access to the most up-to-date information about the lowest-share classes available for the Plan's investment lineup. Nevertheless, Defendants failed to promptly select lower-cost share classes which were identical in all respects (portfolio manager, underlying investments, structure, and asset allocation) except for cost.

---

[39] Plaintiff lacks the inside information necessary to make these cost comparisons in more detail unless and until discovery commences.

99.     Defendants failed to prudently monitor the Plan to determine whether the Plan was invested in the lowest-cost share class available. For example, until 2017, the Plan held the I share of the JP Morgan Smart Retirement target date funds. During that time, the R5 class shares represented the lowest-cost share class of JP Morgan Smart Retirement funds available, and the R5 class had been available to the Plan since 2007. A prudent fiduciary conducting an impartial review of the Plan's investments would have transferred the Plan's assets in the JP Morgan Smart Retirement funds into R5 shares as soon as they became available. Yet despite the availability of the lower-cost R5 shares since 2007, Defendants did not transfer Plan holdings in the JP Morgan Smart Retirement funds until 2017. At that point, the R5-class shares were no longer the lowest share class available to the Plan. On November 3, 2014, the JP Morgan Smart Retirement R6 share class was launched with an even lower net expense ratio than the R5 class. Thus, at all relevant times, Defendants failed to transfer the Plan's assets in the JP Morgan Smart Retirement target date funds to the lowest share class.

100.     As a further example, the Plan has invested in the A class of the JP Morgan Small Cap Equity fund since at least 2012. The lower-cost R5-class shares have been available to the Plan since May 15, 2006. On May 31, 2016, JP Morgan introduced R6 shares of the Small Cap Equity fund that cost less than the R5-class shares and significantly less than the A-class shares. A prudent fiduciary conducting a regular review of Plan investments would have discovered that a lower-cost share class was available—if not before 2016 when the R5-class was available, then at least by 2016 when there were two lower-cost share classes available—and would have transferred the Plan's investments in the JP Morgan Small Cap Equity fund from A-class shares into R5 shares, and then R6 shares. Yet Defendants failed to monitor the Plan's investments to ensure that the Plan was invested in the lowest-cost share class available. As of the end of 2018, the Plan's investments remained in A shares despite the availability of lower-cost share classes.

101.     Defendants' failure to timely replace the higher-cost share classes with lower-cost share classes was beneficial to the funds' investment managers, which collected the excess fees

paid by the Plan. The Plan's selection and retention of these higher-cost share classes was also beneficial to the Plan's service providers, which received more revenue from the revenue sharing arrangements associated with the selection of the higher-cost share classes than they would have received if Defendants selected the lower-cost share classes.

102.    In short, the Plan failed to move to cheaper share classes as they became available either because Defendants wanted to maximize and conceal the amount of compensation paid to service providers at the expense of the Plan's participants (and removing the higher-cost share classes would have reduced the revenue sharing opportunities), or Defendants failed to consider the size and purchasing power of the Plan when selecting share classes and failed to monitor the availability of lower-cost share classes. Had the amounts invested in the higher-cost share classes instead been invested in the lower-cost share class options listed above, the Plan would have retained millions of dollars in retirement savings.

> **2.    Defendants failed to remove high-cost, underperforming funds despite the availability of comparable funds with lower costs and better prospects for future performance.**

103.    In addition, Defendants retained expensive—and in many cases, underperforming—funds when lower-cost, substantially similar alternatives were available.

104.    To start, all of the investment options offered by the Plan in 2017, with the exception of two bond funds,[40] offered substantially similar, if not identical investment products at a lower expense. These funds included the following: JPMorgan Small Cap Equity, JPMorgan U.S. Equity, T. Rowe Price Equity Income, Virtus Ceredex Large-Cap Value Equity, Transamerica Stock Index, Mainstay Large Cap Growth, American Funds Europacific Growth, Fidelity Spartan Extended Market Index, Oakmark Equity and Income Investor Fund,  AMG Managers Fairpointe Mid Cap, Vanguard Total International Stock Index, American Funds Fundamental Investor, MFS Massachusetts Investor GR Stock, Goldman Sachs Mid Cap Value, Oakmark Global Investor, Franklin Small Cap Value, Vanguard Short-Term Investment-Grade,

---

[40] The PIMCO Income Institutional Fund was added to the Plan in 2015.

Baron Small Cap, Victory Munder Mid-Cap Core Growth, and all JPMorgan Smart Retirement target date funds. Most of these funds paid some form of revenue sharing benefit to Transamerica.

105. The performance of the investment options retained in the Plan frequently fell short of cheaper alternatives. For example, at least twelve of those funds underperformed their peers for both one- and three-year return periods, and at least four also underperformed their peers for the five-year period:

| Plan Mutual Fund | Total Return % (% rank in peer group) [41] | | |
|---|---|---|---|
| | 1-Year | 3-Year | 5-Year |
| AMG Managers Fairpointe Mid Cap Fund Class N | -18.58 (87) | 4.05 (68) | 2.07 (86) |
| Victory Munder Mid-Cap Core Growth Fund Class A | -13.85 (92) | 4.63 (88) | 3.73(88) |
| Oakmark Global Fund Investor Class | -18.97 (97) | 2.53 (91) | 1.34 (88) |
| Virtus Ceredex Large-Cap Value Equity Fund Class I | -10.39 (72) | 6.34 (56) | 4.96 (59) |
| JPMorgan US Equity A | -6.29 (55) | 7.84 (53) | 7.40 (40) |
| JP Morgan Smart Retirement 2020 Institutional Fund | -5.35 (76) | 4.52 (51) | 3.91 (26) |
| JP Morgan Smart Retirement 2025 Institutional Fund | -6.58 (87) | 4.86 (63) | 4.18 (26) |
| JP Morgan Smart Retirement 2030 Institutional Fund | -7.54 (85) | 5.27 (58) | 4.40 (29) |
| JP Morgan Smart Retirement 2035 Institutional Fund | -8.76 (94) | 5.37 (74) | 4.43 (38) |
| JP Morgan Smart Retirement 2040 Institutional Fund | -9.47 (92) | 5.61 (63) | 4.56 (38) |
| JP Morgan Smart Retirement 2045 Institutional Fund | -9.72 (90) | 5.56 (75) | 4.54 (43) |
| JP Morgan Smart Retirement 2050 Institutional Fund | -9.77 (84) | 5.54 (74) | 4.53 (43) |

106. Indeed, many of these funds both had historical underperformance *and* were

[41] An investment has "underperformed" for the given return period if the investment places in the top 50% of its peer group.

significantly more expensive compared to alternatives that offered substantially similar (if not identical) investment products. The following chart identifies examples of such funds that were retained in the Plan, despite the availability of cheaper, better performing alternatives:

| Plan Mutual Fund | Fund Net Expense Ratio[42] | Average Annual Return | Alt. Fund | Alt. Fee[43] | Alt. Avg. An. Return |
|---|---|---|---|---|---|
| AMG Managers Fairpointe Mid Cap Fund Class N | 1.11% | -18.58% (1Y) 4.05% (3Y) 2.07% (5Y) | AMG Managers Fairpointe Mid Cap Fund Class I | 0.88% | -18.37% (1Y) 4.31% (3Y) 2.33% (5Y) |
| Victory Munder Mid-Cap Core Growth Fund Class A | 1.32% | -13.85% (1Y) 4.63% (3Y) 3.73% (5Y) | Victory Munder Mid-Cap Core Growth Fund Class R6 | 0.84% | -13.47% (1Y) 5.10% (3Y) 4.19% (5Y) |
| Virtus Ceredex Large-Cap Value Equity Fund Class I[44] | 0.97% | -10.39% (1Y) 6.34% (3Y) 4.96% (5Y) | Manning & Napier Disciplined Value Series Class I | 0.60% | -4.07% (1Y) 10.90% (3Y) 8.29% (5Y) |
| Oakmark Global Fund Investor Class | 1.12% | -18.97% (1Y) 2.53% (3Y) 1.34% (5Y) | Boston Partners Global Equity Institutional Class | 0.95% | -13.15% (1Y) 4.29% (3Y) 3.59% (5Y) |
| | | | Hotchkis & Wiley Global Value Fund Class I | 0.95% | -16.03% (1Y) 4.51% (3Y) 1.94% (5Y) |
| JPMorgan U.S. Equity Fund Class A | 0.94% | -6.29 (1Y) 7.84 (3Y) 7.40 (5Y) | JPMorgan U.S. Research Enhanced Equity Fund Class R6 | 0.25% | -5.50% (1Y) 8.08% (3Y) 7.43% (5Y) |
| | | | T. Rowe Price Total Equity Market Index Fund | 0.30% | -5.59% (1Y) 8.72% (3Y) 7.68% (5Y) |
| | | | Schroder North American Equity Fund Class Investor | 0.33% | -4.94% (1Y) 8.87% (3Y) 7.64% (5Y) |

---

[42] *See* Exhibit 1.

[43] The net expense ratios for the alternative funds as of 2016 are not available to Plaintiff; therefore, the net expense ratios are based off each fund's current prospectus.

| | | | JPMorgan U.S. Equity Fund Class R6 | 0.44% | -5.86% (1Y) 8.31% (3Y) 7.89% (5Y) |
| | | | JPMorgan Tax Aware Equity Fund Class I | 0.55% | -4.93% (1Y) 8.89% (3Y) 8.47% (5Y) |

107.   Defendants retained these funds, despite their high fees and poor performance histories, either in order to provide revenue sharing to Transamerica and other service providers or because they failed to monitor the cost and performance of the funds compared to substantially similar alternative investment products available on the market.

108.   A prudent fiduciary ensures that the performance of expensive investment options justifies the increased expense of the funds. Defendants knew or should have known that these investment options were imprudent investments for the Plan because these funds were both more expensive than and underperformed comparable funds that were available in the marketplace.

109.   All of this information was known and/or available to Defendants each and every year during the Class Period when they maintained these costly and unreasonable investment options in the Plan. However, not a single one of these funds was removed as a Plan investment option, despite the availability of a lower-cost, better performing alternative. Instead, Defendants selected (and retained) high cost options that caused the Plan to squander vast sums on unnecessary fees.

110.   These funds could not have been selected and retained as a result of a prudent decision-making process. A couple examples highlight Defendants' imprudent process for monitoring and removing poorly performing investments:

111.   **Victory Munder Mid Cap Core Growth Fund A (MGOAX)**: In 2012, the Plan had approximately $1,064,453.00 invested in the Victory Munder Mid Cap Core Growth Fund A (MGOAX). By 2018, this fund had underperformed its peers for the one-year, three-year, and five-year return periods and had a net expense ratio of 1.28%, that is, nearly three times more

expensive than the average domestic equity fund of a similarly-sized plan.[45] By 2018, the Victory Munder Mid Cap Core Growth Class A had also underperformed its benchmark, with relative returns of -9.50%, -5.20%, -4.13%, and -2.70% for the one-, three-, five-, and ten-year return periods, respectively.[46] Based on this record of poor performance, it would have been prudent for Defendants to remove the fund from the Plan, at the very least in 2015, when the fund was outperformed by 88% of its peers for the second return period in a row. Yet Defendants retained the fund in the Plan. In 2017, the fund was outperformed by 92% of its peers, trailing the median by over 800 basis points.[47]

112. **Virtus Ceredex Large-Cap Value Equity Fund (STVTX):** In 2012, the Plan had approximately $13,775,697.00 invested in the Virtus Ceredex Large-Cap Value Equity Fund (STVTX) (formerly the Ridgeworth Large-Cap Value Equity I Fund). By 2018, this fund had underperformed its peers for the one-year, three-year, and five-year return periods and had a net expense ratio of 0.97%, that is, twice as expensive as the average domestic equity fund of a similarly-sized plan. By 2018, the Virtus Ceredex Large-Cap Equity Class I had also underperformed its benchmark, with relative returns of -1.28%, -0.01%, -.059%, and -0.41% for the one-, three-, five-, and ten-year return periods, respectively.[48] Based on this record of poor performance, it would have been prudent for Defendants to remove the fund from the Plan, at the very least in 2015, when the fund was outperformed by 56% of its peers, after being outperformed by 59% of its peers in the previous return period. At the time, better performing alternatives offering substantially similar investment products were available, such as the

---

[45] The average expense ratio for a domestic equity mutual fund in a plan with $500 million to $1 billion in assets in 2015 was 0.45%. *See* BrightScope/ICI Profile, *supra* note 24 at 57. The above comparison actually understates the excessiveness of the fund's fees as of 2018 because it is based on the average expense ratio for 2015, and the average expense ratios for mutual funds have continued to decline since 2015. *Id.*

[46] The benchmark index used in this comparison is the iShares Russell Mid-Cap Growth ETF.

[47] In other words, the fund's losses were 8% over the median losses of its peer group.

[48] The benchmark index used in this comparison is the iShares Russell 1000 Value ETF.

Manning & Napier Disciplined Value Series Class I (which also has a lower expense ratio of 0.57%). Yet Defendants retained the fund in the Plan. In 2017, the fund was outperformed by 72% of its peers.

113.    A prudent fiduciary will recognize that the worst-performing mutual funds show a strong, persistent tendency to continue their poor performance.[49] Moreover, a prudent fiduciary will ensure that the performance of actively managed funds justifies the increased expense of the funds. A prudent fiduciary will not attempt to beat the market with an actively managed fund when any outperformance will be dwarfed by mutual fund expenses. Accordingly, a prudent fiduciary will not select higher-cost, actively-managed funds without a documented process that leads to the conclusion that the fund will outperform its benchmark index over time, net of investment expenses.

114.    If Defendants had evaluated the high-priced mutual funds offered in the Plan against the cost and performance of comparable products, they would not have arrived at the conclusion that the funds would outperform their alternatives, net of investment expenses, much less the benchmark index. Had Defendants selected and monitored the Plan's portfolio of investments in a prudent manner and as part of a process that was not tainted by self-interest, they would either not have selected these funds for inclusion in the Plan or would have removed them as part of a regular review of the Plan's portfolio.

>    **3.    Defendants improperly retained Transamerica's investment products in the Plan for the benefit of Transamerica and to the detriment of the Plan.**

115.    Transamerica, f/k/a Diversified Retirement Corporation, has served as the Plan's recordkeeper at all relevant times. In addition to its role as recordkeeper, Transamerica has also served as an investment manager because a significant portion of the Plan's assets has always been invested in Transamerica funds.

116.    At all relevant times, roughly one third of the Plan's assets were invested in the

---

[49] *See, e.g.,* Mark M. Carhart, *On Persistence in Mutual Fund Performance*, 52 J. Fin. 57, 57 (1997).

following Transamerica-managed products:

| Fund | Net Expense Ratio | Plan Assets (2016) |
|------|-------------------|---------------------|
| Transamerica Financial Life Insurance Company General Account | unknown | $78,739,810.00 |
| Transamerica Government Fixed Fund | unknown[50] | $25,384,384.00 |
| Transamerica Partners Institutional Stock Index Fund | 0.30% | $47,891,525.00 |
| Transamerica Partners Institutional Core Bond Fund[51] | 0.65% | $21,689,517.00 |
| Transamerica Partners Institutional Inflation-Protected Securities Fund | 0.65% | $12,150,775.00 |

117.     The Transamerica Financial Life Insurance Company ("TFLIC") general account offered in the Plan is a fixed annuity contract that returns a contractually specified minimum interest rate. Assets invested in this fund are held in the general account of TFLIC and are dependent upon the claims-paying ability of TFLIC. This option offers a fixed rate of return to participants and has severe restrictions and penalties for withdrawal if participants wish to change their investments in the Plan.

118.     The Transamerica Government Fixed Fund is a pooled separate account, also under a fixed annuity contract issued by TFLIC. An insurance company separate account is a pooled investment vehicle that aggregates assets from more than one retirement plan for a given investment strategy, but those assets are segregated from the insurance company's general account assets.

119.     Each TFLIC annuity contract is essentially an investment in a fund within the

---

[50] Information about the revenue amounts paid to Transamerica from the Transamerica Financial Life Insurance Company General Account and Transamerica Partners Government Fixed Fund was not disclosed in the Plan's annual fee disclosure notices to participants or the Plan's Form 5500s.

[51] The Transamerica Institutional Core Bond Fund was replaced in 2017 with the Transamerica Intermediate Bond R4 Fund, with a net expense ratio of 0.65%.

wrapper of an annuity or insurance contract.

120.    The remaining Transamerica funds are mutual funds, and all of the Transamerica mutual funds are proprietary funds, also known as "house-brand" funds. A proprietary fund is created when the brokerage firm that distributes the fund also serves as the fund's investment manager. Thus, Transamerica both distributes the funds in which the Plan invests and manages the Plan's investments in the Transamerica funds.

121.    Transamerica's group annuity contracts and mutual funds are "manager of manager" or "funds of funds," meaning the proprietary fund created by Transamerica does not directly invest in securities. Instead, Transamerica selects an underlying master fund, which is managed by a sub-adviser, through which it invests its securities. Transamerica determines the fund's goals and investment strategies, and selects the sub-adviser to perform the actual portfolio management.

122.    As a result, the Plan is required to pay multiple layers of the fees: 1) to Transamerica, as the fund manager, and 2) to the sub-adviser of the underlying master fund. This structure imposes unnecessary and burdensome costs on the Plan.

123.    Transamerica provides little or no services, but charges a substantial markup to the Plan on the subadvisor fee. Given that 401(k) participants generally select the funds in which they invest, there is no need for participants to pay a fee to an overseeing adviser to create sub-advised funds from which participants can choose. This structure creates an unnecessary layer of fees.

124.    Moreover, the Transamerica funds were actively-managed funds which sought to beat the market indexes and, as a result, had high fees compared to passively-managed funds that tracked the same index. Indeed, as indicated below, the Transamerica funds are significantly higher than the median fees for comparable mutual funds in 401(k) plans, as reported by the Investment Company Institutes:[52]

---

[52] BrightScope/ICI Profile, *supra* note 24.

| Fund | Net Expense Ratio | Investment Style | ICI Average |
|------|-------------------|------------------|-------------|
| Transamerica Partners Institutional Stock Index Fund | 0.30% | Index | 0.08% |
| Transamerica Partners Institutional Core Bond Fund[53] | 0.65% | Bond | 0.38% |
| Transamerica Partners Institutional Inflation-Protected Securities Fund | 0.65% | Inflation-Protected Bond | 0.38% |

125. Many of the Transamerica funds had a poor or nonexistent performance history at the time they were initially selected for the Plan. For example, the Transamerica Partners Institutional Inflation-Protected Securities Fund has underperformed its benchmark for the one-, three-, five-, and ten-year periods:

| Fund | 1 year | 3 year | 5 year | 10 year |
|------|--------|--------|--------|---------|
| Transamerica Partners Institutional Inflation-Protected Securities Fund | -1.52 | 1.52 | 1.01 | 2.96 |
| Bloomberg Barclays US Treasury Inflation Protected Securities Index | -1.26 | 2.11 | 1.69 | 3.64 |

126. As the "master" manager of the fund, Transamerica has the unilateral right to hire and fire sub-advisers and to vary the amount of assets allocated to a given sub-adviser. To the extent that Transamerica is able to select a sub-adviser with a low sub-advisory fee, Transamerica can adjust the revenue it derives from the fund and ultimately from the Plan.

127. Transamerica has a history of hiring its affiliates as subadvisers. For example, Transamerica-affiliated AEGON USA LLC ("AEGON") sub-advised the Transamerica Partners Institutional Core Bond Fund since 2014. This poses potential conflicts of interest because

---

[53] The Transamerica Institutional Core Bond Fund was replaced in 2017 with the Transamerica Intermediate Bond R4 Fund, with a net expense ratio of 0.65%.

Transamerica will receive more revenue when it selects an affiliated fund rather than an unaffiliated fund. This conflict might provide an incentive to include affiliated funds as investment options.

128.    An adequate or even cursory investigation by Defendants would have revealed that the Transamerica funds were unduly expensive and not one of the rare exceptions where a higher-cost, actively-managed fund outperforms its benchmark, net of investment expenses. Despite the availability in the marketplace of investment options that charge reasonable fees and expenses and provide comparable and often better performance, Defendants failed to take any action to protect participants from losses resulting from the Transamerica funds.

129.    Defendants engaged in no process to determine the prudence of the Transamerica funds in the Plan and failed to exercise even minimal oversight over Transamerica. Instead, Defendants blindly accepted investments in expensive funds with an unnecessary layer of costs that directly benefitted Transamerica, at the expense of the Plan. As a result, Transamerica successfully utilized Plan assets in a manner that was detrimental to the Plan and beneficial to Transamerica insofar as it maximized fees, often at the expense of participants' return.

130.    Additionally, participants who failed to make their own fund selections had their accounts invested in certain "default" funds, including the Transamerica products above. Upon information and belief, the process by which participants' accounts were invested in these default funds—including expensive, poorly performing Transamerica-managed funds—was tainted by Transamerica's interests, and Defendants failed to monitor this process to ensure that the default investment selections were in the interest of Plan participants.

**B**.    **Defendants Failed to Adequately Monitor the Plan's Total Recoredkeeping Fees**

131.    Transamerica received payments for its recordkeeping and other administrative services by direct disbursement from the Plan assets (i.e., "hard dollar" payments) and revenue sharing payments comprised of Plan assets (i.e. "indirect compensation").

132.    Defendants failed to review the total recordkeeping and administrative services expenses paid by the Plan's assets through both direct and indirect compensation, conduct a reasonable investigation into the marketplace for fees, and/or act upon this information to monitor and control the Plan's total costs. Defendants' failure to adequately monitor the Plan's fees has allowed Transamerica to reap gross and unreasonable profits at the expense of Plan participants.

### 1.    The Plan Made Excessive "Hard Dollar" Payments To Transamerica.

133.    In fee disclosures to Plan participants, Defendants represented that the Plan incurred annual recordkeeping fees of $125.00 per participant account. These fees were deducted from participants' accounts as a fixed dollar amount on a quarterly basis.

134.    According to data compiled in the 2019 edition of the 401k Averages Book, for plans with 2,000 participants and $200 million in assets, the average record-keeping/administration fee was $5 per participant.[54] By that measure, the recordkeeping fees that Defendants deducted directly from participants' accounts were **twenty-five times** the normal recordkeeping costs for a plan of the same size.

135.    Moreover, Defendants allowed Transamerica to have open-ended excess to extra fees on top of this high base fee. Though Defendants represented to participants in fee disclosures that the base recordkeeping fee was $125 per participant, in 2016 and 2017 (the last year for which Plaintiff has data), the hard dollar amounts that Defendants actually paid to Transamerica exceeded $125.00 per participant.

136.    "Hard dollar" payments to service providers are generally disclosed to the public and participants, in one form or another. According to forms filed by the Plan with the Department of Labor, Transamerica received the following "hard dollar" payments from the Plan for recordkeeping services:

---

[54] *See* Pension Data Source, 401k Averages Book 106 (19th ed. 2019).

| Year | Hard Dollar Payments | Plan Participants | Direct Compensation Per Participant |
|------|---------------------|-------------------|-------------------------------------|
| 2013 | $19,005.00 | 2,202 | $8.63 |
| 2014 | $16,675.00 | 2,271 | $7.34 |
| 2015 | $167,126.00 | 2,316 | $72.16 |
| 2016 | $363,794.00 | 2,332 | $156.00 |
| 2017 | $542,867.00 | 2,369 | $229.15 |

137.    The base recordkeeping fee negotiated by Defendants, on its own, was at the high end of the normal range. The escalation of hard dollar payments to Transamerica from 2013 to 2017 also reflects Transamerica's unchecked power to draw excess fees from participants' accounts.

138.    In 2012, the Plan's recordkeeper was Diversified Retirement Corporation ("Diversified"), which the Plan compensated $19,210.00 in hard dollar payments for that year. In 2013, Diversified was merged by its parent company with affiliate Transamerica and rebranded under the Transamerica name.

139.    In 2013, the Plan compensated Transamerica nearly an identical amount in hard dollar payments as the year before for ostensibly identical recordkeeping services. While the number of participants increased by less than 8% from 2012 to 2017, the amount of hard dollar payments paid to Transamerica for recordkeeping services increased 2555% over that period. The services offered by Transamerica did not materially change from 2013 to 2017. At the very least, the need to renegotiate the hard dollar payments to Transamerica should have been apparent in 2015, when the hard dollar payments increased by nearly 900% despite a 2% increase in the number of participants. At minimum, a prudent fiduciary would have closely monitored the recordkeeper's performance and prevented the recordkeeper from collecting unreasonable discretionary fees on top of the high base.

140.    This substantial increase in hard dollar payments by the Plan to Transamerica—

over **two-thousand percent** over a four-year period—is a material change in circumstances for the Plan and constitutes an excessive payment for the services rendered by Transamerica. Defendants failed to monitor and assess the reasonableness of these fees and the material increase in fees paid for recordkeeping services during this period. Defendants allowed Transamerica to deduct variable, discretionary compensation from participants' accounts without limitation.

141.    Prudent fiduciaries monitor the plan's total costs to determine the reasonableness of the fees paid for recordkeeping and administrative services. Moreover, prudent fiduciaries regularly solicit competitive bids from prospective service providers, including recordkeepers, in order to assess the reasonableness of the fees.

142.    Defendants caused the Plan to purchase recordkeeping services from Transamerica without any competitive bidding process and without any meaningful negotiation over the compensation to be paid for the Plan's recordkeeping services, even though other entities could have provided the same services at a lower cost to the Plan. Based on Plaintiff's investigation and analysis of the market for recordkeeping services in the 2013 to 2017 timeframe, the Plan should have been able to procure recordkeeping services that provided a comparable or superior level of services to those provided by Transamerica during this time for less than $50 per participant (a conservative measure). Defendants failed to request these bids from competitors of Transamerica and/or failed to evaluate the total hard dollar payments made to Transamerica to ensure that they were reasonable in light of the bids from competing service providers.

### 2.    The Plan Made Excessive Revenue Sharing Payments to Transamerica.

143.    At all relevant times, Transamerica was also indirectly compensated for its recordkeeping services in the form of revenue sharing arrangements between Transamerica and the investment companies whose products were retained in the Plan's lineup. When Plan assets

were invested in funds with revenue sharing arrangements, a a percentage of the Plan assets was transferred from the fund's investment managers to Transamerica, ostensibly to pay for Transamerica's recordkeeping services. Transamerica's fee thus grew as the assets of the Plan grew, even if Transamerica provided no additional services to the Plan.

144. The Department of Labor requires plans to identify which of their service providers are being paid via indirect compensation on the Form 5500. At least twenty-six of the mutual funds included in the Plan shared a portion of the fund's annual fees with Transamerica:

| Fund | Revenue Sharing Amount[55] | Plan Assets (2014)[56] | Compensation to Transamerica |
|---|---|---|---|
| American Funds EuroPacific Growth Fund Class R-4 | 34.146 | $16,624,896.00 | $56,767.37 |
| American Funds Fundamental Investors Class R-4 | 34.146 | $7,658,572.00 | $26,150.96 |
| Aston/Optimum Mid Cap N Fund | 39.024 | $17,114,822.00 | $66,788.88 |
| Baron Small Cap Fund Retail Class | 39.024 | $3,061,581.00 | $11,947.51 |
| Franklin Small Cap Value Fund Class R6 | 24.00 | $5,923,469.00 | $14,216.33 |
| Goldman Sachs Mid Cap Value Fund Class A | 53.658 | $12,303,920.00 | $66,020.37 |
| JP Morgan Small Cap Equity Fund Class A | 48.780 | $50,659,623.00 | $247,117.64 |
| JP Morgan Smart Retirement 2015 Institutional Fund | 9.756 | $3,914,769.00 | $3,819.25 |
| JP Morgan Smart Retirement 2020 Institutional Fund | 9.756 | $8,078,441.00 | $7,881.33 |
| JP Morgan Smart Retirement 2025 Institutional Fund | 9.756 | $9,404,194.00 | $9,174.73 |
| JP Morgan Smart Retirement 2030 Institutional Fund | 9.756 | $7,013,260.00 | $6,842.14 |
| JP Morgan Smart Retirement | 9.756 | $3,894,328.00 | $3,779.31 |

[55] Revenue amounts are shown in annualized basis points of plan assets invested in applicable fund, based on Form 5500 for 2014.

[56] While there may have been some plan service credit in 2015, Plaintiff lacks knowledge of the details of the credit and, as discussed below, participants were not credited dollar-for-dollar for the amount of revenue sharing paid to Transamerica.

| Fund | Revenue Sharing Amount[55] | Plan Assets (2014)[56] | Compensation to Transamerica |
|---|---|---|---|
| 2035 Institutional Fund | | | |
| JP Morgan Smart Retirement 2040 Institutional Fund | 9.756 | $1,667,877.00 | $1,627.18 |
| JP Morgan Smart Retirement 2045 Institutional Fund | 9.756 | $1,186,802.00 | $1,157.84 |
| JP Morgan Smart Retirement 2050 Institutional Fund | 9.756 | $492,353.00 | $480.34 |
| JP Morgan Smart Retirement Income Institutional Fund | 9.756 | $3,427,393.00 | $3,343,76 |
| JPMorgan U.S. Equity Fund Class A | 48.780 | $28,537,026.00 | $139,203.61 |
| MainStay Large Cap Growth Fund Class R1 | 34.146 | $17,523,516.00 | $59,835.80 |
| MFS Massachusetts Investors Growth Stock Fund Class R3 | 48.780 | $11,169,501.00 | $54,484.83 |
| Victory Munder Mid-Cap Core Growth Fund Class A | 48.780[57] | $1,993,178.00 | $9,722.72 |
| Oakmark Equity & Income Fund Investor Class | 39.024 | $17,796,229.00 | $69,448.00 |
| Oakmark Global Fund Investor Class | 39.024 | $6,499,841.00 | $25,364.98 |
| Virtex Ceredex Large-Cap Value Fund Class 1 (formerly Ridgeworth Large Cap Value Equity I Fund) | 48.780 | $22,125,222.00 | $107,926.83 |
| T. Rowe Price Equity Income Advantage Fund | 39.024 | $27,698,928.00 | $108,092.30 |
| **Total Indirect Compensation:** | | | $1,101,214.02 |

145.    According to the Plan's Form 5500, these amounts were charged against the Plan's investments for the purpose of paying the Plan's recordkeeping and other administrative expenses, and, upon information and belief, they were applied to satisfy the Plan's aggregate obligation to pay Transamerica's compensation, and not just the expenses attributable to the individual participants who had invested in the funds being charged revenue amounts for those

---

[57] According to the Plan's Form 5500, from January 1, 2014 to October 30, 2014, the Plan increased the revenue-sharing amount paid to Transamerica from the Victory Munder Mid-Cap Core Growth Fund to 58.536 basis points; therefore, this figure understates the total revenue-sharing amounts paid from Plan assets to Transamerica in 2014.

expenses. Through these revenue sharing arrangements, Transamerica received additional revenue from the Plan assets on top of the hard dollar payments from the Plan, listed above.

146.    Adding revenue sharing from non-proprietary mutual funds to the hard dollar payments discussed above, the compensation that Transamerica received in 2014 alone was well over $1 million.

147.    This is a conservative total because it excludes revenue sharing payments Transamerica received from its proprietary funds. This information was not available to Plaintiff, but upon information and belief, these asset-based payments were substantial.

148.    Given the nature of asset-based indirect compensation, it is typical that the revenue sharing amount paid to the recordkeeper will increase as the plan grows larger, even though the actual cost of the recordkeeping services provided does not increase. In this vein, prudent fiduciaries monitor the amount of the revenue sharing arrangements to ensure that the recordkeeper's total compensation from all sources does not exceed reasonable levels. Moreover, prudent fiduciaries identify and agree upon a reasonable level of recordkeeping payments (i.e., an amount that does not grossly overcompensate the recordkeeper for the services performed) and negotiate recordkeeping contracts so that all revenue sharing payments in excess of that agreed-upon amount are returned to the plan and its participants. This is generally accomplished through the creation of a revenue sharing account, also commonly referred to as a plan expense account or a plan expense reimbursement account.

149.    From 2012 to 2017, the Plan's assets nearly doubled in size. The asset-based revenue sharing arrangements to Transamerica remained substantially the same.[58] As a result, the amount of indirect compensation paid to Transamerica in 2017 nearly doubled the amount paid to it in 2012, even though the number of participants only increased by 8%.

150.    Defendants, as "responsible plan fiduciaries" as that term is defined in 29 C.F.R.

---

[58] Revenue sharing amounts were not disclosed in the Plan's Form 5500 for 2016 and 2017, but there were likely minimal changes in revenue sharing for those years because there were minimal changes to the funds/share classes in the Plan's investment lineup.

408b-2(c), were obligated to obtain from Transamerica detailed disclosures regarding all the services Transamerica provided and all direct and indirect compensation Transamerica expected to receive in connection with those services.

151.   Defendants failed to conduct a deliberative process for identifying revenue sharing arrangements and failed to determine whether they remained in the Plan's and participants' best interest. As discussed above, prudent fiduciaries submit requests for proposal to potential recordkeeping service providers to obtain cost information regarding what other recordkeepers would charge the plan for a particular set of recordkeeping services (every few years at minimum, and more frequently if the plan's recordkeeping expenses appear to be excessive, for example, if they suddenly increase without explanation). This process allows prudent fiduciaries to determine if their recordkeeping arrangement is competitive, and if it is not, to make appropriate changes.

152.   Had Defendants acted prudently, they would have calculated how many dollars would be or had been generated by revenue sharing for Transamerica. This would have allowed Defendants to analyze whether revenue sharing was benefitting the Plan and would have put Defendants in a position to negotiate better direct payments for recordkeeping costs or to negotiate better revenue sharing arrangements by leveraging the Plan's size.

153.   Defendants could have leveraged the Plan's bargaining power to negotiate prudent recordkeeping fees and then paid all of those fees (or reimbursed Plan participants) using offsets or plan service credits. But Defendants did not properly utilize plan service credits to offset the revenue amounts that were paid to Transamerica in excess of Transamerica's recordkeeping and other administrative fees. To the extent that the Plan received some credits associated with the revenue sharing payments, it does not appear that, for a significant period of the relevant time, the Plan received full, dollar-for-dollar crediting as required by guidance from the Department of Labor. Moreover, at least until June 1, 2015, Defendants never made any effort to rebalance revenue sharing payments to engage in fee equalization for participants. As a

result, Plan participants who chose funds with higher revenue sharing amounts contributed disproportionately to Plan-level costs.

154.    Additionally, the revenue sharing payments that Transamerica received were deducted from the assets being held for the Plan and constituted a direct or indirect furnishing of services between the Plan and a party in interest for more than reasonable compensation, and thus a transfer of assets of the Plan to a party in interest, in violation of 29 U.S.C. § 1106(a)(1)(C). Even if the Plan received some credits associated with the revenue sharing payments, prior to the credits being actually transferred to the participants, the cash was diverted to Transamerica's account for its own benefit, costing participants the interest. These transactions constituted the direct or indirect lending of money to and use of fund assets by or for the benefit of a party in interest, in violation of 29 U.S.C. § 1106(a)(1)(B).

155.    Finally, as discussed above, Defendants did not leverage the Plan's bargaining power to procure a reasonable base fee at a prudent per-participant level. As a result, even if all of the fund revenue that Transamerica received from the plan's investment options was credited back to participants, those credits would not offset the excessive per-participant fee that Transamerica received by direct payment.

156.    In short, Defendants did not conduct a review of Transamerica's general pricing of its recordkeeping services or the prices and terms that were offered to similar plans in the marketplace, nor did they prudently leverage the Plan's bargaining power in their negotiations with Transamerica (if any) in order to procure a prudent recordkeeping arrangement with Transamerica. As a result, the compensation Transamerica received for its recordkeeping and administration of the Plan was excessive and unreasonable, especially in light of the Plan's enormous size and asset value.

**C.    Defendants Failed to Fully Disclose Fees Charged to Participants' Individual Accounts**

157.    Defendants failed to provide full and accurate information regarding the fees and

1   expenses assessed against participants' accounts.

2   158.   While Defendants represented that the Plan incurred annual general

3   administrative costs of $125.00 per participant, this was not an accurate accounting of the actual

4   cost of the services performed for the Plan. Moreover, participants were charged additional fees

5   in excess of $125.00 per participant, and Defendants failed to properly disclose the nature of

6   those fees on participants' quarterly statements.

7   159.   For example, Plaintiff's Quarterly Statement for October 1, 2016 to December 31,

8   2016, attached as Exhibit 2, indicates that Plaintiff was charged $31.25 in a fee described as

9   "Administrative Fee – Per Account," which ostensibly reflects the quarterly charge of the annual

10  per-participant fee. That same statement shows an additional charge of $19.72 associated with

11  Plaintiff's investment in the T. Rowe Price Equity Income Advantage Fund, also with the

12  description "Administrative Fee – Per Account." There is no explanation of this fee, nor is there

13  any indication as to which entity received the fee or the basis for the charge.[59] Without knowing

14  the basis of the fees or who is receiving them, participants cannot make informed decisions

15  regarding these charges or assess their reasonableness.

16  160.   Additionally, Defendants represented that, at least as of June 1, 2015, *all* of the

17  fund revenue that Transamerica or its affiliates receive from the Plan's investment options was

18  credited back to participants' accounts on a monthly basis as a "Plan Service Credit."[60] However,

19  there is no indication that participants actually received a full credit of the revenue sharing

20  payments to Transamerica. For example, with the charge of $19.72 described above, Plaintiff

21  only received a "Plan Service Credit" of $2.93.

22  161.   Plaintiff's Quarterly Statement for April 1, 2017 to June 30, 2017, attached as

23  Exhibit 4, further shows that the total fund revenue that Transamerica received as revenue

24  sharing was not in fact credited back to participants' accounts:

25  _____

    [59] Throughout this statement period, Plaintiff's investments in the T. Rowe Price Equity Income
26  Advantage Fund did not exceed $1,000.

27  [60] *See* 2015 Fee & Revenue Sharing Credit Notice, attached as Exhibit 3.

28

| Fund[61] | Revenue Sharing Amount | "Net Plan Service Credit"[62] | Amount Credited on Statement | Fund Beginning Balance[63] | Fund Ending Balance | Actual Credit Amount [64] |
|---|---|---|---|---|---|---|
| American Funds Fundamental Investors Class R-4 | 34.146 | 0.35% | $0.77 | $334.99 | $1,502.59 | 0.05-0.22% |
| Aston/AMG Managers Fairpointe Mid Cap N Fund | 39.024 | 0.40% | $46.13 | $46,468.12 | $47,224.32 | 0.10% |
| Franklin Small Cap Value Fund Class R6 | 24.00 | 0.25% | $21.75 | $34,793.10 | $34,979.73 | 0.06% |
| JP Morgan Small Cap Equity Fund Class A | 48.780 | 0.50% | $1.09 | $337.06 | $1,505.14 | 0.07-0.32% |
| MFS Massachusetts Investors Growth Stock Fund Class R3 | 48.780 | 0.50% | $44.18 | $34,227.44 | $36,191.82 | 0.12% |
| Virtex Ceredex Large-Cap Value Fund Class 1 (formerly Ridgeworth Large Cap Value Equity I | 48.780 | 0.50% | $1.09 | $332.32 | $1,499.81 | 0.07-0.32% |

[61] The funds listed below, and all the corresponding data, are reflected in Exhibit 4, unless otherwise indicated.

[62] "Net plan service credits" reflect the amount of fund revenue that Defendants represented would be credited back to Plan participants' accounts on a monthly basis as a "plan service credit." *See* Exhibit 3.

[63] Defendants did not disclose to Plan participants the methodology used to calculate the plan service credit on each quarterly statement, except to provide a table of "net plan service credits" measured as a percentage of the given fund. *See* Exhibit 3.

[64] The "fund beginning balance" and "fund ending balance" reflect the amounts that Plaintiff invested in the given fund at the beginning and end of the statement period. The "actual credit amount" reflects the possible range of actual credit amounts, measured as a percentage of the fund's assets, based on the beginning and ending balance in the fund. For instance, the $0.77 service credit for the American Funds Fundamental Investors Class R-4 is either 0.05% or 0.22% of Plaintiff's balance in that fund, depending on whether the service credit is calculated from the beginning or ending balance. According to Exhibit 2, the service credit should be 0.35% of Plaintiff's balance in the fund (either $334.99 or $1,502.50) , that is, either $1.17 or $5.26.

| Fund[61] | Revenue Sharing Amount | "Net Plan Service Credit"[62] | Amount Credited on Statement | Fund Beginning Balance[63] | Fund Ending Balance | Actual Credit Amount[64] |
|---|---|---|---|---|---|---|
| Fund) | | | | | | |
| T. Rowe Price Equity Income Advantage Fund | 39.024 | 0.40% | $0.82 | $333.80 | $1,449.10 | 0.06-0.24% |
| Transamerica Partners Institutional Core Bond Fund[65] | N/A | 0.50% | $4.61 | $0.00 | $81,480.56 | 0.01% |

162.   Therefore, while Defendants gave the appearance that the Plan used "plan service credits" to offset a per-participant recordkeeping fee negotiated by the parties, this appearance was false.

163.   ERISA imposes on plan fiduciaries a duty to provide to plan participants sufficient information regarding "fees and expenses, and regarding designated investment alternatives, including fees and expenses attendant thereto," so that participants can make informed decisions regarding their individual accounts.[66]

164.   In order to satisfy this requirement, a plan administrator must provide (among other things) (1) an "identification of any designated investment managers," (2) "an explanation of any fees and expenses that may be charged against the individual account of a participant or beneficiary...not reflected in the total annual operation expenses of any designated investment alternatives," and (3) "at least quarterly, a statement" reflecting the dollar amount and nature of those expenses "actually charged," along with a "description of the services to which the charges relate."[67]

165.   Defendants' ambiguous disclosures in its fee notices and quarterly account statements are a clear violation of the ERISA disclosure requirements. By relying on a base fee

---

[65] *See* Quarterly Statement for April 1, 2016 to June 30, 2016, attached as Exhibit 5.
[66] 29 C.F.R. § 2550.404a-5(a).
[67] 29 C.F.R. § 2550.404a-5(b)-(d).

of $125.00 per participant, Defendants misrepresented the total amount of fees and expenses reasonable and necessary to operate the Plan. Defendants also failed to disclose the total amount of fees and expenses the Plan actually paid to service providers and the true and accurate operating expenses that reduced participants' returns (including revenue sharing amounts) for each of the Plan's investment alternatives. Generally, Defendants failed to disclose the revenue and expense information necessary for participants to understand and protect their interests in the Plan.

## CLASS ALLEGATIONS

166.   29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to recover for the Plan the remedies provided by 29 U.S.C. § 1109(a).

167.   **Class Definition**: Plaintiff seeks certification of this action as a class action pursuant to this statutory provision and Fed. R. Civ. P. 23 on behalf of himself and a class of all others similarly situated, defined as follows:

> All participants and beneficiaries of the Linear Technology 401(k) Plan from May 6, 2013 through the date of judgment.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

168.   **Ascertainability and Numerosity**: The Plan has had approximately 2,369 participants during the applicable period and while the exact number of Class members is unknown to Plaintiff at this time, on information and belief, there are thousands of persons in the

Class, making joinder of each individual member impracticable. Additionally, the Class is ascertainable because its members will be easily identified through Defendant's records.

169. **Commonality and Predominance**: Questions of law and fact common to the claims of Plaintiff and the other members of the Class predominate over any questions that may affect individual members of the Class because Defendants owed fiduciary duties to the Plan and all participants and beneficiaries, and they acted as alleged herein as to the Plan and not to any individual participant. Common questions for the Class include but are not limited to the following:

> (a) whether Defendants are the fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);
>
> (b) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by engaging in the conduct alleged herein;
>
> (c) whether Defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106; and
>
> (d) how to measure the losses to the Plan resulting from each breach of fiduciary duty.

170. **Typicality**: Plaintiff's claims are typical of the claims of all the other members of the Class. Defendants treated Plaintiff consistently with other Class members with regard to the Plan, and Plaintiff and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct. Defendants managed the Plan as a single entity, and therefore Defendants' imprudent decisions affected all Plan participants similarly.

171. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor its counsel have any interest

1    adverse to those of the other members of the Class.

2        172.   **Superiority**: This case is also appropriate for class certification because class

3    proceedings are superior to all other available methods for the fair and efficient adjudication of

4    this controversy as joinder of all parties is impracticable. The damages suffered by the individual

5    members of the Class will likely be relatively small, especially given the burden and expense of

6    individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it

7    would be virtually impossible for the individual members of the Class to obtain effective relief

8    from Defendant's misconduct. Even if members of the Class could sustain such individual

9    litigation, it would still not be preferable to a class action, because individual litigation would

10   increase the delay and expense to all parties due to the complex legal and factual controversies

11   presented in this Complaint. By contrast, a class action presents far fewer management

12   difficulties and provides the benefits of single adjudication, economies of scale, and

13   comprehensive supervision by a single Court. Economies of time, effort, and expense will be

14   fostered and uniformity of decisions ensured.

15                              **COUNT I**
                **Breach of Duties of Loyalty and Prudence**
16               **Investments with Excessive Fees**
                 **29 U.S.C. § 1104(a)(1)(A)-(B)**
17

18       173.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

19       174.   Each of the Defendants is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21)

20   and/or 1102(a)(1).

21       175.   29 U.S.C. § 1104 imposes upon Defendants the fiduciary duties of prudence and

22   loyalty in their administration of the Plan and in their selection and monitoring of Plan

23   investments.

24       176.   The scope of the fiduciary duties and responsibilities of Defendants includes

25   managing the assets of the Plan for the sole and exclusive benefit of Plan participants and

26   beneficiaries, defraying reasonable expenses of administering the plan, and acting with the care,

27

28

skill, diligence, and prudence required by ERISA. Defendants are directly responsible for ensuring that the Plan's fees are reasonable, selecting prudent investment options, evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure that the Plan's assets were invested prudently.

177.    This duty includes a continuing duty to monitor investments and remove imprudent ones.

178.    As set forth above, Defendants' process of evaluating the reasonableness of investment options was and is imprudent. Defendants caused the Plan to invest millions of dollars in imprudent investment options, many of which were more expensive and had poor performance histories relative to other investment options that were available to the Plan at all pertinent times.

179.    Defendants breached their fiduciary duties by selecting and retaining the higher fee share class investment options in the Plan when far lower cost funds with identical managers, investment styles, and stocks were available.

180.    Defendants also breached their fiduciary duties by retaining expensive funds with poor performance histories and failing to investigate lower cost, better performing investment alternatives. Such an investigation would have revealed to a reasonable prudent fiduciary that certain investments were imprudent, were selected and retained for reasons other than the best interest of the Plan, and were causing the Plan to waste millions of dollars of participants' retirement savings in excessive and unreasonable fees.

181.    By the conduct and omissions described above, and because of the benefits to Transamerica at the expense of the Plan, Defendants failed to make Plan investment decisions based solely on the merits of the investment funds and what was in the interest of the participants and beneficiaries of the Plan, that is, for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of 29 U.S.C. § 1104(a)(1)(A).

182.    Defendants failed to implement a prudent process to monitor the investments within the Plan and remove those investments that had become imprudent. Defendants selected and retained high-cost, underperforming mutual funds when, at all relevant times, much less expensive options of similar or superior quality were available to the Plan. Defendants also neglected to remove poorly-performing funds from the Plan and failed to consider better-performing alternatives that were available to the Plan. In doing so, Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, thereby breaching their duties under 29 U.S.C. §1104(a)(1)(B).

183.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and its participants have paid, directly and indirectly, substantial excess fees and have suffered lost opportunity costs which continue to accrue.

184.    Each Defendant is personally liable, and Defendants are jointly and severally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2), and a(3) to make good to the Plan the losses resulting from the breaches alleged herein, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the fiduciary breaches alleged herein, and to provide other equitable relief as appropriate. Each Defendant knowingly participated in each breach of the other Defendants, and knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

**COUNT II**
**Breach of Duties of Loyalty and Prudence**
**Excessive Recordkeeping Fees**
**29 U.S.C. § 1104(a)(1)(A)-(B)**

185.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

186.     Defendants are responsible for selecting, monitoring, negotiating with and removing the Plan's service providers. This duty includes a continuing duty to regularly assess the amounts of asset-based revenue sharing payments paid to service providers to determine the reasonableness of these fees.

187.     In or around 2013, Defendants selected Transamerica as a plan service provider to perform certain administrative services such as recordkeeping services.

188.     Transamerica received compensation from the Plan for its recordkeeping services in the form of direct payments and revenue sharing along with related kick-back arrangements in which managers for the Plan's investment options annually deducted fees from investment assets and paid those fees to Transamerica.

189.     Defendants caused the Plan to pay, directly and indirectly, millions of dollars to Transamerica for recordkeeping services. Transamerica's compensation was excessive and unreasonable given the services provided.

190.     Defendants failed to control and monitor these payments to ensure that the payments provided no more than reasonable compensation, failed to negotiate a specific recordkeeping fee for the Plan that was reasonable for the services rendered, failed to investigate the prudence of the revenue sharing system paying for Transamerica's recordkeeping services (instead of a fixed per-participant system), failed to recover for the Plan the amount of revenue Transamerica received that exceeded a reasonable fee for recordkeeping services, and failed to put the recordkeeping services out for competitive bidding.

191.     Defendants failed to compare the total compensation eligible to be received by Transamerica with the total compensation received by Transamerica and failed to determine that

1  the revenue sharing arrangements deducting fees from the Plan's assets as a percentage of assets

2  were no longer appropriate after the Plan's assets significantly increased in size.

3     192.   Instead of evaluating the cost of these services in the marketplace, Defendants

4  permitted Transamerica to administer and perform the recordkeeping for the Plan and to collect

5  compensation for these services without meaningful competition.

6     193.   Defendants breached their duties of prudence and loyalty in violation of 29 U.S.C.

7  § 1104(a) and cost the Plan millions of dollars in excessive administrative fees paid to

8  Transamerica.

9                                    **COUNT III**
                **Failure to Provide Disclosures to Participants Regarding Fees**
10             **29 U.S.C. § 1104(a)(1)(A)-(B) and 29 C.F.R. § 2550.404a-5**

11    194.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

12    195.   Defendants are responsible for ensuring that Plan participants "are made aware of

13  their rights and responsibilities with respect to the investment of assets held in, or contributed to,

14  their accounts and are provided sufficient information regarding the plan, including fees and

15  expenses, and regarding designated investment alternatives, including fees and expenses thereto,

16  to make informed decisions with regard to the management of their individual accounts,"

17  pursuant to 29 C.F.R. § 2550-404a-5(a).

18    196.   Defendants failed to adequately disclose to participants and beneficiaries in the

19  Plan all information regarding the investments in the Plan by, among other things, (a) failing to

20  adequately disclose the nature of the fees and expenses charged to individual accounts in the Plan

21  in participants' quarterly statements, (b) misrepresenting the actual cost of the administrative

22  services incurred by the Plan on a per-participant basis, and (c) failing to adequately disclose the

23  total amount of compensation paid to Transamerica.

24    197.   As a direct and proximate result of Defendant's failure to provide adequate

25  disclosures, the Plans' participants have paid excessive and unnecessary fees and suffered

26  significant losses.

27

28

198.     Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Defendants are liable to restore to the Plan all losses suffered as a result of their failure to provide adequate disclosures.

**COUNT IV**
**Prohibited Transactions with Party in Interest**
**29 U.S.C. § 1106(a)(1)**

199.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

200.     As a service provider for the Plan, Transamerica was at all relevant times a party in interest under 29 U.S.C. § 1002(14).

201.     As described above, Defendants caused the Plan to utilize high-cost investments that generated revenue for Transamerica.

202.     Upon information and belief, on a monthly basis Transamerica deducted fees and expenses from the assets being held for the Plan that were invested in Transamerica-managed mutual funds. These fees and expenses were paid in exchange for the investment management services provided to the Plan by Transamerica and the various administrative services by Transamerica for its proprietary funds, which Transamerica received on top of the per-participant hard dollar payments charged at the Plan level.

203.     Transamerica also periodically deducted service fees from the assets being held for the Plan in non-proprietary mutual funds that had revenue-sharing arrangements with Transamerica. These fees and expenses were paid in exchange for the administrative services provided to the funds by Transamerica, and which Transamerica received on top of the per-participant hard dollar payments charged at the Plan level.

204.     As noted throughout this complaint, the deductions that Transamerica took from Plan assets were unreasonably high in light of the services provided in exchange. Accordingly, these transactions constituted a direct or indirect furnishing of services between the Plan and a party in interest for more than reasonable compensation, in violation of 29 U.S.C. § 1106(a)(1)(C).

205.    Further, as discussed above, any temporary transfer of assets of the Plan to Transamerica (i.e., where the Plan ultimately received a "credit" for revenue sharing payments made to Transamerica from the Plan's assets) constituted the direct or indirect lending of money to, and use of fund assets for or by, the benefit of a party in interest, in violation of 29 U.S.C. § 1106(a)(1)(B).

206.    Finally, by knowingly causing the Plan to engage in the transactions described above, Defendants allowed Transamerica to use assets of the Plan for Transamerica's own benefit in violation of 29 U.S.C. § 1106(a)(1)(D).

207.    As a direct and proximate result of these transactions with Transamerica, the Plan paid millions of dollars in administrative fees in transactions that were prohibited under ERISA, resulting in significant losses to the Plan.

208.    Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Defendants are liable to restore to the Plan all losses suffered as a result of the prohibited transactions.

**COUNT V**
**Failure to Monitor Fiduciaries**
**(Against Defendants Analog Devices and Linear Technology LLC, as successors to Linear Technology Corporation)**

209.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

210.    As alleged above, Linear Technology Corporation was the fiduciary and Plan Administrator of the Plan pursuant to 29 U.S.C. § 1002(21).

211.    Linear Technology Corporation was responsible for appointing and removing the Doe Administrator Defendants 1-20 and had a fiduciary duty to monitor the performance of other fiduciaries, including the Doe Administrator Defendants 1-20.

212.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when there is reason to believe the monitored fiduciaries are not performing these obligations.

213.     Linear Technology Corporation breached its fiduciary monitoring duties by, among other things

a.     failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent conduct and omissions with respect to the Plan;

b      failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the widespread use of investment options with excessive fees and service providers receiving excessive fees;

c.     failing to ensure that its appointees investigated and appreciated the availability of comparable and better performing investments that charged significantly lower fees;

d.     failing to remove appointees whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plans during the pertinent time period, all to the detriment of participants' retirement savings; and

f.     failing to monitor the transactions of the Plan to ensure that the Plan was not entering into any prohibited transactions.

214.     As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered substantial losses each year due to excessive fees and investment underperformance. If Linear Technology had discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided.

215.     Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Analog Devices and Linear Technology LLC, as successors to Linear Technology Corporation, are liable to restore to the Plans all losses suffered as a result of Linear Technology Corporation's failure to

properly monitor the Plan's fiduciaries and subsequent failure to take prompt and effective action to rectify any observed fiduciary breaches and/or prohibited transactions.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Bouvy, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

(b)     An order declaring that Defendants breached their fiduciary duties as described above;

(c)     An order finding that Defendants are personally liable to make good to the Plan all losses that the Plan incurred as a result of the conduct described above, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore the Plan to the position it would have been if Defendants had fulfilled their fiduciary obligations;

(d)     An order awarding actual monetary losses to the Plan, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

(e)     An order awarding costs pursuant to 29 U.S.C. § 1132(g);

(f)     An order awarding attorneys' fees pursuant to 29 U.S.C. 1132(g) and the common fund doctrine;

(g)     An order for surcharge, equitable restitution and other appropriate equitable relief against Defendants.

Respectfully submitted,

**MICHAEL BOUVY.**, individually and on behalf of all others similarly situated,

Dated: September 24, 2019           By: /s/ Lily E. Hough
                                         One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN – 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN – 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

## **TABLE OF EXHIBITS**

I.      **Exhibit 1: 2016 Annual Fee Disclosure Notice** ................................................. 64

II.     **Exhibit 2: 2015 Fee & Revenue Sharing Credit Notice** ............................................. 75

III.    **Exhibit 3: Quarterly Statement for the period of April 1, 2017
        to June 30, 2017** ................................................................................. 82

IV.     **Exhibit 4: Quarterly Statement for the period of October 1, 2016
         to December 1, 2016** ............................................................................. 89

V.      **Exhibit 5: Quarterly Statement for April 1, 2016 to June 30, 2016** ........................... 95

# Exhibit 1



# Linear Technology 401(k) Plan

**JK60719   00001**
**IMPORTANT INFORMATION REGARDING YOUR PLAN**

We want you to enjoy the many features and benefits of your retirement plan. We also want to make sure you understand your plan and investment fees. The enclosed report details the types and amounts of fees that may apply to your account, depending on which features and investments you choose.

The report is organized into multiple sections:

- **General Plan Information** offers an overview of your plan.
- **Potential General Administrative Fees and Expenses** may be charged against everyone's account in the plan to cover the day-to-day costs of operating the plan.
- **Potential Individual Fees and Expenses** are associated with certain plan features or services and apply only to participants who use the particular features or services.
- **Investment Information** details each of the options available in your plan. This section features up to three tables, depending on what your plan offers. This may include investments with variable rates of return, such as mutual funds or those with fixed or stated rates of return, such as some stable value funds. Details include:
  - **Historical performance** for each variable option and its "benchmark," typically a broad market index used for comparison.
  - **Expenses**, including fund operating costs which are automatically deducted from your investment returns.  (The specific expenses that apply to you will depend on how your account is invested.)

You may receive this information electronically by signing up for e-documents at **my.trsretire.com**.

Visit **my.trsretire.com** to access the report and other related materials, including a glossary of terms. To access the participant fee disclosure document, visit **my.trsretire.com**, and select "investments and associated fees" from the Funds and Fee Information heading. If you are not enrolled in the plan, enter the account number from the upper right-hand corner of this document and click "Submit." If you are already enrolled, enter your customer ID and password and click "Sign in."

In addition, your quarterly statement will show the specific fees that have been applied to your account (except any fund expenses netted directly from your investment returns) during the statement period.

If you have any questions, please sign in to your account at **my.trsretire.com** and click on Help, or call us at **800-755-5801**.

**Si necesita aclaraciones en español, llame al número gratuito de Transamerica 1-800-755-5801 y diga "Español" para continuar en su idioma. Después de suministrar  su información,  inmediatamente  diga "Servicio al cliente" y con mucho gusto uno de nuestros representantes contestará sus preguntas.**

Exhibit 1

PT-11136  © Transamerica Retirement Solutions, LLC 02/16



# Linear Technology 401(k) Plan

**JK60719  00001**

**IMPORTANT INFORMATION REGARDING YOUR PLAN**

Disclosure Chart as of June 1, 2016

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Your plan offers a convenient way to save for retirement and provides unique features and benefits not available elsewhere. You have the opportunity to make the plan work harder for you by committing early to disciplined savings, taking full advantage of the tools and services available, maintaining a long-term investment strategy, and understanding the plan, including investment options and fees. This document is required to be sent to you to help you understand your retirement plan and will be updated annually and when certain types of changes are made. Although you should review this important information, no action is required on your part.

## General Plan Information

| | |
|---|---|
| How to Direct Your Investments | You decide how your account will be invested among the available investment options by calling 800-755-5801 or going to my.trsretire.com. |
| Transfer and/or Investment Allocation Restrictions | Transfers among investment options may be made 12 times per plan year and may be subject to certain restrictions.<br><br>You may change your investment allocations 12 time(s) per plan year. |
| Voting, tender and similar rights and restrictions on such rights | <u>Mutual Funds</u>—The Plan Sponsor shall have the right to exercise voting and tender rights attributable to mutual funds offered under the Plan. |
| List of Investment Alternatives | For the listing of the Plan's investment alternatives, please see the Investment Information section. |

## Potential General Administrative Fees and Expenses

| | |
|---|---|
| Administrative Annual Account Fee | An administrative fee for general plan administrative services (e.g., legal, accounting, auditing, recordkeeping) **may be charged** against individual participant accounts.   This fee is expressed as a fixed dollar amount and deducted from the designated investment alternatives held in your account.   The actual amount deducted from your account, as well as a description of the services to which the fee relates, will be reported on your quarterly benefit statement. |
| Administrative Fee — Per Account | The plan incurs annual general administrative fees for ongoing plan administrative services (e.g., recordkeeping) of $125.00 per participant account (accrued monthly). On a quarterly basis, fees will be deducted as a fixed dollar amount from your account based on the total number of participant accounts at the time the deduction is taken, unless paid from other sources. All of the revenue (e.g., 12b-1 fees, administrative fees) that Transamerica Retirement Solutions or its affiliates receive from the plan's investment options is credited back to your account on a monthly basis as a Plan Service Credit.<br><br>When applicable, general administrative fees other than the charge above, for administrative services (e.g., legal, accounting and auditing), may from time to time be deducted as a fixed dollar amount from your account.<br><br>The actual amounts deducted from your account, as well as a description of the services to which the fees relate will be reported on your quarterly benefit statements. |

PT-11136  © Transamerica Retirement Solutions, LLC 02/16

Exhibit 1

**Linear Technology 401(k) Plan JK60719   00001**

| Administrative Fee — Pro Rata | When applicable, other general administrative fees for plan services (e.g., legal, accounting and auditing), may from time to time be deducted as a percentage of assets from some or all investment options held in your account. |
| | The actual amounts deducted from your account, as well as a description of the services to which the fees relate will be reported on your quarterly benefit statements. |
| Plan Service Credit | Plan service credit represents an expense refund for one or more of the investment funds offered by your plan.  When applicable, a plan service credit is added to your account and lowers the effective annual expense ratios of the investment fund(s) for which a plan service credit applies.  Any plan service credit will be reported on your quarterly benefit statements. |
| **Potential Individual Fees and Expenses — applicable only to those using specific features or services** | |
| Loan Set-up Fee | You may borrow from the Plan using your account as security (conditions and restrictions may apply).  A set-up fee of $75.00 will be deducted from your account. The amount deducted from your account as well as a description of the services to which the fee relates, will be reported on your quarterly benefit statement. The fee and the related service will be identified as a Loan Set-up Fee. |
| Overnight Check Fee | A fee of up to $50.00 will be deducted from your account in the event you request a check sent overnight to you. The amount deducted from your account as well as a description of the services to which the fee relates will be reported on your quarterly benefit statement. The fee and the related service will be identified as a Overnight Check Fee. |
| Returned Check — Insufficient Funds | A fee of up to $50.00 will be deducted from your account in the event a check is returned for insufficient funds. The amount deducted from your account as well as a description of the services to which the fee relates will be reported on your quarterly benefit statement. The fee and the related service will be identified as a Returned Check - Insufficient Funds Fee. |
| Shareholder Type Fees | For applicable redemption fees, please see the Investment Information section. Changes in these fees are announced separately. The amount deducted from your account as well as a description of the services to which the fee relates will be reported on your quarterly benefit statement. |

## Investment Information

This information is provided to help you compare the investment options under your plan.  You may obtain, free of charge, a paper copy of your fee disclosure notice and other investment information posted at **my.trsretire.com**, by contacting Transamerica at 800-755-5801 or by writing to 4333 Edgewood Road NE, Mail Drop 0001, Cedar Rapids, IA, 52499, Attention: Fee Disclosure.  The information available includes each investment option's issuer, objectives, goals, principal strategies, principal risks, holdings, turnover rate, value and updated performance and expense information; as well as a glossary of terms, information about calculating benefits, available distribution options and (where appropriate) prospectuses and annual reports.

The following table focuses on investment options that have variable rates of return, and shows fee and expense information, as well as investment performance for each investment option and that of the appropriate benchmark, or index.  If your plan offers balanced, asset allocation or target retirement funds, which are comprised of a mix of stock and bond investments, you will see two broad-based benchmarks, a stock index and a bond index.  Because they are made through a retirement plan, your investments in these funds are not subject to front-end or back-end loads, which are a form of sales commission charged at the time of purchase or sale.  Please note the following.

- The investment performance of each investment option is shown net of (or after) fees, while the benchmark or index investment performance is reported on a gross (before fees) basis. If the option has less than a ten year history, the investment performance of both the investment option and the index are shown since inception, with the inception date shown after the investment option name. Returns of less than one year are not annualized. Performance prior to the inception date of the share class (if any) is based on returns of an older share class, which have been adjusted for expenses.

- Total Annual Operating Expenses of an investment option are the expenses you pay each year, which reduce the rate of return you earn.  In some cases, a fund may waive or reimburse certain expenses.  If a fund has waived expenses in the past year, you will see a different gross (G) (before waivers) and net (N) (after waivers) expense ratio.  So while an investor could have been charged as much as the gross expense rate in the past year, they will only have paid the net expense rate because of the waivers.  Fund specific operating expense details are available at **my.trsretire.com**.

3

Exhibit 1

- Shareholder-type fees, if any, are in addition to Total Annual Operating Expenses. Fees and expenses are only one of many factors to consider when you decide to invest in an investment option.

- You may also want to think about whether an investment in a particular option, along with your other investments, will help you achieve your financial goals.

- The performance data quoted represents past performance. Past performance does not guarantee how the investment option will perform in the future. Your investment in these options will fluctuate and you could lose money. Current performance may be lower or higher than the performance data quoted.

- The cumulative effect of fees and expenses can substantially reduce the growth of your retirement savings. Visit the Department of Labor's website for an example showing the long-term effect of fees and expenses at www.dol.gov/ebsa/publications/401k_employee.html.

## Comparative Investment Chart - Table 1 Variable Options

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | Total Annual Operating Expenses G: Gross; N: Net | | Average Annual Total Return as of 12/31/2015 | | |
|---|---|---|---|---|---|---|
| | | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |

### Bonds

| | | | | | | |
|---|---|---|---|---|---|---|
| Vanguard Short Term Investment-Grade  (10/82) | Short-Term Bonds | 0.10% G 0.10% N | $1.00 G $1.00 N | 1.13% | 2.13% | 3.56% |
| *Index: BofA ML 1-3 Year Govt/Corporate Index* | | | | *0.67%* | *1.04%* | *2.75%* |
| PIMCO Income Instl (03/07) | Intermediate-Term Bonds | 0.45% G 0.45% N | $4.50 G $4.50 N | 2.64% | 8.42% | 9.08% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.49%* |
| Transamerica Partners Institutional Core Bond  (09/00) | Intermediate-Term Bonds | 0.72% G 0.65% N | $7.20 G $6.50 N | 0.21% | 3.72% | 4.67% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.51%* |
| Transamerica Partners Institutional Inflation-Protected Securities  (09/00) | Government Bonds | 0.78% G 0.65% N | $7.80 G $6.50 N | -2.18% | 1.94% | 3.55% |
| *Index: Barclays US TIPS Index* | | | | *-1.44%* | *2.55%* | *3.93%* |

### Stocks

| | | | | | | |
|---|---|---|---|---|---|---|
| RidgeWorth Large Cap Value Equity I (02/93) | Large-Cap Value Stocks | 1.07% G 0.97% N | $10.70 G $9.70 N | -4.62% | 10.26% | 7.53% |
| *Index: Russell® 1000 Value Index* | | | | *-3.83%* | *11.27%* | *6.16%* |
| T. Rowe Price Equity Income Adv (10/85) | Large-Cap Value Stocks | 0.94% G 0.94% N | $9.40 G $9.40 N | -6.92% | 8.38% | 5.40% |
| *Index: Russell® 1000 Value Index* | | | | *-3.83%* | *11.27%* | *6.16%* |

Shareholder-Type Fees / Comments: If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

4

Exhibit 1

## Comparative Investment Chart - Table 1 Variable Options (continued)

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | Total Annual Operating Expenses G: Gross; N: Net | | Average Annual Total Return as of 12/31/2015 | | |
|---|---|---|---|---|---|---|
| | | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |

### Stocks

| American Funds Fundamental Invs R4 (08/78) | Large-Cap Blend Stocks | 0.65% G 0.65% N | $6.50 G $6.50 N | 3.35% | 11.19% | 7.73% |
| Index: S&P 500 Index | | | | 1.38% | 12.57% | 7.31% |

Shareholder-Type Fees / Comments: If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

| JPMorgan US Equity A (09/93) | Large-Cap Blend Stocks | 1.11% G 0.94% N | $11.10 G $9.40 N | 0.45% | 12.14% | 8.44% |
| Index: S&P 500 Index | | | | 1.38% | 12.57% | 7.31% |

Shareholder-Type Fees / Comments: If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

| Transamerica Partners Institutional Stock Index (09/00) | Large-Cap Blend Stocks | 0.38% G 0.30% N | $3.80 G $3.00 N | 1.08% | 12.25% | 7.04% |
| Index: S&P 500 Index | | | | 1.38% | 12.57% | 7.31% |
| MFS Massachusetts Investors GR Stk R3 (01/35) | Large-Cap Growth Stocks | 0.74% G 0.74% N | $7.40 G $7.40 N | -0.06% | 11.43% | 7.63% |
| Index: Russell® 2000 Growth Index | | | | -1.38% | 10.67% | 7.95% |
| MainStay Large Cap Growth R1 (07/95) | Large-Cap Growth Stocks | 0.84% G 0.82% N | $8.40 G $8.20 N | 6.16% | 12.56% | 8.86% |
| Index: Russell® 1000 Growth Index | | | | 5.67% | 13.53% | 8.53% |
| Goldman Sachs Mid Cap Value A (08/95) | Mid-Cap Value Stocks | 1.15% G 1.15% N | $11.50 G $11.50 N | -9.46% | 8.40% | 6.40% |
| Index: Russell® Mid Cap Value Index | | | | -4.78% | 11.25% | 7.61% |
| Aston/Fairpointe Mid Cap Fund N (09/94) | Mid-Cap Blend Stocks | 1.11% G 1.11% N | $11.10 G $11.10 N | -10.37% | 9.11% | 9.45% |
| Index: Russell® MidCap Index | | | | -2.44% | 11.44% | 8.00% |
| Fidelity Spartan Extnd Mkt Idx Advtg (11/97) | Mid-Cap Blend Stocks | 0.07% G 0.07% N | $0.70 G $0.70 N | -3.32% | 10.33% | 7.97% |
| Index: Wilshire 4500 Completion Total Return Index | | | | -2.65% | 10.48% | 7.93% |

Shareholder-Type Fees / Comments: A short-term redemption fee of 0.75% may apply to transfers, withdrawals or loans, if the amounts were held for 90 days or less.

| Victory Munder Mid-Cap Core Growth A (06/98) | Mid-Cap Growth Stocks | 1.32% G 1.32% N | $13.20 G $13.20 N | -4.60% | 9.88% | 7.27% |
| Index: Russell® Mid Cap Growth Index | | | | -0.20% | 11.54% | 8.16% |

PT-11136  © Transamerica Retirement Solutions, LLC 02/16

Exhibit 1

## Comparative Investment Chart - Table 1 Variable Options (continued)

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | Total Annual Operating Expenses G: Gross; N: Net | | Average Annual Total Return as of 12/31/2015 | | |
|---|---|---|---|---|---|---|
| | | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |

### Stocks

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |
|---|---|---|---|---|---|---|
| **Franklin Small Cap Value Adv  (03/96)** | Small-Cap Value Stocks | 0.88% G 0.87% N | $8.80 G $8.70 N | -7.56% | 7.52% | 6.40% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.51%* |
| **JPMorgan Small Cap Equity A  (12/94)** | Small-Cap Blend Stocks | 1.42% G 1.30% N | $14.20 G $13.00 N | -1.85% | 11.50% | 9.81% |
| *Index: Russell® 2000 Growth Index* | | | | *-1.38%* | *10.67%* | *7.95%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |
| **Baron Small Cap  (09/97)** | Small-Cap Growth Stocks | 1.30% G 1.30% N | $13.00 G $13.00 N | -5.24% | 9.04% | 6.75% |
| *Index: Russell® 2000 Growth Index* | | | | *-1.38%* | *10.67%* | *7.95%* |
| **American Funds EuroPacific Gr R4  (04/84)** | World/Foreign Stocks | 0.84% G 0.84% N | $8.40 G $8.40 N | -0.82% | 3.62% | 4.58% |
| *Index: MSCI All-Country World Ex-US Index* | | | | *-5.25%* | *1.51%* | *3.38%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |
| **Oakmark Global I  (08/99)** | World/Foreign Stocks | 1.12% G 1.12% N | $11.20 G $11.20 N | -4.38% | 7.14% | 6.45% |
| *Index: MSCI All-Country World Index* | | | | *-1.84%* | *6.66%* | *5.31%* |
| **Vanguard Total International Stock Index Ins  (04/96)** | World/Foreign Stocks | 0.10% G 0.10% N | $1.00 G $1.00 N | -4.24% | 1.34% | 2.87% |
| *Index: MSCI All-Country World Ex-US Index* | | | | *-5.25%* | *1.51%* | *3.38%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |

### Multi-Asset/Other

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |
|---|---|---|---|---|---|---|
| **Oakmark Equity & Income I  (11/95)** | Balanced | 0.75% G 0.75% N | $7.50 G $7.50 N | -4.60% | 6.82% | 6.62% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.51%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *7.31%* |

6

Exhibit 1

## Comparative Investment Chart - Table 1 Variable Options (continued)

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | Total Annual Operating Expenses G: Gross; N: Net | | Average Annual Total Return as of 12/31/2015 | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |

### Multi-Asset/Other

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **JPMorgan SmartRetirement Inc Inst  (05/06)** | Target Date | 0.64% G<br>0.53% N | $6.40 G<br>$5.30 N | -1.01% | 4.62% | 4.89% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.82%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *7.12%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |
| **JPMorgan SmartRetirement 2015 Inst  (05/06)** | Target Date | 0.65% G<br>0.58% N | $6.50 G<br>$5.80 N | -0.91% | 5.52% | 5.13% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.82%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *7.12%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |
| **JPMorgan SmartRetirement 2020 Inst  (05/06)** | Target Date | 0.69% G<br>0.63% N | $6.90 G<br>$6.30 N | -0.76% | 6.54% | 5.61% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.82%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *7.12%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |
| **JPMorgan SmartRetirement 2025 Inst  (07/07)** | Target Date | 0.71% G<br>0.65% N | $7.10 G<br>$6.50 N | -0.94% | 7.14% | 5.07% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.63%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *6.41%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |
| **JPMorgan SmartRetirement 2030 Inst  (05/06)** | Target Date | 0.74% G<br>0.67% N | $7.40 G<br>$6.70 N | -1.31% | 7.48% | 5.95% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.82%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *7.12%* |
| **Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days. | | | | | | |

PT-11136  © Transamerica Retirement Solutions, LLC 02/16

Exhibit 1

## Comparative Investment Chart - Table 1 Variable Options (continued)

| Name of Option (Inception Mo/Yr) Index(es) | Type of Option | Total Annual Operating Expenses G: Gross; N: Net | | Average Annual Total Return as of 12/31/2015 | | |
|---|---|---|---|---|---|---|
| | | As % | Per $1000 | 1Yr. | 5Yr. | 10yr. or Since Inception |

### Multi-Asset/Other

| | | | | | | |
|---|---|---|---|---|---|---|
| **JPMorgan SmartRetirement 2035 Inst (07/07)** | Target Date | 0.76% G 0.69% N | $7.60 G $6.90 N | -1.50% | 7.88% | 5.23% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.63%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *6.41%* |

**Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

| | | | | | | |
|---|---|---|---|---|---|---|
| **JPMorgan SmartRetirement 2040 Inst (05/06)** | Target Date | 0.78% G 0.70% N | $7.80 G $7.00 N | -1.65% | 8.01% | 6.19% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.82%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *7.12%* |

**Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

| | | | | | | |
|---|---|---|---|---|---|---|
| **JPMorgan SmartRetirement 2045 Inst (07/07)** | Target Date | 0.79% G 0.70% N | $7.90 G $7.00 N | -1.55% | 8.06% | 5.46% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.63%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *6.41%* |

**Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

| | | | | | | |
|---|---|---|---|---|---|---|
| **JPMorgan SmartRetirement 2050 Inst (07/07)** | Target Date | 0.80% G 0.70% N | $8.00 G $7.00 N | -1.56% | 8.03% | 5.48% |
| *Index: Barclays Aggregate Bond Index* | | | | *0.55%* | *3.25%* | *4.63%* |
| *Index: S&P 500 Index* | | | | *1.38%* | *12.57%* | *6.41%* |

**Shareholder-Type Fees / Comments:** If you exchange out of this fund, you will not be permitted to exchange back into the same fund within 30 calendar days.

The following table focuses on investment options that have a fixed or stated rate of return and shows the annual rate of return, the term or length of time that you will earn this rate of return, and other information relevant to performance.  (If you are already an investor in such option, please note that personalized rates of return for certain investments are shown on your benefit statements.) The fixed interest rate is net of any expenses and an annual operating expense ratio is not separately shown.

PT-11136  © Transamerica Retirement Solutions, LLC 02/16

Exhibit 1

**Linear Technology 401(k) Plan JK60719   00001**

## Comparative Investment Chart - Table 2 Fixed Options

| Fund Name/ Type of Option | Return / Credited Rate | Term | Other |
|---|---|---|---|
| TFLIC Government Fixed Fund<br>Stable Value | 1.25% | 01/01/2016 - 12/31/2016 | The rate applies to new deposits/transfers received during the stated term, and the rate does not change during the term. Interest rate information is available at my.trsretire.com and on your quarterly statement. |

**Shareholder Type Fees:** Amounts may not be transferred directly to competing options.  Amounts transferred out may not subsequently be transferred back to this fund or to a competing option for 3 months.  Refer to Table 3 for additional restrictions that may be applicable due to Employer actions.

| | | | |
|---|---|---|---|
| TFLIC Stable Fund<br>Stable Value | 1.75% | 01/01/2016 - 12/31/2016 | The rate applies to new deposits/transfers received during the stated term, and the rate does not change during the term. The deposits/transfers received during the stated term are subject to a guaranteed minimum rate of 0.75%, which expires on 12/31/2020. Interest rate information is available at my.trsretire.com and on your quarterly statement. |

**Shareholder Type Fees:** Amounts may not be transferred directly to competing options, except to the Government Fixed Fund.  Amounts transferred out to non-competing options may not subsequently be transferred back to this fund or to a competing option for 3 months.  Amounts transferred to the Government Fixed Fund cannot be transferred back to this fund or to a competing option. Refer to Table 3 for additional restrictions that may be applicable due to Employer actions.

The following table focuses on the annuity and/or other guaranteed income options under the Plan. Annuities and/or other guaranteed income options are insurance contracts that allow you to receive a guaranteed stream of payments at regular intervals, usually beginning when you retire and lasting for your entire life. Such products are issued by insurance companies.  Unless otherwise stated, insurance products are made available under group annuity contracts issued by Transamerica Financial Life Insurance Company (TFLIC)*, 440 Mamaroneck Avenue, Harrison, New York 10528. Transamerica Retirement Solutions Corporation is affiliated with TFLIC. Guarantees of an insurance company are subject to its long-term financial strength and claims-paying ability.

## Comparative Investment Chart - Table 3 Annuity Options

| Name | Objectives/Goals | Pricing Factors | Withdrawal/Transfer Limitations/Fees |
|---|---|---|---|
| TFLIC Corporate Group Annuity Contract<br>TFLIC Government Fixed Fund | To provide a guaranteed stream of income for your life (or, if applicable, the joint lives of you and your surviving spouse or other designated beneficiary) or some other fixed period of time based on your accumulated plan savings allocated to the purchase of an annuity under this option. | The amount of the annuity benefit will be determined by (1) the amount applied to purchase the annuity, (2) the form of annuity elected, and (3) the non-participating single premium immediate group annuity purchase rates in effect on the Annuity Purchase Date. | Refer to Table 2 for additional limitations and fees that may be applicable to transfers and withdrawals. |

**Fees that Reduce Value (surrender charges, MVAs, admin. fees):** Amounts withdrawn or transferred due to Employer actions may be subject to a market value adjustment.  If the Employer suspends the contract, transfers are not permitted.  Amounts transferred within the 6 month period preceding contract suspension may be subject to a market value adjustment.

PT-11136  © Transamerica Retirement Solutions, LLC 02/16

Exhibit 1

## Comparative Investment Chart - Table 3 Annuity Options (continued)

| Name | Objectives/Goals | Pricing Factors | Withdrawal/Transfer Limitations/Fees |
|---|---|---|---|
| TFLIC Corporate Group Annuity Contract<br>TFLIC Stable Fund | To provide a guaranteed stream of income for your life (or, if applicable, the joint lives of you and your surviving spouse or other designated beneficiary) or some other fixed period of time based on your accumulated plan savings allocated to the purchase of an annuity under this option. | The amount of the annuity benefit will be determined by (1) the amount applied to purchase the annuity, (2) the form of annuity elected, and (3) the non-participating single premium immediate group annuity purchase rates in effect on the Annuity Purchase Date. | Refer to Table 2 for additional limitations and fees that may be applicable to transfers and withdrawals. |

**Fees that Reduce Value (surrender charges, MVAs, admin. fees):** Amounts withdrawn or transferred due to Employer actions, except at a segment maturity date, may be subject to a market value adjustment.  If the Employer suspends the contract, transfers are not permitted.  Amounts transferred within the 6 month period preceding contract suspension may be subject to a market value adjustment.

PT-11136  © Transamerica Retirement Solutions, LLC 02/16

Exhibit 1

# Exhibit 2



## Look for an Upcoming Plan Service Credit and Fund Additions

Linear Technology Corporation has recently completed a review of the Linear Technology 401(k) Plan with our recordkeeper Transamerica Retirement Solutions ("Transamerica").  As a result, we are pleased to inform you that, beginning *June 1, 2015*, certain fund revenue that Transamerica or its affiliates receive from the plan's investment options will be credited back to your account on a monthly basis as a plan service credit.

In the past, you have received a monthly credit of the fund revenue that was projected to be in excess of Transamerica's administrative fees and the Plan's investment advisor's fees. You received the plan service credit regardless of whether or not you chose to invest in the investment option that paid fund revenue.  However, effective *Monday, June 1, 2015*, a new, more transparent approach for crediting fund revenue will be implemented and you will begin receiving the plan service credit based on the funds you have actually chosen as investments.

No action is required on your part.  This new methodology will be implemented beginning *June 1, 2015* and any plan service credit you may receive will be reported on your quarterly benefit statements.

In conjunction with the above change, we are adding more investment funds for you to invest in (For more details, please refer to the enclosed notice):

| Investment Fund | Type of Option |
|---|---|
| PIMCO Income Institutional (PIMIX) | Multisector Bond[3] |
| Vanguard Short-Term Investment-Grade Adm (VFSUX) | Short-Term Bond[2] |

*For more information on any registered fund, please call 800-755-5801 for a free summary prospectus (if available) and/or prospectus. You should consider the objectives, risks, charges, and expenses of an investment carefully before investing. The summary prospectus and prospectus contain this and other information. Read them carefully before you invest.*

From time to time, investment fund companies may change the amount of revenue they pay to Transamerica or its affiliates.  As a result, the credits you see, could change in the future.

1

Exhibit 2

Here is a summary of the net plan service credits that will be effective *Monday, June 1, 2015*:

| Investment Fund | Type of Option | Net Plan Service Credit (+) |
|---|---|---|
| TFLIC Government Fixed Fund | Stable Value[1] | +0.30% |
| TFLIC Stable Fund | Stable Value[1] | +0.30% |
| Transamerica Partners Institutional Core Bond | Intermediate-Term Bonds[3] | +0.50% |
| Transamerica Partners Institutional Inflation-Protected Securities | Government Bonds[4] | +0.41% |
| PIMCO Income Institutional | Multisector Bond[3] | +0.03% |
| Vanguard Short-Term Investment-Grade Adm | Short-Term Bond[2] | 0.00% |
| RidgeWorth Large Cap Value Equity I | Large-Cap Value Stocks[5] | +0.50% |
| T. Rowe Price Equity Income Adv | Large-Cap Value Stocks[5] | +0.40% |
| American Funds Fundamental Invs R4 | Large-Cap Blend Stocks[6] | +0.35% |
| JPMorgan US Equity A | Large-Cap Blend Stocks[6] | +0.50% |
| Transamerica Partners Institutional Stock Index | Large-Cap Blend Stocks[6] | +0.22% |
| MFS Massachusetts Investors GR Stk R3 | Large-Cap Growth Stocks[7] | +0.50% |
| MainStay Large Cap Growth R1 | Large-Cap Growth Stocks[7] | +0.35% |
| Goldman Sachs Mid Cap Value A | Mid-Cap Value Stocks[8] | +0.55% |

2

Exhibit 2

| Aston/Fairpointe Mid Cap Fund N | Mid-Cap Blend Stocks[9] | +0.40% |
|---|---|---|
| Fidelity Spartan Extnd Mkt Idx Advtg | Mid-Cap Blend Stocks[9] | 0.00% |
| Munder Mid-Cap Core Growth A | Mid-Cap Growth Stocks[10] | +0.60% |
| Franklin Small Cap Value Adv | Small-Cap Value Stocks[11] | +0.25% |
| Baron Small Cap Retail | Small-Cap Growth Stocks[12] | +0.40% |
| JPMorgan Small Cap Equity A | Small-Cap Growth Stocks[12] | +0.50% |
| American Funds EuroPacific Gr R4 | World/Foreign Stocks[13] | +0.35% |
| Oakmark Global I | World/Foreign Stocks[13] | +0.40% |
| Vanguard Total International Stock Index Ins | World/Foreign Stocks[13] | 0.00% |
| Oakmark Equity & Income I | Balanced[14] | +0.40% |
| JPMorgan SmartRetirement Inc Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2015 Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2020 Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2025 Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2030 Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2035 Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2040 Inst | Target Date[15] | +0.10% |

Exhibit 2

| JPMorgan SmartRetirement 2045 Inst | Target Date[15] | +0.10% |
| JPMorgan SmartRetirement 2050 Inst | Target Date[15] | +0.10% |

**Administrative Costs and Expenses**

There are costs associated with the administration of your retirement plan.  In addition, there are costs associated with the investment services provided by the Plan's investment advisor.

The administrative costs include services such as plan administration, recordkeeping, and call center staffing.  The administrative fees to cover these costs will remain the same ($125.00 per year), but the plan administrative expenses will be charged differently. On a quarterly basis, $31.25 will be deducted as a fixed dollar amount from your account.

The investment advisory fees, which include an independent review of all funds offered in the plan, will be deducted pro-rata across all funds in your account also on a quarterly basis. In the past the administrative costs and the investment advisory fees were offset by fund revenue.

The actual amounts deducted from your account, as well as a description of the services to which the fees relate will be reported on your quarterly benefit statements. In addition, the plan service credits will also appear on your quarterly benefit statements.

For more details, please refer to the enclosed notices or contact Transamerica at 800-755-5801.

*Investment Styles and Risks*

[1]*Stable Value*: *Stable value investment choices seek capital preservation, but they do carry potential risks. Stable value investment choices may be comprised of or may invest in annuity or investment contracts issued by life insurance companies, banks, and other financial institutions. Stable value investment choices are subject to the risk that the insurance company or other financial institution will fail to meet its commitments, and are also subject to general bond market risks, including interest rate risk and credit risk.*

[2]*Short-Term Bonds*: *The value of bonds changes in response to changes in economic conditions, interest rates, and the creditworthiness of individual issuers. Bonds can lose value as interest rates rise, and an investor can lose principal.*

[3]*Intermediate-Term Bonds:* *The value of bonds changes in response to changes in economic conditions, interest rates, and the creditworthiness of individual issuers. Bonds can lose value as interest rates rise, and an investor can lose principal.*

[4]*Government Bonds:* *The value of bonds changes in response to changes in economic conditions, interest rates, and the creditworthiness of individual issuers. Bonds can lose value as interest rates rise, and an investor can lose principal. Any U.S. government guarantees of the securities pertain only to those securities and not to portfolios that invest in them.*

4

Exhibit 2

[5]**Large-Cap Value Stocks:** *Stocks have historically offered the potential for greater long-term returns, but also entail greater short-term risks than other investments. Value stocks may be subject to special risks that have caused the stocks to be out of favor and undervalued in the opinion of the portfolio managers who invest in them.*

[6]**Large-Cap Blend Stocks:** *Stocks have historically offered the potential for greater long-term returns, but also entail greater short-term risks than other investments. Blend strategies are subject to both growth and value risks.*

[7]**Large-Cap Growth Stocks:** *Stocks have historically offered the potential for greater long-term returns, but also entail greater short-term risks than other investments. Most growth investments offer higher potential capital appreciation but usually at above-average risk. Growth stocks can perform differently than other types of stocks and the market as a whole and can be more volatile than other types of stocks.*

[8]**Mid-Cap Value Stocks:** *Stocks have historically offered the potential for greater long-term returns, but also entail greater short-term risks than other investment choices. Mid-cap stocks may be more vulnerable to market downturns, and their prices could be more volatile than those of larger companies. Value stocks may be subject to special risks that have caused the stocks to be out of favor and undervalued in the opinion of the portfolio managers who invest in them.*

[9]**Mid-Cap Blend Stocks:** *Stocks have historically offered the potential for greater long-term returns, but also entail greater short-term risks than other investment choices. Mid-cap shares may be more vulnerable to market downturns, and their prices could be more volatile, than those of larger companies. Blend strategies are subject to both growth and value risks.*

[10]**Mid-Cap Growth Stocks:** *Stocks have historically offered the potential for greater long-term returns, but also entail greater short-term risks than other investment choices. Mid-cap stocks may be more vulnerable to market downturns, and their prices could be more volatile than those of larger companies. Most growth investments offer higher potential capital appreciation but usually at above-average risk. Growth stocks can perform differently than other types of stocks and the market as a whole and can be more volatile than other types of stocks.*

[11]**Small-Cap Value Stocks**: *Stocks of small companies involve additional risks, including a higher risk of failure, and are not as well established as large, blue-chip companies. Historically, small-company stocks have experienced greater price volatility than the overall market. Value stocks may be subject to special risks that have caused the stocks to be out of favor and undervalued in the opinion of the portfolio managers who invest in them.*

[12]**Small-Cap Growth Stocks:** *Small-company stocks involve additional risks, including a higher risk of failure, and are not as well established as large, blue-chip companies. Historically, small-company stocks have experienced greater price volatility than the overall market average.  Growth stocks can perform differently than other types of stocks and the market as a whole and can be more volatile than other types of stocks.*

[13]**World/Foreign Stocks:** *The risks of world/foreign stocks include, but are not limited to, currency risk, political risk, and risk associated with varying accounting standards. Investing in emerging, or developing, markets may accentuate these risks.*

Exhibit 2

[14]**Balanced:**  *Balanced investment options may be subject to all the risks of stocks and bonds. The higher the percentage of assets a balanced choice allocates to stocks, the greater the risk.*

[15]**Target Date:** *Target date options generally invest in a mix stocks, bonds, cash equivalents, and potentially other asset classes, either directly or via underlying investments, and may be subject to all of the risks of these asset classes. The investment choices' allocations become more conservative over time: The percentage of assets allocated to stocks will decrease while the percentage allocated to bonds will increase as the target date approaches. The higher the allocation is to stocks, the greater the risk. The principal value of the investment option is never guaranteed, including at and after the target date.*

*Investing in mutual funds involves risks.  The investment return and principal value of an investment will fluctuate, so that an investor's shares may be worth more or less than the original cost.  There is no assurance that any fund will meet its stated objectives.*

*Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY, 10528, distributes securities products.  Any mutual fund offered under the plan is distributed by that particular fund's associated fund family and its affiliated broker+dealer or other broker+dealers with effective selling agreements such as TISC. The Government Fixed Fund and the Stable Fund are each offered through a group annuity contract issued by Transamerica Financial Life Insurance Company (TFLIC), 440 Mamaroneck Ave., Harrison, NY 10528. Any guarantee of principal and/or interest under the group annuity contract is subject to the claims+paying ability of TFLIC. The Transamerica Partners Funds are managed by Transamerica Asset Management, Inc. (TAM).  Transamerica Retirement Solutions, TISC, TFLIC and TAM are affiliated Transamerica companies, and are not affiliated with Linear Technology Corporation.*

Linear (04/2015)

6

Exhibit 2

# Exhibit 3

# Retirement Account Statement

MICHAEL
BOUVY



## Summary for April 1, 2017 - June 30, 2017

### Linear Technology

| | Ending Balance |
|---|---|
| JK60719  00001    401(k) Plan | $124,352.51 |
| Total | $124,352.51 |

| | | |
|---|---|---|
| Beginning Balance | $116,826.83 | |
| **Money In** | | |
| Your Contributions | $5,710.62 | |
| **Money Out** | | |
| Withdrawals | $0.00 | |
| **Credits/Fees** | $63.99 | |
| **Gain/Loss** | $1,751.07 | |
| **Ending Balance** | $124,352.51 | |
| Vested Balance | $124,352.51 | |

### Personalized Rate of Return—All Accounts

| 3 Mo. | YTD | 1 Yr. | 3 Yr. | 5 Yr. |
|---|---|---|---|---|
| 1.52% | 11.12% | 11.65% | 3.12% | 3.53% |

*Your Personal Rate of Return (PRR)
represents the specific performance of the
investment choices you have selected. The PRR
calculates the percentage change of your account
balance by weighting all activity included in the
time period measured.  It includes your
investment earnings during the period  and is net
of plan fees and credits. Indicated returns are
annualized when performance of one year or
greater is shown.*

This statement has been carefully prepared to ensure it is
accurate and up-to-date. Should you find any
discrepancies, please let us know in writing within 30 days.
Please direct any concerns to Transamerica by calling the
phone number on this statement or signing into your
account at my.trsretire.com and clicking "Help".

## Your Investment Allocations



**Current Allocations**
*How your current account balance
is spread among investment types*      ■ Stocks

100%



**Future Allocations**
*How your future contributions will
be allocated among investment
types*

100%

## Your Retirement Outlook® as of 06/16/17


Rainy

A rainy forecast means your current strategy is likely to produce
retirement income that meets less than 65% of your goal.

| | Monthly | Yearly |
|---|---|---|
| Estimated Income, including estimated Social Security | $2,416.67 | $29,000.00 |
| Income Goal | $5,750.00 | $69,000.00 |
| **Estimated Income Gap** | -$3,333.33 | -$40,000.00 |

*Improve Your Retirement Outlook today!*

**IMPORTANT: The projections or other information generated by the engine regarding
the likelihood of various investment outcomes are hypothetical, do not reflect actual
investment results, and are not guarantees of future results. Results derived from the
tool may vary with each use and over time.** Please visit your plan website for more
information regarding the criteria and methodology used, the engine's limitations and key
assumptions, and other important information.

Contact Us:
800-755-5801
my.trsretire.com

See other pages for definitions
and explanations.

As a reminder, the salary deferral limit for 2016 is $18,000. If you will be age 50 or
older by the end of the year, you may contribute an additional $6,000. The next
open enrollment/change date is January 1, 2017.

**Download the My TRSRetire App Today!**
*Managing your retirement account has never been easier. Get the latest information
right from your smartphone or tablet. Download the app today in the Apple App
Store or on Google Play.*



April 1, 2017 - June 30, 2017    Case 3:19-cv-00881-DMS-BLM    Document 16    Filed 09/24/19    PageID.169    Page 84 of 100    Page 2 of 8

JK60719   00001 - 401(k) Plan

Information on page 2 and forward relates to this specific plan.

## Recent Activity

| Fund | Ticker | Beginning Balance | Money In | Money Out | Transfers | Credits/Fees | Gain/Loss | Ending Balance | Units/Shares | % of account |
|------|--------|------------------:|---------:|----------:|----------:|-------------:|----------:|---------------:|-------------:|-------------:|
| **Stocks** | | | | | | | | | | |
| AMG Managers Fairpointe Mid Cap N | CHTTX | $46,468.12 | $1,142.11 | $0.00 | $0.00 | $46.13 | -$432.04 | $47,224.32 | 1,101.570488 | 38% |
| American Funds Fundamental Invs R4 | RFNEX | $334.99 | $1,142.18 | $0.00 | $0.00 | $0.77 | $24.65 | $1,502.59 | 25.558519 | 1% |
| Franklin Small Cap Value Adv | FVADX | $34,793.10 | $0.00 | $0.00 | $0.00 | $21.75 | $164.88 | $34,979.73 | 610.999656 | 28% |
| JPMorgan Small Cap Equity A | VSEAX | $337.06 | $1,142.11 | $0.00 | $0.00 | $1.09 | $24.88 | $1,505.14 | 30.950830 | 2% |
| MFS Massachusetts Investors Gr Stk R3 | MIGHX | $34,227.44 | $0.00 | $0.00 | $0.00 | $44.18 | $1,920.20 | $36,191.82 | 1,372.982796 | 29% |
| RidgeWorth Ceredex Large Cap Value Equity I | STVTX | $332.32 | $1,142.11 | $0.00 | $0.00 | $1.09 | $24.29 | $1,499.81 | 85.703255 | 1% |
| T. Rowe Price Equity Income Adv | PAFDX | $333.80 | $1,142.11 | $0.00 | $0.00 | -$51.02 | $24.21 | $1,449.10 | 44.059009 | 1% |
| **Totals** | | **$116,826.83** | **$5,710.62** | **$0.00** | **$0.00** | **$63.99** | **$1,751.07** | **$124,352.51** | | **100%** |
| **Vested Balance** | | | | | | | | **$124,352.51** | | |

| Money In Detail | |
|-----------------|---:|
| Your Contributions | $5,710.62 |

## Fee/Credit Details for Statement Period

| | | Plan Fees | Plan Credits | Total Net Fees/Credits |
|---|---|---:|---:|---:|
| **AMG Managers Fairpointe Mid Cap N** | Plan Service Credit | $0.00 | $46.13 | $46.13 |
| **American Funds Fundamental Invs R4** | Plan Service Credit | $0.00 | $0.77 | $0.77 |
| **Franklin Small Cap Value Adv** | Plan Service Credit | $0.00 | $21.75 | $21.75 |
| **JPMorgan Small Cap Equity A** | Plan Service Credit | $0.00 | $1.09 | $1.09 |
| **MFS Massachusetts Investors Gr Stk R3** | Plan Service Credit | $0.00 | $44.18 | $44.18 |
| **RidgeWorth Ceredex Large Cap Value Equity I** | Plan Service Credit | $0.00 | $1.09 | $1.09 |
| **T. Rowe Price Equity Income Adv** | Administrative Fee - Per Account | -$51.84 | $0.00 | -$51.84 |
| | Plan Service Credit | $0.00 | $0.82 | $0.82 |
| **Total Administrative Fee - Per Account** | | | | **-$51.84** |
| **Total Plan Service Credit** | | | | **$115.83** |
| **Total Net Fees/Credits** | | | | **$63.99** |

Different funds have different fees and fee structures (please refer to your plan's Fund and Fee Information, available on the website, for more details). The table above expresses all charges as dollar amounts.

**April 1, 2017 - June 30, 2017**    Case 3:19-cv-00881-DMS-BLM    Document 16    Filed 09/24/19    PageID.170    Page 85 of 100     Page 3 of 8

JK60719   00001 - 401(k) Plan

## Interest Rates Applicable to Contributions Received During the Current Statement Period

Contributions made to the TFLIC Gvt Fixed during the current Statement Period [April 1, 2017 - June 30, 2017], received an annualized return/credited rate of 1.20%.

Contributions made to the TFLIC Stable during the current Statement Period [April 1, 2017 - June 30, 2017], received an annualized return/credited rate of 1.70%.

April 1, 2017 - June 30, 2017    Case 3:19-cv-00881-DMS-BLM    Document 16    Filed 09/24/19    PageID.171    Page 86 of 100    Page 4 of 8

JK60719  00001 - 401(k) Plan

## About Probability Illustrations, Limitations, and Key Assumptions

The probability illustrations generated from the engine are based on Monte Carlo simulations of 500 possible investment scenarios for a given time period and assume a range of possible returns. The illustrations are generated according to models developed by Morningstar Investment Management LLC, a leading independent provider of asset allocation, manager selection, and portfolio construction. The *Your Retirement Outlook®* graphic reflects the difference between the model's estimated annual income (which corresponds to a 70% probability level of income in the investment scenarios simulated) and your annual income goal.

When forecasting the probability of achieving your income goal, the model employs different returns for different asset classes, based on Morningstar Investment Management's capital market assumptions developed using historical and forward-looking data. Forecasts of expected return, expected standard deviation and correlation among asset classes based on Morningstar Investment Management LLC's proprietary equity, fixed income, currency and risk models. Current assets are assigned to asset classes based on Morningstar Categories, and fees and charges inherent in investing are incorporated with an average fee assumption for each asset class. The benchmarks used for modeling the various asset classes are below. Return assumptions are updated annually; these updates may have a material impact on your projections. Return assumptions are estimates not guarantees. The returns you experience may be materially different than projections. You cannot invest directly in an index.

|  | Asset Class | Benchmark |
|---|---|---|
| Lower Risk/Volatility ● | Cash Alternatives | BofA ML US Treasury Bill 3 Month USD |
|  | Short Term Bonds | BarCap US Govt/Credit 1-3 Yr TR |
|  | Aggregate Bonds | Barclays Capital US Agg Bond TR |
|  | Foreign Bonds | Barclays Global Aggregate Ex USD TR |
|  | Direct Real Estate | NCREIF Transaction Based Index |
|  | High Yield Bonds | Barclays Capital US Corporate High Yield TR |
|  | TIPS | Barclays Capital Global Inflation Linked US TIPS TR |
|  | Long Term Bonds | Barclays Capital US Govt/Credit Long TR |
|  | Large Cap Value Equity | Russell 1000 Value TR |
|  | Large Cap Equity | Russell 1000 TR |
|  | Mid Cap Value Equity | Russell Mid Cap Value TR |
|  | Mid-Cap Equity | Russell Mid Cap TR |
|  | International Equity | MSCI EAFE GR |
|  | Commodities | Bloomberg Commodity TR |
|  | Mid / Small Cap Value Equity | Russell 2500 Value TR |
|  | Large Cap Growth Equity | Russell 1000 Growth TR |
|  | Mid / Small Cap Equity | Russell 2500 TR |
|  | Small Cap Value Equity | Russell 2000 Value TR |
|  | Small Cap Equity | Russell 2000 TR |
|  | Mid Cap Growth Equity | Russell Mid Cap Growth TR |
|  | Mid / Small Cap Growth Equity | Russell 2500 Growth TR |
|  | REITs | FTSE NAREIT Equity REITs TR |
| Higher Risk/Volatility ● | Small Cap Growth Equity | Russell 2000 Growth TR |
|  | Emerging Markets Equity | MSCI EM GR |

Unless you choose otherwise or your employer supplies different information, the probability illustrations assume retirement at the age at which you qualify for full Social Security benefits and an annual retirement income goal of 80% of your projected final working salary. Social Security estimates are based on the Social Security Administration methodology and your current salary. The probability illustrations also assume a consistent contribution percentage (unless you've chosen to periodically increase it) and asset allocation (no future changes or rebalancing), annual inflation of approximately 2%, and annual salary increases based on a calculation that incorporates multiple factors including a salary growth curve and inflation. Mortality assumptions are based on the Society of Actuaries tables.

The models are subject to a number of limitations. Returns associated with market extremes may occur more frequently than assumed in the models. Some asset classes have relatively limited histories; for these classes the models use historical data for shorter time periods. The model does not consider other asset classes such as hedge funds or private equity, which may have characteristics similar or superior to those used in the model. Capital market assumptions are forecasts which involve known and unknown risks, uncertainties, and other factors which may cause the actual results to differ materially and/or substantially from any future results, performance, or achievements expressed or implied by those projections for any reason.

April 1, 2017 - June 30, 2017    Case 3:19-cv-00881-DMS-BLM    Document 16    Filed 09/24/19    PageID.172    Page 87 of 100    Page 5 of 8

JK60719   00001 - 401(k) Plan

There is no guarantee that your income goal will be achieved or that the aggregate accumulated amount will ensure a specified annual retirement income. Results may vary with each use and over time.

IMPORTANT: The projections or other information generated by the engine regarding the likelihood of various investment outcomes are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results. Moreover, even though the tool's estimates are statistically sound based upon the simulations it runs, the tool cannot foresee or account for every possible scenario that may negatively impact your financial situation. Thus you should monitor your account regularly and base your investment decisions on your time horizon, risk tolerance, and personal financial situation, as well as on the information in the prospectuses for investments you consider.

Transamerica has licensed the Morningstar® Wealth Forecasting Engine℠ from Morningstar, Inc., which is used by Morningstar Investment Management LLC, a registered investment adviser and subsidiary of Morningstar, Inc, in the services it provides to participants. Morningstar and Morningstar Investment Management are not affiliated with Transamerica. The Morningstar name and logo are registered marks of Morningstar, Inc.

Securities offered by Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY 10528. Investment advisory services are offered through Transamerica Retirement Advisors, LLC (TRA), registered investment advisor. All Transamerica companies identified are affiliated companies.

## Additional Important Information

**Fees and Expenses:** In addition to fees and expenses, if any, shown on this statement, some of the plan's administrative expenses were paid from the total annual operating expenses (including from administrative fees, Rule 12b-1 fees, and sub-transfer agent fees) of one or more of the plan's investment options.  More detailed information is available online at my.trsretire.com by selecting Fund and Fee Information from the Review menu.

**Investments:** If you direct the investment of assets in your account under the plan, please note that:
I. Any limitations or restrictions on your right to direct an investment under the plan are explained below.

    **Account No. JK60719   00001**  You may change your investment allocations 12 time(s) per plan year.  Transfers among investment options may be made 12 times per plan year and may be subject to certain restrictions. One transfer is allowed every 0 month(s).

    **Account No. JK60719   00001**

    **You may not transfer from fund TFLIC Stable to the following fund(s):**
        Vanguard Short-Term Investment-Grade Adm

    **You may not transfer from fund TFLIC Gvt Fixed to the following fund(s):**
        Vanguard Short-Term Investment-Grade Adm

April 1, 2017 - June 30, 2017   Case 3:19-cv-00881-DMS-BLM   Document 16   Filed 09/24/19   PageID.173   Page 88 of 100   Page 6 of 8

JK60719  00001 - 401(k) Plan

II. **Importance of a Well-Balanced Diversified Portfolio:**   To help achieve long-term retirement security, you should give careful consideration to the benefits of a well-balanced and diversified investment portfolio. Spreading your assets among different types of investments can help you achieve a favorable rate of return, while minimizing your overall risk of losing money. This is because market or other economic conditions that cause one category of assets, or one particular security, to perform very well often cause another asset category, or another particular security, to perform poorly. If you invest more than 20% of your retirement savings in any one company or industry, your savings may not be properly diversified. Although diversification is not a guarantee against loss, it is an effective strategy to help you manage investment risk. In deciding how to invest your retirement savings, you should take into account all of your assets, including any retirement savings outside of the plan. No single approach is right for everyone because, among other factors, individuals have different financial goals, different time horizons for meeting their goals, and different tolerances for risk. It is also important to periodically review your investment portfolio, your investment objectives, and the investment options under the plan to help ensure that your retirement savings will meet your retirement goals.

III. **Rights to Additional Information:**   For sources of information on individual investing and diversification, the Department of Labor provides information at www.dol.gov/ebsa/investing.html.

Descriptions of your plan's benefits and features are subject to the provisions of the applicable plan documents, which govern in the event of any discrepancy.

*Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY 10528, distributes securities products. Any mutual fund offered under the plan is distributed by that particular fund's associated fund family and its affiliated broker-dealer or other broker-dealers with effective selling agreements such as TISC. Bank collective trusts funds, if offered under the plan, are not insured by the FDIC, the Federal Reserve Bank or any other government agency and are not registered with the Securities and Exchange Commission. Group annuity contracts, if offered under the plan, are made available through the applicable insurance company. Any guarantee of principal and/or interest under a group annuity contract is subject to the claims-paying ability of the applicable insurer. Certain investment options made available under the plan may be offered through affiliates of Transamerica Retirement Solutions and TISC. These may include: (1) the Transamerica Funds (registered mutual funds distributed by Transamerica Capital, Inc. (TCI) and advised by Transamerica Asset Management, Inc. (TAM)); (2) Transamerica Retirement Solutions Collective Trust (formerly the Diversified Investment Advisors Collective Trust), a collective trust fund of Massachusetts Fidelity Trust Company (MFTC) (includes the Stable Pooled Fund); (3) group annuity contracts issued by Transamerica Financial Life Insurance Company (TFLIC), 440 Mamaroneck Avenue, Harrison, NY 10528 (includes the Stable Fund, the Fixed Fund, the Guaranteed Pooled Fund, and SecurePath for Life); and (4) group annuity contracts issued by Transamerica Life Insurance Company (TLIC), 4333 Edgewood Road NE, Cedar Rapids, IA 52499 (includes SecurePath for Life®).*

# Exhibit 4

# Retirement Account Statement

## Your Investment Allocations

MICHAEL
BOUVY





**Current Allocations**

*How your current account balance is spread among investment types*

■ Stocks

100%



**Future Allocations**

*How your future contributions will be allocated among investment types*

100%

## Summary for October 1, 2016 - December 31, 2016

### Linear Technology

| | Ending Balance |
|---|---|
| JK60719   00001   401(k) Plan | $89,170.84 |
| Total | $89,170.84 |

| | |
|---|---|
| **Beginning Balance** | $85,742.87 |
| **Money In** | |
| Your Contributions | $4,707.93 |
| **Money Out** | |
| Withdrawals | $0.00 |
| **Credits/Fees** | $53.91 |
| **Gain/Loss** | -$1,333.87 |
| **Ending Balance** | $89,170.84 |
| Vested Balance | $89,170.84 |

### Personalized Rate of Return—All Accounts

| 3 Mo. | YTD | 1 Yr. | 3 Yr. | 5 Yr. |
|---|---|---|---|---|
| -1.48% | 5.89% | 5.89% | -0.27% | 1.03% |

*Your Personal Rate of Return (PRR) represents the specific performance of the investment choices you have selected. The PRR calculates the percentage change of your account balance by weighting all activity included in the time period measured.  It includes your investment earnings during the period  and is net of plan fees and credits. Indicated returns are annualized when performance of one year or greater is shown.*

## Your Retirement Outlook® as of 12/16/16




Rainy

A rainy outlook means your current strategy is likely to produce retirement income that meets less than 65% of your goal.

| | Monthly | Yearly |
|---|---|---|
| Estimated Income, including estimated Social Security | $2,591.67 | $31,100.00 |
| Income Goal | $5,766.67 | $69,200.00 |
| **Estimated Income Gap** | -$3,175.00 | -$38,100.00 |

Improve your outlook today!

**IMPORTANT: The projections or other information generated by OnTrack regarding the likelihood of various investment outcomes are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results. Results derived from the OnTrack tool may vary with each use and over time.** Please visit OnTrack for more information regarding the criteria and methodology used, the tool's limitations and key assumptions, and other important information.

Contact Us:
800-755-5801
my.trsretire.com

See other pages for definitions
and explanations.



As a reminder, the salary deferral limit for 2016 is $18,000. If you will be age 50 or older by the end of the year, you may contribute an additional $6,000. The next open enrollment/change date is January 1, 2017.

As part of our commitment to enhancing your online experience, we're making some important changes to our website. You'll notice additional security features to protect your privacy and personal information. We're also creating a new feature to access your Transamerica accounts. When fully developed, you will only need to sign in once to review your retirement account and any others you may have with us. Sign in to your account at my.trsretire.com to see how we're making your experience with Transamerica easier and more convenient.

October 1, 2016 - December 31, 2016 Case 3:19-cv-00881-DMS-BLM   Document 16   Filed 09/24/19   PageID.176   Page 91 of 100     Page 2 of 6

JK60719  00001 - 401(k) Plan

Information on page 2 and forward relates to this specific plan.

## Recent Activity

| Fund | Ticker | Beginning Balance | Money In | Money Out | Transfers | Credits/Fees | Gain/Loss | Ending Balance | Units/Shares | % of account |
|------|--------|-------------------|----------|-----------|-----------|--------------|-----------|----------------|--------------|--------------|
| **Bonds** | | | | | | | | | | |
| Transamerica Partners Instl Core Bond | DICBX | $85,742.87 | $0.00 | $0.00 | -$82,881.71 | $42.78 | -$2,903.94 | $0.00 | 0.000000 | 0% |
| **Stocks** | | | | | | | | | | |
| AMG Managers Fairpointe Mid Cap N | CHTTX | $0.00 | $941.58 | $0.00 | $42,384.97 | $9.63 | $213.59 | $43,549.77 | 1,067.657894 | 49% |
| American Funds Fundamental Invs R4 | RFNEX | $0.00 | $941.58 | $0.00 | -$710.62 | $2.58 | $370.38 | $603.92 | 11.115774 | 1% |
| JPMorgan Small Cap Equity A | VSEAX | $0.00 | $941.61 | $0.00 | -$957.62 | $3.69 | $616.27 | $603.95 | 13.227113 | 1% |
| MFS Massachusetts Investors Gr Stk R3 | MIGHX | $0.00 | $941.58 | $0.00 | $43,013.48 | $11.98 | -$138.04 | $43,829.00 | 1,917.278742 | 49% |
| T. Rowe Price Equity Income Adv | PAFDX | $0.00 | $941.58 | $0.00 | -$848.50 | -$16.75 | $507.87 | $584.20 | 18.605095 | 0% |
| **Totals** | | **$85,742.87** | **$4,707.93** | **$0.00** | **$0.00** | **$53.91** | **-$1,333.87** | **$89,170.84** | | **100%** |
| **Vested Balance** | | | | | | | | **$89,170.84** | | |

| Money In Detail | |
|-----------------|---|
| Your Contributions | $4,707.93 |

## Fee/Credit Details for Statement Period

| | | Plan Fees | Plan Credits | Total Net Fees/Credits |
|---|---|-----------|--------------|------------------------|
| AMG Managers Fairpointe Mid Cap N | Plan Service Credit | $0.00 | $9.63 | $9.63 |
| American Funds Fundamental Invs R4 | Plan Service Credit | $0.00 | $2.58 | $2.58 |
| JPMorgan Small Cap Equity A | Plan Service Credit | $0.00 | $3.69 | $3.69 |
| MFS Massachusetts Investors Gr Stk R3 | Plan Service Credit | $0.00 | $11.98 | $11.98 |
| T. Rowe Price Equity Income Adv | Administrative Fee - Per Account | -$19.72 | $0.00 | -$19.72 |
| | Plan Service Credit | $0.00 | $2.97 | $2.97 |
| Transamerica Partners Instl Core Bond | Administrative Fee - Per Account | -$31.25 | $0.00 | -$31.25 |
| | Plan Service Credit | $0.00 | $74.03 | $74.03 |
| **Total Administrative Fee - Per Account** | | | | **-$50.97** |
| **Total Plan Service Credit** | | | | **$104.88** |
| **Total Net Fees/Credits** | | | | **$53.91** |

Different funds have different fees and fee structures (please refer to your plan's Fund and Fee Information, available on the website, for more details). The table above expresses all charges as dollar amounts.


TRANSAMERICA
Retirement Solutions

## Interest Rates Applicable to Contributions Received During the Current Statement Period

Contributions made to the TFLIC Gvt Fixed during the current Statement Period [October 1, 2016 - December 31, 2016], received an annualized return/credited rate of 1.25%.

Contributions made to the TFLIC Stable during the current Statement Period [October 1, 2016 - December 31, 2016], received an annualized return/credited rate of 1.75%.



October 1, 2016 - December 31, 2016 Case 3:19-cv-00881-DMS-BLM   Document 16   Filed 09/24/19   PageID.178   Page 93 of 100     Page 4 of 6

JK60719  00001 - 401(k) Plan

## About Probability Illustrations, Limitations, and Key Assumptions

The probability illustrations the *OnTrack®* tool generates are based on "Monte Carlo" simulations of 500 possible investment scenarios for a given time period and assume a range of possible returns. The illustrations are generated according to models developed by Ibbotson Associates, a leading independent provider of asset allocation, analytical, and wealth forecasting software. The *Your Retirement Outlook* ℠ graphic reflects the difference between the model's estimated annual income (which corresponds to a 70% probability of achieving your income goal in the investment scenarios simulated) and your annual income goal.

When forecasting the probability of achieving your income goal, the model employs different returns for different asset classes, based on Ibbotson's capital market assumptions developed using historical and forward-looking data. Current assets are assigned to asset classes based on Morningstar categories, and fees and charges inherent in investing are incorporated with an average fee assumption for each asset class. The historical and forward-looking benchmarks used for modeling the various asset classes are below. Return assumptions are updated annually; these updates may have a material impact on your projections. Return assumptions are estimates not guarantees. The returns you experience may be materially different than those projections. You cannot invest directly in an index.

|  | Asset Class | Forward-Looking Benchmark | Historical Benchmark |
|---|---|---|---|
| Lower Risk/Volatility | Cash | Citigroup 3-Month Treasury Bill | Ibbotson SBBI T-Bill Index |
|  | Short-Term Bonds | Barclays U.S. Treasury 1-3 Yr Term Index | Ibbotson 2 Yr Treasury Index |
|  | TIPS | Barclays Capital U.S. Treasury: U.S. TIPS | Ibbotson TIPS Index |
|  | Aggregate Bonds | Barclays Capital U.S. Aggregate Index | Barclays Capital U.S. Aggregate Index |
|  | Long-Term Bonds | Barclays Capital U.S. Long Credit A Index | Ibbotson 25 Year Treasury Index |
|  | High-Yield Bonds | Barclays Capital U.S. Corporate High Yield Index | Ibbotson High Yield Index |
|  | International Bonds | Citigroup WGBI | Ibbotson Global Bond Composite |
|  | Large-Cap Stocks | Russell 1000® Index | CRSP Declines Index |
|  | Mid-Cap Stocks | Russell Midcap Index | CRSP Declines Index |
|  | Small/Mid-Cap Stocks | Russell 2500® Index | CRSP Declines Index |
|  | Small-Cap Stocks | Russell 2000® Index | CRSP Declines Index |
|  | REITS | FTSE NAREIT Equity REITs | FTSE NAREIT Equity REITs |
|  | International Stocks | MSCI EAFE Index | MSCI EAFE Index |
| Higher Risk/Volatility | Emerging Markets | MSCI Emerging Markets Index | Ibbotson Emerging Market Composite |
|  | Commodities | DJ-UBSCISM | S&P GSCI Commodity Sector Indices |

Unless you choose otherwise or your employer supplies different information, the probability illustrations assume retirement at the age at which you qualify for full Social Security benefits and an annual retirement income goal of 80% of your projected final working salary. Social Security estimates are based on the Social Security Administration methodology and your current salary. The probability illustrations also assume a consistent contribution percentage (unless you've chosen to periodically increase it) and asset allocation (no future changes or rebalancing), annual inflation of approximately 2%, and annual salary increases based on a calculation that incorporates multiple factors including a salary growth curve and inflation. Mortality assumptions are based on the Society of Actuaries tables.

The models are subject to a number of limitations. Returns associated with market extremes may occur more frequently than assumed in the models. Some asset classes have relatively limited histories; for these classes the models use historical data for shorter time periods. The model does not consider other asset classes such as hedge funds or private equity, which may have characteristics similar or superior to those used in the model.

**There is no guarantee that your income goal will be achieved or that the aggregate accumulated amount will ensure a specified annual retirement income. Results derived from the OnTrack® tool may vary with each use and over time.**

**IMPORTANT: The projections or other information generated by the OnTrack® tool regarding the likelihood of various investment outcomes are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results.**   Moreover, even though the tool's estimates are statistically sound based upon the simulations it runs, the tool cannot foresee or account for every possible scenario that may negatively impact your financial situation. Thus you should monitor your account regularly and base your investment decisions on your time horizon, risk tolerance, and personal financial situation, as well as on the information in the prospectuses for investments you consider.

Securities offered by Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY 10528. TISC and Transamerica Retirement Solutions are affiliated companies.



JK60719  00001 - 401(k) Plan

## Additional Important Information

**Fees and Expenses:** In addition to fees and expenses, if any, shown on this statement, some of the plan's administrative expenses were paid from the total annual operating expenses (including from administrative fees, Rule 12b-1 fees, and sub-transfer agent fees) of one or more of the plan's investment options. More detailed information is available online at my.trsretire.com by selecting Fund and Fee Information from the Review menu.

**Investments:** If you direct the investment of assets in your account under the plan, please note that:
I. Any limitations or restrictions on your right to direct an investment under the plan are explained below.

**Account No. JK60719  00001** You may change your investment allocations 12 time(s) per plan year. Transfers among investment options may be made 12 times per plan year and may be subject to certain restrictions. One transfer is allowed every 0 month(s).

**Account No. JK60719  00001**

**You may not transfer from fund TFLIC Stable to the following fund(s):**
Vanguard Short-Term Investment-Grade Adm

**You may not transfer from fund TFLIC Gvt Fixed to the following fund(s):**
Vanguard Short-Term Investment-Grade Adm

II. **Importance of a Well-Balanced Diversified Portfolio:** To help achieve long-term retirement security, you should give careful consideration to the benefits of a well-balanced and diversified investment portfolio. Spreading your assets among different types of investments can help you achieve a favorable rate of return, while minimizing your overall risk of losing money. This is because market or other economic conditions that cause one category of assets, or one particular security, to perform very well often cause another asset category, or another particular security, to perform poorly. If you invest more than 20% of your retirement savings in any one company or industry, your savings may not be properly diversified. Although diversification is not a guarantee against loss, it is an effective strategy to help you manage investment risk. In deciding how to invest your retirement savings, you should take into account all of your assets, including any retirement savings outside of the plan. No single approach is right for everyone because, among other factors, individuals have different financial goals, different time horizons for meeting their goals, and different tolerances for risk. It is also important to periodically review your investment portfolio, your investment objectives, and the investment options under the plan to help ensure that your retirement savings will meet your retirement goals.

III. **Rights to Additional Information:** For sources of information on individual investing and diversification, the Department of Labor provides information at www.dol.gov/ebsa/investing.html.

Descriptions of your plan's benefits and features are subject to the provisions of the applicable plan documents, which govern in the event of any discrepancy.

*Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY 10528, distributes securities products. Any mutual fund offered under the plan is distributed by that particular fund's associated fund family and its affiliated broker-dealer or other broker-dealers with effective selling agreements such as TISC. Bank collective trusts funds, if offered under the plan, are not insured by the FDIC, the Federal Reserve Bank or any other government agency and are not registered with the Securities and Exchange Commission. Group annuity contracts, if offered under the plan, are made available through the applicable insurance company. Any guarantee of principal and/or interest under a group annuity contract is subject to the claims-paying ability of the applicable insurer. Certain investment options made available under the plan may be offered through affiliates of Transamerica Retirement Solutions and TISC. These may include: (1) the Transamerica Funds (registered mutual funds distributed by Transamerica Capital, Inc. (TCI) and advised by Transamerica Asset Management, Inc. (TAM)); (2) Transamerica Retirement Solutions Collective Trust (formerly the Diversified Investment Advisors Collective Trust), a collective trust fund of Massachusetts Fidelity Trust Company (MFTC) (includes the Stable Pooled Fund); (3) group annuity contracts issued by Transamerica Financial Life Insurance Company (TFLIC), 440 Mamaroneck Avenue, Harrison, NY 10528 (includes the Stable Fund, the Fixed Fund, the Guaranteed Pooled Fund, and SecurePath for Life); and (4) group annuity contracts issued by Transamerica Life Insurance Company (TLIC), 4333 Edgewood Road NE, Cedar Rapids, IA 52499 (includes SecurePath for Life®).*



# Exhibit 5

# Retirement Account Statement

MICHAEL
BOUVY



## Summary for April 1, 2016 - June 30, 2016

### Linear Technology

| | Ending Balance |
|---|---|
| JK60719  00001    401(k) Plan | $81,480.56 |
| Total | $81,480.56 |

| Beginning Balance | $75,872.34 |
|---|---|
| Money In | |
| Your Contributions | $3,533.06 |
| Employer Contributions | $0.00 |
| Money Out | |
| Withdrawals | $0.00 |
| Credits/Fees | -$128.64 |
| Gain/Loss | $2,203.80 |
| Ending Balance | $81,480.56 |
| Vested Balance | $81,480.56 |

### Personalized Rate of Return—All Accounts

| 3 Mo. | YTD | 1 Yr. | 3 Yr. | 5 Yr. |
|---|---|---|---|---|
| 2.65% | 6.92% | -3.60% | 0.44% | -1.04% |

*Your Personal Rate of Return (PRR)* represents the specific performance of the investment choices you have selected. The PRR calculates the percentage change of your account balance by weighting all activity included in the time period measured.  It includes your investment earnings during the period  and is net of plan fees and credits. Indicated returns are annualized when performance of one year or greater is shown.

## Your Investment Allocations



### Current Allocations
*How your current account balance is spread among investment types*

100%
15%

■ Bonds*
▨ Stocks
▥ Multi-Asset/Other

### Future Allocations
*How your future contributions will be allocated among investment types*



85%

*includes stable value and money market

## Your Retirement Outlook® as of 06/10/16



Rainy

A rainy outlook means your current strategy is likely to produce retirement income that meets less than 65% of your goal.

| | Monthly | Yearly |
|---|---|---|
| Estimated Income | $2,308.33 | $27,700.00 |
| Income Goal | $5,766.67 | $69,200.00 |
| Estimated Income Gap | -$3,458.33 | -$41,500.00 |

### Improve your outlook today!

**IMPORTANT: The projections or other information generated by OnTrack regarding the likelihood of various investment outcomes are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results. Results derived from the OnTrack tool may vary with each use and over time.** Please visit OnTrack for more information regarding the criteria and methodology used, the tool's limitations and key assumptions, and other important information.

Contact Us:
800-755-5801
my.trsretire.com

See other pages for definitions
and explanations.


TRANSAMERICA®
Retirement Solutions

As a reminder, the salary deferral limit for 2016 is $18,000. If you will be age 50 or older by the end of the year, you may contribute an additional $6,000. The next open enrollment/change date is October 1, 2016.

*Saving more in 2016!* For 2016, the IRS retained the retirement plan contribution limit to $18,000. The additional "catch-up" contribution limit also remained at $6,000 for those at least age 50. For Individual Retirement Accounts, the limit remains at $5,500 and $6,500 for account holders age 50 or older.  Consider saving more today!

April 1, 2016 - June 30, 2016   Case 3:19-cv-00881-DMS-BLM   Document 16   Filed 09/24/19   PageID.182   Page 97 of 100   Page 2 of 6

JK60719   00001 - 401(k) Plan

Information on page 2 and forward relates to this specific plan.

## Recent Activity

| Fund | Ticker | Beginning Balance | Money In | Money Out | Transfers | Credits/Fees | Gain/Loss | Ending Balance | Units/Shares | % of account |
|---|---|---|---|---|---|---|---|---|---|---|
| **Multi-Asset/Other** | | | | | | | | | | |
| Oakmark Equity & Income I | OAKBX | $0.00 | $383.24 | $0.00 | -$385.75 | $0.15 | $2.36 | $0.00 | 0.000000 | 0% |
| **Bonds** | | | | | | | | | | |
| Transamerica Partners Instl Core Bond | DICBX | $0.00 | $0.00 | $0.00 | $80,867.33 | $4.61 | $608.62 | $81,480.56 | 7,400.595738 | 100% |
| **Stocks** | | | | | | | | | | |
| ASTON/Fairpointe Mid Cap N | CHTTX | $19,018.44 | $383.24 | $0.00 | -$19,311.61 | $14.82 | -$104.89 | $0.00 | 0.000000 | 0% |
| American Funds EuroPacific Gr R4 | REREX | $0.00 | $342.35 | $0.00 | -$352.09 | $0.23 | $9.51 | $0.00 | 0.000000 | 0% |
| American Funds Fundamental Invs R4 | RFNEX | $0.00 | $383.21 | $0.00 | -$393.23 | $0.13 | $9.89 | $0.00 | 0.000000 | 0% |
| Fidelity Extended Market Index Premium | FSEVX | $19,197.10 | $638.74 | $0.00 | -$20,450.84 | -$153.16 | $768.16 | $0.00 | 0.000000 | 0% |
| Franklin Small Cap Value Adv | FVADX | $0.00 | $293.44 | $0.00 | -$318.13 | $0.14 | $24.55 | $0.00 | 0.000000 | 0% |
| Goldman Sachs Mid Cap Value A | GCMAX | $18,897.48 | $0.00 | $0.00 | -$19,780.68 | -$10.63 | $893.83 | $0.00 | 0.000000 | 0% |
| JPMorgan US Equity A | JUEAX | $0.00 | $383.24 | $0.00 | -$390.98 | $0.17 | $7.57 | $0.00 | 0.000000 | 0% |
| Oakmark Global I | OAKGX | $18,759.32 | $85.59 | $0.00 | -$18,825.40 | $14.73 | -$34.24 | $0.00 | 0.000000 | 0% |
| RidgeWorth Large Cap Value Equity I | STVTX | $0.00 | $383.24 | $0.00 | -$392.46 | $0.17 | $9.05 | $0.00 | 0.000000 | 0% |
| Vanguard Total Intl Stock Index I | VTSNX | $0.00 | $256.77 | $0.00 | -$266.16 | $0.00 | $9.39 | $0.00 | 0.000000 | 0% |
| **Totals** | | **$75,872.34** | **$3,533.06** | **$0.00** | **$0.00** | **-$128.64** | **$2,203.80** | **$81,480.56** | | **100%** |
| **Vested Balance** | | | | | | | | $81,480.56 | | |

| Money In Detail | |
|---|---|
| Your Contributions | $3,533.06 |
| Employer Contributions | $0.00 |

## Fee/Credit Details for Statement Period

| | | Plan Fees | Plan Credits | Total Net Fees/Credits |
|---|---|---|---|---|
| ASTON/Fairpointe Mid Cap N | Plan Service Credit | $0.00 | $14.82 | $14.82 |
| American Funds EuroPacific Gr R4 | Plan Service Credit | $0.00 | $0.23 | $0.23 |
| American Funds Fundamental Invs R4 | Plan Service Credit | $0.00 | $0.13 | $0.13 |
| Fidelity Extended Market Index Premium | Redemption/Surrender Fee | -$153.16 | $0.00 | -$153.16 |
| Franklin Small Cap Value Adv | Plan Service Credit | $0.00 | $0.14 | $0.14 |
| Goldman Sachs Mid Cap Value A | Administrative Fee- Per Account | -$31.25 | $0.00 | -$31.25 |



JK60719   00001 - 401(k) Plan

## Fee/Credit Details for Statement Period (continued)

| | | Plan Fees | Plan Credits | Total Net Fees/Credits |
|---|---|---|---|---|
| | Plan Service Credit | $0.00 | $20.62 | $20.62 |
| JPMorgan US Equity A | Plan Service Credit | $0.00 | $0.17 | $0.17 |
| Oakmark Equity & Income I | Plan Service Credit | $0.00 | $0.15 | $0.15 |
| Oakmark Global I | Plan Service Credit | $0.00 | $14.73 | $14.73 |
| RidgeWorth Large Cap Value Equity I | Plan Service Credit | $0.00 | $0.17 | $0.17 |
| Transamerica Partners Instl Core Bond | Administrative Fee- Per Account | -$18.45 | $0.00 | -$18.45 |
| | Plan Service Credit | $0.00 | $23.06 | $23.06 |
| **Total Administrative Fee- Per Account** | | | | **-$49.70** |
| **Total Plan Service Credit** | | | | **$74.22** |
| **Total Redemption/Surrender Fee** | | | | **-$153.16** |
| **Total Net Fees/Credits** | | | | **-$128.64** |

Different funds have different fees and fee structures (please refer to your plan's Fund and Fee Information, available on the website, for more details). The table above expresses all charges as dollar amounts.

## Interest Rates Applicable to Contributions Received During the Current Statement Period

Contributions made to the TFLIC Gvt Fixed during the current Statement Period [April 1, 2016 - June 30, 2016], received an annualized return/credited rate of 1.25%.

Contributions made to the TFLIC Stable during the current Statement Period [April 1, 2016 - June 30, 2016], received an annualized return/credited rate of 1.75%.



April 1, 2016 - June 30, 2016    Case 3:19-cv-00881-DMS-BLM    Document 16    Filed 09/24/19    PageID.184    Page 99 of 100    Page 4 of 6

JK60719  00001 - 401(k) Plan

## About Probability Illustrations, Limitations, and Key Assumptions

The probability illustrations the *OnTrack®* tool generates are based on "Monte Carlo" simulations of 500 possible investment scenarios for a given time period and assume a range of possible returns. The illustrations are generated according to models developed by Ibbotson Associates, a leading independent provider of asset allocation, analytical, and wealth forecasting software. The *Your Retirement Outlook*<sup>SM</sup> graphic reflects the difference between the model's estimated annual income (which corresponds to a 70% probability of achieving your income goal in the investment scenarios simulated) and your annual income goal.

When forecasting the probability of achieving your income goal, the model employs different returns for different asset classes, based on Ibbotson's capital market assumptions developed using historical and forward-looking data. Current assets are assigned to asset classes based on Morningstar categories, and fees and charges inherent in investing are incorporated with an average fee assumption for each asset class. The historical and forward-looking benchmarks used for modeling the various asset classes are below. Return assumptions are updated annually; these updates may have a material impact on your projections. Return assumptions are estimates not guarantees. The returns you experience may be materially different than projections. You cannot invest directly in an index.

| | Asset Class | Forward-Looking Benchmark | Historical Benchmark |
|---|---|---|---|
| Lower Risk/Volatility | Cash | Citigroup 3-Month Treasury Bill | Ibbotson SBBI T-Bill Index |
| | Short-Term Bonds | Barclays U.S. Treasury 1-3 Yr Term Index | Ibbotson 2 Yr Treasury Index |
| | TIPS | Barclays Capital U.S. Treasury: U.S. TIPS | Ibbotson TIPS Index |
| | Aggregate Bonds | Barclays Capital U.S. Aggregate Index | Barclays Capital U.S. Aggregate Index |
| | Long-Term Bonds | Barclays Capital U.S. Long Credit A Index | Ibbotson 25 Year Treasury Index |
| | High-Yield Bonds | Barclays Capital U.S. Corporate High Yield Index | Ibbotson High Yield Index |
| | International Bonds | Citigroup WGBI | Ibbotson Global Bond Composite |
| | Large-Cap Stocks | Russell 1000® Index | CRSP Declines Index |
| | Mid-Cap Stocks | Russell Midcap Index | CRSP Declines Index |
| | Small/Mid-Cap Stocks | Russell 2500® Index | CRSP Declines Index |
| | Small-Cap Stocks | Russell 2000® Index | CRSP Declines Index |
| | REITS | FTSE NAREIT Equity REITs | FTSE NAREIT Equity REITs |
| | International Stocks | MSCI EAFE Index | MSCI EAFE Index |
| | Emerging Markets | MSCI Emerging Markets Index | Ibbotson Emerging Market Composite |
| Higher Risk/Volatility | Commodities | DJ-UBSCISM | S&P GSCI Commodity Sector Indices |

Unless you choose otherwise or your employer supplies different information, the probability illustrations assume retirement at the age at which you qualify for full Social Security benefits and an annual retirement income goal of 80% of your projected final working salary. Social Security estimates are based on the Social Security Administration methodology and your current salary. The probability illustrations also assume a consistent contribution percentage (unless you've chosen to periodically increase it) and asset allocation (no future changes or rebalancing), annual inflation of approximately 2%, and annual salary increases based on a calculation that incorporates multiple factors including a salary growth curve and inflation. Mortality assumptions are based on the Society of Actuaries tables.

The models are subject to a number of limitations. Returns associated with market extremes may occur more frequently than assumed in the models. Some asset classes have relatively limited histories; for these classes the models use historical data for shorter time periods. The model does not consider other asset classes such as hedge funds or private equity, which may have characteristics similar or superior to those used in the model.

**There is no guarantee that your income goal will be achieved or that the aggregate accumulated amount will ensure a specified annual retirement income. Results derived from the OnTrack® tool may vary with each use and over time.**

**IMPORTANT: The projections or other information generated by the OnTrack® tool regarding the likelihood of various investment outcomes are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results.**   Moreover, even though the tool's estimates are statistically sound based upon the simulations it runs, the tool cannot foresee or account for every possible scenario that may negatively impact your financial situation. Thus you should monitor your account regularly and base your investment decisions on your time horizon, risk tolerance, and personal financial situation, as well as on the information in the prospectuses for investments you consider.

Securities offered by Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY 10528. TISC and Transamerica Retirement Solutions are affiliated companies.



JK60719  00001 - 401(k) Plan

## Additional Important Information

**Fees and Expenses:** In addition to fees and expenses, if any, shown on this statement, some of the plan's administrative expenses were paid from the total annual operating expenses (including from administrative fees, Rule 12b-1 fees, and sub-transfer agent fees) of one or more of the plan's investment options.  More detailed information is available online at my.trsretire.com by selecting Fund and Fee Information from the Review menu.

**Investments:** If you direct the investment of assets in your account under the plan, please note that:
I. Any limitations or restrictions on your right to direct an investment under the plan are explained below.

    **Account No. JK60719  00001** You may change your investment allocations 12 time(s) per plan year.  Transfers among investment options may be made 12 times per plan year and may be subject to certain restrictions. One transfer is allowed every 0 month(s).

    **Account No. JK60719  00001**

    **You may not transfer from fund TFLIC Stable to the following fund(s):**
        Vanguard Short-Term Investment-Grade Adm

    **You may not transfer from fund TFLIC Gvt Fixed to the following fund(s):**
        Vanguard Short-Term Investment-Grade Adm

II. **Importance of a Well-Balanced Diversified Portfolio:**  To help achieve long-term retirement security, you should give careful consideration to the benefits of a well-balanced and diversified investment portfolio. Spreading your assets among different types of investments can help you achieve a favorable rate of return, while minimizing your overall risk of losing money. This is because market or other economic conditions that cause one category of assets, or one particular security, to perform very well often cause another asset category, or another particular security, to perform poorly. If you invest more than 20% of your retirement savings in any one company or industry, your savings may not be properly diversified. Although diversification is not a guarantee against loss, it is an effective strategy to help you manage investment risk. In deciding how to invest your retirement savings, you should take into account all of your assets, including any retirement savings outside of the plan. No single approach is right for everyone because, among other factors, individuals have different financial goals, different time horizons for meeting their goals, and different tolerances for risk. It is also important to periodically review your investment portfolio, your investment objectives, and the investment options under the plan to help ensure that your retirement savings will meet your retirement goals.

III. **Rights to Additional Information:**  For sources of information on individual investing and diversification, the Department of Labor provides information at www.dol.gov/ebsa/investing.html.

Descriptions of your plan's benefits and features are subject to the provisions of the applicable plan documents, which govern in the event of any discrepancy.

*Transamerica Investors Securities Corporation (TISC), 440 Mamaroneck Avenue, Harrison, NY 10528, distributes securities products. Any mutual fund offered under the plan is distributed by that particular fund's associated fund family and its affiliated broker-dealer or other broker-dealers with effective selling agreements such as TISC. Bank collective trusts funds, if offered under the plan, are not insured by the FDIC, the Federal Reserve Bank or any other government agency and are not registered with the Securities and Exchange Commission. Group annuity contracts, if offered under the plan, are made available through the applicable insurance company. Any guarantee of principal and/or interest under a group annuity contract is subject to the claims-paying ability of the applicable insurer. Certain investment options made available under the plan may be offered through affiliates of Transamerica Retirement Solutions and TISC. These may include: (1) the Transamerica Funds (registered mutual funds distributed by Transamerica Capital, Inc. (TCI) and advised by Transamerica Asset Management, Inc. (TAM)); (2) the Diversified Investment Advisors Collective Trust, a collective trust fund of Massachusetts Fidelity Trust Company (MFTC) (includes the Stable Pooled Fund); (3) group annuity contracts issued by Transamerica Financial Life Insurance Company (TFLIC), 440 Mamaroneck Avenue, Harrison, NY 10528 (includes the Stable Fund, the Fixed Fund, the Guaranteed Pooled Fund, and SecurePath for Life); and (4) group annuity contracts issued by Transamerica Life Insurance Company (TLIC), 4333 Edgewood Road NE, Cedar Rapids, IA 52499 (includes SecurePath for Life®).*

