1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL BOUVY                          Case No.:  19-cv-881 DMS (BLM)

12                        Plaintiff,
                                            **ORDER GRANTING IN PART AND**
13   v.                                     **DENYING IN PART DEFENDANT'S**
                                            **MOTION TO DISMISS**
14   ANALOG DEVICES, INC., a
     Massachusetts company, as successor to
15   LINEAR TECHNOLOGY
     CORPORATION; LINEAR
16   TECHNOLOGY LLC, a Delaware
     company; LINEAR TECHNOLOGY
17   ADMINISTRATIVE COMMITTEE; and
     DOE DEFENDANTS 1–20,
18
                        Defendants.
19

20

21

22          Pending before the Court is Defendants' motion to dismiss Plaintiff Michael

23   Bouvy's First Amended Complaint ("FAC").  Plaintiff filed a response in opposition, and

24   Defendants filed a reply.  The parties also filed supplemental briefing.  For the following

25   reasons, the motion is granted in part and denied in part.

26   / / /

27   / / /

28

                                           1

# I.

# BACKGROUND

This case arises out of Plaintiff's putative class action against Analog Devices, Inc. ("ADI"), Linear Technology Corporation ("LTC"), Linear Technology LLC, and Linear Technology Administrative Committee (collectively "Defendants") for alleged violations of fiduciary duties imposed by the Employment Retirement Investment Savings Act of 1974, as amended ("ERISA"). Plaintiff filed the complaint on May 10, 2019, and thereafter filed a First Amended Complaint ("FAC") on September 24, 2019.

Defendants manage the Linear Technology 401(k) Plan (the "Plan"), an individual-account, defined-contribution retirement plan. *See* 26 U.S.C. § 401(k). Plaintiff Michael Bouvy ("Plaintiff" or "Bouvy") is a former employee of LTC and a Plan "participant," as defined by 29 U.S.C. § 1002(7). (FAC ¶ 11.) LTC provided retirement benefits to eligible employees between May 6, 2013, and May 6, 2019 (the "Class Period"). (FAC ¶ 13.)

On March 10, 2017, ADI, a Massachusetts Corporation, purchased LTC through a cash and stock transaction, and on or around that time the assets and operations of LTC merged with ADI. (FAC ¶¶ 20-23.) Linear Technology LLC ("LT LLC") was formed as a Delaware corporation on May 2, 2017.[1] (FAC ¶ 22.) ADI continues to sell LTC's power-management products. (FAC ¶ 23.) After the merger between LTC and ADI, LTC's past fiduciary liabilities as "Plan Sponsor" and "Plan Administrator" were assigned by the Plan's governing documents to Linear Technology LLC. (FAC ¶ 25.) LTC was the "Plan Sponsor" under 29 U.S.C. § 1002(16)(B), as reported on the Plan's Form 5500 for 2016, (FAC ¶ 16), and Linear Technology LLC was listed as the "Plan Sponsor" on the form in 2017. (FAC ¶ 17.)

---

[1] Although ADI and Linear Technology LLC are separate corporations, Eileen Wynne, the Vice President and Chief Accounting Officer of ADI, signed the Plan's 2017 Form 5500 and Linear Technology LLC's application to register as a foreign limited liability company, which were filed with the California Secretary of State on June 8, 2017. (FAC ¶¶ 22, 25.)

Plaintiff and proposed class members are participants in the Plan.  Most participants in 401(k) plans "expect that their 401(k) accounts will be their principal source of income after retirement."  (FAC ¶ 31.)  The Plan is a defined contribution plan, and thus limits employees to investment options selected by the plan's fiduciaries, otherwise known as "designated investment alternatives." (FAC ¶ 32.)  Because plan participants can only invest in pre-selected options, "the participants bear the risk of poor investment selection choices, whether due to poor performance, high fees, or both."  (FAC ¶ 29.)

Plan administrators charge two types of fees for the maintenance and management of investment products: investment management expenses and administrative expenses. (FAC ¶ 40.)  Administrative fees account for costs associated with administering the Plan, including recordkeeping, trustee and custodial services, and accounting costs.  (FAC ¶ 45.) The cost of recordkeeping services depends on the number of participants in the Plan, rather than the amount of money in each participant's account.  (FAC ¶ 46.)

At all times referenced in the FAC, Defendants contracted with third-party administrator Transamerica Retirement Solutions, LLC ("Transamerica") to serve as the Plan's recordkeeper.  (FAC ¶ 19.)  Before June 1, 2015, the Plan compensated Transamerica through revenue sharing.  (FAC, Ex. 2 at 1.)  Effective June 1, 2015, the Plan began to charge an annual fee of $125 per participant, assessed quarterly.  (*Id.*)  In 2017, the Plan paid Transamerica $542,867 in direct payments for recordkeeping— approximately $229 per participant.  (FAC ¶ 136.)

At the end of 2017, the Plan had approximately $616 million in assets and 2,369 participants with active account balances.  (FAC ¶ 77.)   On average, for plans with 2,000 participants and $200 million in assets, the average recordkeeping fee per participant was $5.  (FAC ¶ 134.)  In addition to these direct payments, the Plan paid Transamerica over $1 million annually in revenue sharing from mutual funds.   (FAC ¶¶ 144-146.) Transamerica distributes the funds the Plan invests, and also manages the Plan's investments in the Transamerica funds.  (FAC ¶ 120.)  Transamerica was also compensated

from the investment fees for its proprietary products offered as investment options through the Plan.  (FAC ¶¶ 120-124, 147.)

Throughout the Class Period, the Plan's investment options included twenty mutual funds and two fixed annuity contracts issued by Transamerica Life Insurance Company.  (FAC ¶ 78.)  At the same time, the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses.  (FAC ¶¶ 81-85).  Many of these funds held a share class that was between 25 and 116 percent more expensive than readily available, identical mutual fund products.  (FAC ¶ 96.)

Plaintiff contends the Plan's participants lost millions of dollars of retirement savings and anticipated retirement income because of Defendants' failure to rein in the Plan's costs and failure to remove and replace underperforming funds.  (FAC ¶ 4, 9.)  Based on these alleged facts, Plaintiff filed a FAC alleging that Defendants violated ERISA by: (1) breaching their duties of prudence and loyalty by selecting investment options with excessive fees when identical, lower-cost options were available and retaining expensive funds with poor performance histories; (2) breaching their duties of prudence and loyalty by compensating Transamerica with excessive recordkeeping fees; (3) failing to provide disclosures to participants regarding investment and administrative fees; (4) engaging in prohibited transactions with a party in interest; and (5) failing to monitor fiduciaries.  On November 25, 2019, Defendants filed the present motion to dismiss.  (ECF No. 23.)

## II.

## LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead a claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6);

*Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996), but a court need not accept all conclusory allegations as true.  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible." *Twombly*, 550 U.S. at 544.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  In deciding a motion to dismiss, the Court "accept[s] the plaintiffs' allegations as true and construe[s] them in the light most favorable to the plaintiffs." *See Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).")

In an ERISA case, "a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times," *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017), because "[t]hese facts will frequently be in the exclusive possession of the breaching fiduciary." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).  But "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F. Supp. 3d at 1070; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2008) ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.")

/ / /

/ / /

5

# III.

# DISCUSSION

### A. Statute of Limitations

Defendants first contend all of Plaintiff's claims are time-barred. "The statute of limitations is an affirmative defense[.]" *United States v. Wilbur*, 674 F.3d 1160, 1177 (9th Cir. 2012). Plaintiffs "ordinarily need not plead on the subject of an anticipated affirmative defense," but "[w]hen an affirmative defense is obvious on the face of a complaint, … a defendant can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (internal quotation marks and citations omitted).

ERISA "requires plaintiffs with 'actual knowledge' of an alleged fiduciary breach to file suit within three years of gaining that knowledge rather than within the 6-year period that would otherwise apply." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 773 (2020) (*Sulyma II*) (citing § 413(a)(2)(A), 88 Stat. 889, *as amended*, 29 U.S.C. § 1113). Although courts "must enforce plain and unambiguous statutory language in ERISA, as in any statute, according to its terms," ERISA does not define "actual knowledge." *Id.* (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)) (internal quotation marks omitted). In *Sulyma II*, the Supreme Court held the plain meaning of the phrase is clear: "to have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Id.* Thus, the three-year statute of limitations under § 1113(2) "begins only when a plaintiff actually is aware of the relevant facts, not when he should be." *Id.* at 778.

The actual knowledge standard "does not preclude defendants from contending that evidence of 'willful blindness' supports a finding of 'actual knowledge.'" *Id.* (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)). "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc.*, 563 U.S. at 769–70.

Defendants contend Plaintiff "had actual knowledge of the facts underlying the claims more than three years prior to filing his complaint," (Def.'s Mem. of P. & A in Sup.

of Mot. to Dis. ("Mot."), ECF No. 23, at 9), and alternatively, that Plaintiff was willfully blind to the relevant facts.  (Def.'s Supp. Br. on New Authority in Supp. Of Mot. ("Supp. Br."), ECF No. 28, at 4.)  Plaintiff disagrees, noting the absence of any allegations in the FAC that would indicate or create an inference of actual knowledge or willful blindness on his part.  (Pl.'s Resp. In Opp'n to Def.'s Mot. ("Opp'n") at 7; Pl.'s Resp. to Def's Supp. Br. ("Resp. to Supp. Br.") at 4.)

First, Defendants contend Plaintiff's allegations in Count I, which allege in part that the Plan's investment options charged excessive fees compared to other options, are time-barred because the Plan's management fees and expense ratios were available on Transamerica's website as far back as 2015. (Mot. at 10.)  Although Defendants contend this information was available in an "easily understood" format (*id.*), Plaintiff argues the availability of this information fails to demonstrate that he had actual knowledge.  (Opp'n at 8.)  Notably, Defendants do not contend that Plaintiff accessed the information on the website.  And Plaintiff argues Defendants have failed to show how the information on the website could "relate to the *process* by which Defendants arrived at their imprudent decisions"—a process that is at the heart of a claim of fiduciary breach under 29 U.S.C. § 1104.  (Opp'n at 8) (emphasis in original.)   Indeed, "[w]hen beneficiaries claim the fiduciary made an *imprudent* investment, actual knowledge of the breach will usually require some knowledge of how the fiduciary selected the investment." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1121 (9th Cir. 2013) ("*Tibble II*"), *vacated on other grounds*, 135 S. Ct. 1823 (2015)) (internal brackets and quotation marks omitted) (emphasis in original).  Here, the availability of fee and expense ratios did not provide plaintiff with "actual knowledge of the specifics of Defendant's decision-making process,"  (FAC ¶ 12), and accordingly fail to demonstrate actual knowledge.

Defendants make additional arguments in their supplemental briefing on *Sulyma II*. First, Defendants contend Plaintiff had actual knowledge, or was willfully blind, to the relevant facts underlying his claims based on a March 2016 plan statement, which showed him transferring in and out of funds offered by the Plan.  (Supp. Br. at 4.)  As to Count I,

Defendants contend this demonstrates Plaintiff "acquired knowledge of (or willfully blinded himself to) the expense ratios reflecting investment management fees that were available at the time of the transfers." (*Id.*)   Notwithstanding Plaintiff's arguments about Defendants' reliance on documents not referenced in the FAC,[2]   and the potential impropriety of raising such arguments on supplemental briefing,[3] the Court finds the information included on this statement fails to evidence either actual knowledge or willful blindness.  The information is similar to that available on Transamerica's website; at best, it shows the ratios were disclosed to Plaintiff, but evidence of disclosure alone is insufficient to prove "actual knowledge" because "a given plaintiff will not necessarily be aware of all facts disclosed to him; even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure." *Sulyma II*, 140 S. Ct. at 778.

The March 2016 Plan Statement also fails to meet the standard for willful blindness: "(1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." (Resp. to Supp. Br. at 5) (quoting *Global-Tech Appliances, Inc.*, 563 U.S. at 769.)  Here,

---

[2] Plaintiff contends the Court should not consider the March 2016 statement because it is "outside of and never referenced in the complaint." (Resp. to Supp. Br. at 4.)  In response, Defendants contend the Court may consider documents "on which the complaint relies, if the document at issue is central to the claims asserted in the complaint, and no party questions the authenticity of the document, even if the document is not attached to the complaint." (Supp. Reply Br. at 3) (citations omitted).  "Review is generally limited to the contents of the complaint, but a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  Here, Defendants provide documents of Plaintiff's plan statements.  Plaintiff's ERISA claims are based on his involvement in the Plan and Defendants' alleged breach of fiduciary duty. Therefore, the Court will consider the documents.

[3] Plaintiff contends *Sulyma II* broke no new ground and therefore it was improper for Defendants to provide new arguments in their supplemental briefing.  (Resp. to Supp. Br. at 4.)   The Court disagrees, but nonetheless finds Defendants' new arguments unconvincing.

Defendants fail to demonstrate that the March 2016 statement evidences either of these factors.  Accordingly, Count I is not time-barred.

Next, Defendants argue Plaintiff's claims under Count II and IV, which are based on excessive recordkeeping fees and prohibited transactions with Transamerica, are time-barred because Plaintiff had "actual knowledge of his excessive administrative fees … because he was aware of the fees charged by Transamerica prior to April 2016 as it was clearly displayed on his March 2016 Statement and deducted from his account."  (Supp. Br. at 5.)  Though the facts underlying the Counts differ,[4] Defendants' reliance on the 2015 Fee Disclosure on Transamerica's website and the March 2016 Plan Statement again fail to evidence either "actual knowledge" or "willful ignorance."  Neither statement shows awareness of the facts disclosed, *see Sulyma II*, 140 S. Ct. at 778, or that Plaintiff had actual knowledge of Defendants' breached duties.[5]  As noted, all of Plaintiff's claims depend on Defendants' decision-making process.  For example, Count II depends on Defendants' decision to "engage and retain Transamerica as recordkeeper and pay it unreasonable fees for those services." (Opp'n at 10.)   As such, Plaintiff lacks "actual knowledge" unless he "has actual knowledge of the procedures used or not used by the fiduciary."  (*Id.*) (citing *Foster v. Adams and Assocs., Inc.*, 362 F. Supp. 3d 832, 836 (N.D. Cal. 2019)).

---

[4] Count II "alleges that Defendants breached their fiduciary duties by failing to negotiate and monitor reasonable recordkeeping plans for Plan participants" and Count IV alleges that Defendants "engaged in prohibited transactions with Transamerica by paying unreasonably high recordkeeping fees and by loaning Plan assets to Transamerica in the form of service credits."  (Opp'n at 9) (citing FAC ¶¶ 185-93, 199-208.)

[5] Plaintiff notes the March 2016 statement only shows his investments were rebalanced, not that he "subjectively believed that the Plan's offerings were imprudent or that the Plan was incurring excessive fees."  (Opp'n to Supp. Br. at 5.)  Defendants contend Plaintiff at this point "must have acquired actual knowledge of the investment options' expense ratio … or made a deliberate choice to avoid learning that information."  (Supp. Reply Br. at 4.) But Defendants also recognize that allegations of high fees alone are insufficient for a claim under Count I. (Mot. at 14.)  Accordingly, disclosure of fees was insufficient for Plaintiff to have the requisite knowledge requirement.

Next, Count III alleges Defendants inadequately disclosed information on his quarterly statements, thus requiring knowledge of omitted or misrepresented information. (Opp'n at 11.)  Defendants argue Plaintiff's receipt of a March 2016 statement provided Plaintiff with actual knowledge, or he was willfully blind, to the alleged deficiencies in the Plan's quarterly statements.  (Supp. Reply Br. at 3.)  But Plaintiff contends "[t]he point of Count III is that critical information is missing from the documents Defendants point to, and which [Plaintiff] did not receive until later."  (Opp'n at 11.)  Accordingly, Defendants fail to demonstrate actual knowledge or willful blindness.  Interpreting the evidence in the light most favorable to the Plaintiff,  as the Court must at this stage, Defendant fails to provide evidence indicating Plaintiff had actual knowledge or was willfully blind.  At best, Defendants provide information showing some of the relevant facts were disclosed to Plaintiff, but the three-year statute of limitations under § 1113(2) "begins only when a plaintiff actually is aware of the relevant facts."  *Sulyma II*, 140 S. Ct. at 778; *see also Global-Tech Appliances*, 563 U.S. at 770 ("A court can properly find willful blindness only where it can almost be said that the defendant actually knew") (internal quotation marks and citations omitted).  Accordingly, the claims under Count III are not time-barred.

Finally, Count V arises out of Defendants' failure to monitor for the aforementioned breaches.   (Opp'n at 10.)  Defendants contend Count V is time-barred because it is derivative of the other claims.  (Mot. at 12.)  Because the other claims are not time-barred, Count V is timely.

**B. Improper Defendant**

Next, Defendants contend this case should be dismissed as to Defendant ADI because it is not a proper defendant.  Defendants argue "Plaintiff concedes that Linear Technology Corporation … was in fact replaced by Liner Technology, LLC." and "Plaintiff alleges no breach by ADI or any ADI fiduciary after the Plan was dissolved." (Mot. at 25.)  In response, Plaintiff notes that though ADI is not named in Plan documents, it is a "functional fiduciary" under 29 U.S.C. § 1002(21)(A).  (Opp'n at 25.)

Section 1002(21)(A) identifies a fiduciary when "a person … exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." Therefore, "ERISA defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Johnson v. Courtier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (emphasis in original).

Defendants do not argue ADI is not a "functional fiduciary" under Section 1002(21)(A), but rather allege ADI is an improper defendant because "it was never a fiduciary of the Plan." (Mot. at 25.)   Although Defendants' argument depends on Linear Technology Corporation's replacement by Linear Technology, LLC, (*id.*), Plaintiff alleges "ADI exercised *de facto* control over LT LLC, the Plan's named fiduciary … [a]nd [Plaintiff] alleges fiduciary breaches before and after the companies merged." (Opp'n at 25) (emphasis in original).  Indeed, LT LLC's application to register as a foreign limited liability company was signed by Eileen Wynne, the Vice President and Chief Accounting Officer of ADI.  (FAC ¶¶ 22, 25.)  "The issue of fiduciary status is a mixed question of law and fact and courts typically will have insufficient facts at the motion to dismiss stage … to determine functional or named fiduciary status."  *Bagley v. KB Home*, 2008 WL 11340342, at *5 (C.D. Cal. Feb. 22, 2008) (internal quotation marks and citations omitted). Accepting Plaintiff's allegations as true, the Court finds the allegations regarding Defendant ADI's fiduciary status are sufficient to survive this motion.

**C. Standing**

Next, Defendant contends the Court lacks standing over the putative class' claims related to funds Plaintiff did not invest in under Count I.  (Mot. at 17.)  To establish standing, a plaintiff must show that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  ERISA "authorize[s] plan participants to sue fiduciaries for losses the plan suffers from a breach of their duties."  *Glanton ex rel. ALCOA Prescription Drug Plan v.*

*AdvancePCS Inc.*, 465 F.3d 1123, 1124 (9th Cir. 2006); *see* 29 U.S.C. § 1132(a).  "ERISA plan beneficiaries may bring suits on behalf of the plan in a representative capacity … so long as plaintiffs otherwise meet the requirements for Article III standing."  *Id.* at 1127.

Plaintiff alleges he has standing to pursue these claims because ERISA suits brought under 29 U.S.C. § 1132(a)(2) are "brought in a representative capacity on behalf of the plan as a whole, and the remedies under § 1109 protect the entire plan."  (Opp'n at 17, n. 4) (citing *Braden*, 588 F.3d at 594).  Accordingly, Plaintiff contends he "may seek recovery on behalf of the entire Plan 'even if he did not personally invest in every one of the funds that caused injury to the Plan.'"  (*Id.*) (quoting *Johnson v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017)).  Here, Plaintiff seeks certification of this action on behalf of himself and others similarly situated, defined as: "[a]ll participants and beneficiaries of the Linear Technology 401(k) Plan from May 6, 2013 through the date of judgment."  (FAC ¶ 167.)  He contends he has standing over the putative class member's claim based on *Fujitsu*, where the district court adopted the "class certification" approach to standing in a putative class action from *Melendres v. Arpaio*:

> "The class certification approach … holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."

*Fujitsu*, 250 F. Supp. 3d at 465 (quoting *Melendres v. Arpaio*, 784 F. 3d 1254, 1261–62 (9th Cir. 2015)).  Applying this approach, the district court stated the issue of "whether named plaintiffs are appropriate class representatives" would be resolved at the class certification case, because defendants did not dispute that plaintiffs had standing to bring their own claims and that other individuals in the putative class invested in other options. *Id.*

The Court agrees with *Fujitsu*.  Here, Defendants do not dispute that Plaintiff has standing related to the claims he himself invested in, or that members of the putative class invested in the contested options.  Plaintiff, on behalf of the putative class, contends that

Defendants' alleged breaches of their fiduciary duties caused the Plan to incur "substantial damages, including the erosion of millions of dollars of retirement savings and anticipated retirement income for the Plan's participants" and that such injuries could be redressed by damages. (FAC ¶ 9.)   Accordingly, Plaintiff demonstrates standing on behalf of himself and the putative class.

**D. Failure to State a Claim**

"[A]n ERISA fiduciary has a duty of care with respect to management of existing [] funds, along with liability for a breach of that duty." *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837 (9th Cir. 2018) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)) (internal quotation marks omitted).   ERISA Section 404(a)(1) "imposes the following duties on plan fiduciaries: the duty of loyalty, the duty of prudence, the duty to diversify the investments, and the duty to act in accordance with the documents and instruments governing the plan." *Terraza*, 241 F. Supp. 3d at 1070 (citing 29 U.S.C. § 1104(a)(1)).

Here, Plaintiff contends Defendants breached their duties of loyalty and prudence. (FAC ¶¶ 91-92.)   Defendants contend all of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

    1. <u>Count I</u>

In Count I, Plaintiff alleges a breach of the duties of loyalty[6] and prudence and investments with excessive fees, in violation of 29 U.S.C. § 1104(a)(1)(A)-(B). (FAC ¶¶ 173-184.)   Plaintiff contends Defendants breached their fiduciary duties because (1) they invested "millions of dollars in imprudent investment options, many of which were more expensive and had poor performance histories relative" to other readily available options (FAC ¶ 178); (2) they selected and retained higher fee share class investment options in the Plan when identical lower cost funds were available (FAC ¶ 179); (3) they retained

---

[6] Plaintiff's disloyalty claims under Count I are addressed at *infra* Section D.3.

expensive funds with poor performance histories and did not investigate lower cost, better performing alternatives (FAC ¶ 180); and (4) they failed to prudently monitor the plan, neglected to remove poor performing funds, and failed to consider better-performing alternatives. (FAC ¶ 182)  The "gravamen of Count I is that for nearly every mutual fund offered, the Plan provided the higher-cost share class even though a lower-cost, *but otherwise identical*, share class of the same mutual fund was available."  (Opp'n at 11) (emphasis in original.)

ERISA requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  Pursuant to this standard, courts must assess "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment."  *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).  "Cost-conscious management is fundamental to prudence in the investment function, and should be applied not only in making investments but also in monitoring and reviewing investments."  *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–98 (9th Cir. 2016) ("*Tibble III*") (en banc) (internal quotation marks and citations omitted).

First, Defendants contend claims under this count are implausible because "ERISA does not require fiduciaries to 'scour the market to find and offer the cheapest possible funds.'"  (Mot. at 14) (quoting *White v. Chevron Corp.*, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("*White II*")).   Defendants note the Plan offered a wide range of options, with expense ratios ranging from .07% to 1.32%, and contend "[t]his breadth of investments and range of management fees is well within the spectrum that courts have held reasonable as a matter of law." (Mot. at 14) (internal quotation marks and citations omitted.)  In response, Plaintiff contends there is "no per se acceptable range of fees under ERISA" and that the FAC shows there was "no need to 'scour the market' to locate lower cost funds," because the "*same mutual fund* was available at a lower cost."  (Opp'n at 12)

(emphasis in original.)  Plaintiff contends the Plan paid fees "between 25% and 116% higher than it should have paid for the *identical* mutual fund product."  (FAC at ¶ 96.) Although Defendants need not "scour the market" to find the cheapest funds, an ERISA fiduciary must act as a "prudent man" when managing plan assets.  *See* 29 U.S.C. § 1104(a).  The duty of prudence "extends to both the initial selection of an investment and the continuous monitoring of investments to remove imprudent ones."  *Terraza*, 241 F. Supp. 3d at 1070 (citing *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015)). Accordingly, Plaintiff contends Defendants failed to act prudently because they failed to procure identical funds at a lower cost.

Nevertheless, a fiduciary breach is determined by analyzing "a fiduciary's conduct in arriving at an investment decision, not on its results."  *Terraza*, 241 F. Supp. 3d at 1069. Here, Defendants contend there is an "easy" explanation for the management of the Plan: because Transamerica "was compensated through revenue-sharing out of funds' expense ratios," the Investment Committee "appropriately selected share classes that ensured that recordkeeping needs would be furnished by Transamerica without any additional charges to participants." (Mot. at 15.)  But Plaintiff contends Defendants' explanation fails to fully account for the difference in the rates because Defendants "do not contend, for instance, that accepting higher upfront costs to avoid 'additional charges' is, in the end, a less expensive or more prudent way to manage the Plan."  (Opp'n at 13.)

Notwithstanding these arguments, Defendants contend dismissal is warranted based on *White II*.  (Mot. at 15.)  There, the district court held that "merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach," and dismissal was warranted for claims of a breach of duty of prudence in connection with defendants' selecting funds with higher management fees "when plaintiffs have acknowledged that more expensive share classes paid for [the plan's] recordkeeping services."  *White II*, 2017 WL 2352137, at *14.  The Ninth Circuit affirmed the district court in *White III*, finding the plaintiffs failed to meet the plausibility standard of *Iqbal* and *Twombly* for their claims of breach of duty of loyalty and prudence because

"the allegations showed only that [the defendant] could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund," but "[n]one of the allegations made it more plausible than not that any breach of a fiduciary duty occurred." *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) ("*White III*") (citing *In re Century Aluminum Co. Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

Here, Plaintiff contends his case differs from the plaintiffs in *White II* because rather than claiming "that offering retail shares, without more, violates ERISA," he contends Defendants' breach was based in their "failure to investigate the lower-cost shares, where the use of higher-cost shares was not necessary to pay recordkeeping fees nor [to] provide any other benefit to the plan." (Opp'n at 14) (citing FAC ¶¶ 97-102.) Moreover, he contends he goes beyond the plaintiffs in *White*, because he "specifically alleges 'other indicia of imprudence,' in addition to the higher-cost shares: namely that the Plan (i) retained funds that historically underperformed, and (ii) used expensive, actively managed Transamerica funds as default selections." (*Id.*)

The Court agrees and finds Plaintiff's allegations are sufficient. In *Terraza*, the district court denied defendant's motion to dismiss, finding it could not "infer from the fee differential on its own that the [d]efendants acted imprudently in selecting the challenged funds," but found enough facts to state a claim when the information about the fee differential was combined with facts showing the investment options "underperformed compared to their benchmark," that defendants potentially "selected and retained at least some of these relatively expensive and underperforming investment options" because the bank controlling the plan was a trustee and record-keeper for the plan, and that certain investments may have been "managed or significantly influenced" by the bank. *Terraza*, 241 F. Supp. 3d at 1076–77. Like the plaintiff in *Terraza*, Plaintiff alleges facts regarding

a fee differential as well as specific examples of funds that underperformed their peers,[7] "concrete examples of cheaper better performing funds," and allegations that "these *particular* Transamerica investments were poor investment options and that Transamerica benefitted at the expense of participants by retaining one third of the Plan's assets in its proprietary funds." (Opp'n at 15) (citing FAC ¶ 130) (emphasis in original.)  The Court can infer from these facts that Defendants "engaged in a flawed decision-making process by selecting and retaining the challenged investment options." *See Terraza*, 241 F. Supp. 3d at 1076–77.  Accordingly, Plaintiff provided enough factual allegations "to create a plausible inference that defendants' process of selecting funds and their monitoring of the funds was imprudent." *See White II*, 2017 WL 2352137, at 14.

      2.  Count II and Count IV

Defendants contend Plaintiff fails to state a claim under both Count II and Count IV because (1) the Plan's offering of Transamerica funds does not constitute a fiduciary breach; (2) compensating a recordkeeper through revenue sharing does not constitute a fiduciary breach; (3) Transamerica's fees were reasonable "in light of the significant plan service credits"; and (4) "not soliciting bids for recordkeeping services does not rise to the level of a plausible breach of fiduciary duty." (Mot. at 18-21.)

      A.  Count II[8]

First, Defendants contend Count II fails to state a claim because revenue sharing arrangements are not per se imprudence and Plaintiff failed to plausibly allege unreasonable and excessive direct fees. (Mot. at 18; Reply Br. at 6.)  In Count II, Plaintiff contends Defendants breached their fiduciary duties of loyalty and prudence by selecting Transamerica as a plan service provider to perform recordkeeping services, and in

_____

[7] Although Defendants challenge the factual basis for Plaintiff's  claims, including by showing that some funds did not underperform, (Mot. at 16), Plaintiff provided enough information to create a factual inference that they indeed underperformed. (*See* Opp'n at 15.)

[8] Plaintiff's disloyalty claims under Count II are addressed at *infra* Section D.3.

exchange compensating Transamerica from the Plan "in the form of direct payments and revenue sharing along with related kick-back arrangements in which managers for the Plan's investment options annually deducted fees from investment assets and paid those fees to Transamerica." (FAC ¶ 188.)  Moreover, Plaintiff alleges Defendants compensated Transamerica with "excessive and unreasonable fees." (FAC ¶ 189.)  Defendant contends Plaintiff "fails to show … any more than a sheer possibility that the Plan fiduciaries acted unlawfully." (Mot. at 18) (internal quotation marks and citations omitted.)

Plaintiff contends the fees were indeed unreasonable and excessive and points to several facts to support their claims.  First, Plaintiff notes since 2015 the Plan has paid Transamerica "at minimum $125 per participant for recordkeeping services," when "similarly sized plans charge an average of $5 per participant for recordkeeping" and "Defendants should have been able to procure recordkeeping services for less than $50 per participant (a conservative measure)[.]"  (Opp'n at 17) (citing FAC ¶¶ 133, 134, 142.) Though Defendants argue these fees are not per se unreasonable, Plaintiff uses these figures to support an inference that "Defendants failed to monitor the Plan, solicit competitive bids, and rectify overpayments, causing a substantial loss." (Opp'n at 17 n. 5.)  Plaintiff notes the fees paid "grew substantially from 2013 to 2017, even though Transamerica provided no additional services[,"] and the amount paid to TransAmerica through revenue sharing arrangements "nearly doubled from 2013 to 2017, despite the fact that the number of participants only increased by 8%." (*Id.* at 17-18) (citing FAC ¶¶ 153-56.)

Defendants contend Plaintiff nevertheless fails to state a claim because there are alternative explanations for this behavior: namely, that the Plan retained Transamerica products because "the Committee decided that these options were in line with the Plan's investment objectives." (Mot. at 19.)  Moreover, Defendants note the Plan's decision to compensate Transamerica through revenue sharing is a "common and acceptable investment industry practice." (*Id.*) (citing *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)). Defendants contend the recordkeeping fees that increased after 2015 were reasonable because Transamerica was compensated through a flat fee instead of the

previous revenue-sharing compensation model and Transamerica began to credit the revenue sharing it received through increased Plan Service Credits.  (Mot. at 20.)   But in response, Plaintiff notes these increased credits are not reflected on the Plan's Forms 5500, which instead "report *additional* compensation to Transamerica."   (Opp'n at 18.) Nevertheless, this dispute fails to demonstrate a failure to state a claim, but rather goes to the merits of Plaintiff's allegations.

Lastly, Defendants again contend *White II* requires dismissal of Plaintiff's claims because Plaintiff fails to allege that fees were excessive before 2015, and therefore "all that remains is plaintiff['s] conclusory assertion that fees under a revenue-sharing arrangement are necessarily excessive and unreasonable."  (Mot. at 19–20) (citing *White I*, 2016 WL 4502808, at *14.)   In response, Plaintiff cites *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, where plaintiffs survived a motion to dismiss for excessive fees, in part because the district court found plaintiffs' claims went beyond the plaintiffs in *White I*. (Opp'n at 19-20) (citing 2017 WL 2992739, at *3 (C.D. Cal. May 11, 2017)).  There, the district court noted plaintiffs' claims were dismissed in *White* because they failed to allege "the amount of recordkeeping fees charged" or "the availability of cheaper recordkeeping services."  *See*  2017 WL 2992739, at *3.  Similarly, in *Marshall v. Northrom Grumman Corporation*, the district court acknowledged *White I* indicated "a failure to solicit bids may be warranted if facts are available that indicate 'the same services were available for less on the market.'"  2017 WL 2930839, at *11 (C.D. Cal. Jan. 30, 2017) (quoting *White I*, 2016 WL 4502808, at *14).

Here, Plaintiff goes beyond *White* because he details the amount of fees charged and the availability of cheaper, readily available recordkeeping services. Plaintiff does not focus simply on the existence of a revenue-sharing arrangement but also provides detailed facts to support a conclusion that Transamerica's fees were higher than normal.   On balance, therefore, Defendants' main "arguments attempt to litigate the claim – they do not address the sufficiency of [p]laintiffs' allegations at the pleading stage."  *See Marshall*,

2017 WL 2930839, at *11.   Accordingly, Defendants' motion to dismiss Plaintiff's imprudence claims under Count II is denied.

### B. Count IV

Next, Defendants contend Plaintiff fails to state a claim under Count IV.   In Count IV, Plaintiff alleges Defendants engaged in prohibited transactions with a party in interest (Transamerica), in violation of 29 U.S.C. § 1106(a)(1).   (FAC ¶¶ 199-208).   Plaintiff alleges the Plan engaged in "prohibited transactions" by (1) "lending of money or other extension of credit between the plan and a party in interest" in violation of 29 U.S.C. § 1106(a)(1)(B); (2) "furnishing of goods, services, or facilities between the plan and a party in interest" in violation of § 1106(a)(1)(C); and (3) "transfer to, or use by or for the benefit of a party of in interest, of any assets of the plan" in violation of § 1106(a)(1)(D).   (FAC ¶¶ 202-206).

ERISA § 406 details the types of transactions that are prohibited under § 1106, and "begins with the premise that virtually all transactions *between a plan and a party in interest* are prohibited, unless a statutory or administrative exemption applies."  *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008) (emphasis in original).   ERISA § 408(b) provides a list of statutory and administrative exemptions to § 406(a).  *Id.*

Here, Plaintiff alleges Transamerica is a party in interest, and Defendants do not dispute that.   But Defendants contend Plaintiff's claims fail because (1) revenue sharing is not a prohibited transaction; and (2) "reasonable compensation to a service provider is a legitimate plan expense that can be paid using plan assets per 29 U.S.C. § 1108(b)(2)." (Mot. At 21-22.)  First, Plaintiff argues "revenue sharing amounts cannot be plan assets, and thus § 1106(a) does not apply."  (Opp'n at 23.)   Next, Plaintiff contends it is inappropriate to resolve the issue of reasonable compensation at this stage because the section 408 "exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them,"  (Opp'n at 23) (quoting *Allen v. GreatBanc Tr. Co.*, 835 F. 3d 679, 676 (7th Cir. 2016)), and the plausibility of the allegations of excessive payments means the §1108 exemptions would not apply to Defendants.  (*Id.*)

In response, Defendants first note that Plaintiff relies on a Department of Labor opinion that states revenue-sharing payments are not plan assets, "and that an issue of fact exists *only* when a plaintiff alleges that revenue sharing payments were held in trust for the plan." (Reply Br. at 9) (citing DOL Advisory Opinion 2013-03A, 2013 WL 3546834 (July 3, 2013). Relatedly, Defendants note Plaintiff fails to address "authority that holds revenue sharing does not implicate plan assets." (Reply Br. at 9.) The Court agrees with Defendants. Plaintiff only argues Defendants' defenses to Count IV raise "a prototypical issue of fact that cannot be decided here," (Opp'n at 24), but Plaintiff fails to address the substance of Defendants' arguments.

Moreover, Defendants allege Plaintiff "ignores that the payments were part of the Plan's contract with Transamerica, which cannot be a prohibited transaction." (Reply Br. at 9) (citing *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 125 (3d Cir. 2013)). As such, Defendants contend Plaintiff's claim is "grounded in circular reasoning: the transactions were prohibited because [Transamerica] was a party in interest, and [Transamerica] was a party in interest because it engaged in the prohibited transaction." *See Seller v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 35 (D.D.C. 2018). Plaintiff's allegations fail to detail why these interactions are prohibited, notwithstanding its allegations regarding unreasonable fees, which are covered under Count II. Accordingly, the Court finds Plaintiff fails to state a claim under Count IV for prohibited transactions.

3. Disloyalty Claims under Count I and II

Next, Defendants contend Plaintiff's disloyalty claims in Counts I and II should be dismissed because they are "duplicative of his imprudence claims" and the FAC "does not plausibly allege that Defendants took any actions for the purpose of benefiting themselves or Transamerica at the expense of Plan participants." (Mot. at 22.)

In accordance with the duty of loyalty, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and … for the exclusive purpose of … providing benefits to participants and their beneficiaries[] and defraying reasonable expenses of administering the plan." *White II*, 2017 WL 2352137, at

*14 (quoting 29 U.S.C. § 1104(a)(1)(A)).  The duty of loyalty also "prohibits trustees from 'engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.'"  *Id.* (quoting Rest. (Third) of Trusts § 78 (2007)).

Defendants contend disloyalty allegations must "articulate a specific disloyal action" and fiduciaries do not breach their duty of loyalty because of a potential for a conflict of interest."  (Mot. at 22) (citing *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834–35 (N.D. Cal. 2005)).  Moreover, Defendants contend disloyalty claims require "separate allegations regarding any loyalty breach," and cannot simply "hinge" on prudence-based allegations."  (*Id.*) (citing *Romero v. Nokia, Inc.*, 2013 WL 5692324 at *5 (N.D. Cal Oct. 15, 2013)).  Plaintiff fails to dispute these arguments.  In addition, Plaintiff's claims under Count I and II fail to identify a separate breach of fiduciary duty of loyalty.  In Count I, Plaintiff claims that because of Defendants' alleged violations of the duty of imprudence, and the benefits to Transamerica, they "failed to make Plan investment decisions based solely on the merits of the investment funds and what was in the interests of the participants and beneficiaries of the Plan."  (FAC ¶ 181.)  Similarly, under Count II Plaintiff alleges Defendants paid excessive fees to Transamerica and failed to solicit alternative bids.  (FAC ¶¶ 185-193.)  But Plaintiff fails to specify a separate disloyal action.  Accordingly, Plaintiff's disloyalty claims under Counts I and II are dismissed.

4.  Count III

In Count III, Plaintiff alleges Defendants breached their fiduciary duties by failing to provide disclosures to participants regarding fees, as required by 29 U.S.C. § 1104(a)(1)(A)-(B) and 29 C.F.R. § 2550.404a-5. (FAC ¶¶ 194-198).  Plan fiduciaries must disclose material information to plan participants, consistent with their fiduciary duty of loyalty.  *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 505 F.3d 818, 823–24 (9th Cir. 2007).  The Department of Labor issued a regulation outlining the scope of these disclosure requirements.  *See* 29 C.F.R. § 2550.404a–5.  Under these regulations, the Plan administrator "must take steps to ensure … that such participants and beneficiaries, on a

regular and periodic basis, are made aware of their rights and responsibilities with respect to the investment of assets held in, or contributed to, their accounts and are provided sufficient information regarding the plan, including fees and expenses attendant thereto, to make informed decisions with regard to the management of their individual accounts." *Id.* § 2550.404a–5(a).  This information must be "complete and accurate," *id.* § 2550.404a–5(a), and must include "an explanation of any fees and expenses for general plan administrative services (e.g., legal, accounting, recordkeeping), which may be charged against the individual accounts of participants and beneficiaries."  *Id.* § 2550.404a–5(c)(2)(i)(A).    Investment-related information must also be disclosed, including performance data, benchmarks, and fee and expense information.  *Id.* § 2550.404a–5(d).

Plaintiff contends Defendants failed to meet their duties under these regulations by "(a) failing to adequately disclose the nature of the fees and expenses charged to individual accounts in the Plan in participants' quarterly statements, (b) misrepresenting the actual cost of the administrative services incurred by the Plan on a per-participant basis, and (c) failing to adequately disclose the total amount of compensation paid to Transamerica." (FAC ¶ 196.)  Defendants argue the plan properly disclosed the fees charged to participants because it complied with ERISA's investment fee and administrative fee disclosure regulation.  (Mot. at 23.)

First, Defendants contend they adequately complied with the regulations for investment fee disclosures because they disclosed annual operating expenses.  Though Plaintiff alleges Defendants have a duty to disclose the magnitude of revenue sharing, (FAC ¶ 165), Defendants contend they only needed to disclose the expense ratio.  (Mot. at 23.)  Indeed, plan administrators are not "required to disclose the 'breakdown' of the gross expense ratio associated with each investment option—e.g., the percentage of the total fee that ultimately goes to the trustee as the record-keeper."  *Terraza*, 241 F. Supp. 3d at 1073. Accordingly, Plaintiff's claim for improper disclosure of investment fees is dismissed.

Next, Defendants contend they complied with regulations for administrative fee disclosures because the fees were provided to participants in the Plan in the 2015 Fee

Disclosure and reported to Plaintiff on quarterly statements.  (Mot. at 23-24) (citing FAC, Exs. 2-5.)  The Plan's disclosure stated:

> "The administrative costs include services such as plan administration, recordkeeping, and call center staffing.  The administrative fees to cover these costs will remain the same ($125.00 per year), but the plan administrative expenses will be charged differently.  On a quarterly basis, $31.25 will be deducted as a fixed dollar amount from your account … The actual amounts deducted from your account, as well as a description of the services to which the fees relate will be reported on your quarterly benefit statements."

(FAC, Ex. 2 at 4.)

Plaintiff contends the quarterly benefit statements withheld "information necessary for participants to understand and protect their interests in the Plan,"  (FAC ¶ 165), and as such, fail to include "complete and accurate" information and "a description of the services to which the charges relate." *See* 29 C.F.R.  §  2550.404a-5(b)(1);  §  2550.404a-5(c)(2)(ii)(A).  Plaintiff notes his quarterly statement from April to June 2016 included the following information:  $81,480.56 invested in Transamerica Partners Institutional Core Bond Funds with a net expense ratio of 0.65% (FAC ¶ 124), a "plan service credit" of .50% (FAC, Ex. 2), a charge of $18.45 in "Administrative Fee-Per Account," and $23.06 in "plan credits."  (FAC ¶ 161, Ex. 5.)  Plaintiff contends the disclosures do not define the "Administrative Fee-Per Account." (Opp'n at 22) (citing FAC, Ex. 2 at 4.)  Defendants acknowledge the "Administrative Fee-Per Account" did not sufficiently describe what the fees entailed.  (Mot. at 24, n. 19.)  The regulations require "an explanation of any fees and expenses for general plan administrative services." 29 C.F.R. § 2550.404a–5(c)(2)(i)(A).  Because Defendants did not adequately describe the "Administrative Fee-Per Account" listed in the quarterly statements in their fee disclosures, Plaintiff has adequately stated a claim for failure to provide complete and accurate administrative disclosures under § 2550.404a–5(c)(2)(i)(A).

5. <u>Count V</u>

Finally, Plaintiff alleges in Count V "that certain Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration

of the Plan's assets was delegated, despite the fact that such Defendants knew or should have known that other fiduciaries were failing to manage the Plan in a prudent and loyal manner."   (FAC ¶ 7.)   Defendants contend Plaintiff's claims under this count must be dismissed because they are derivative of the other claims.  (Mot. at 24.)   Accordingly, the claims under this count are dismissed to the extent they rely on Plaintiff's disloyalty claims under Count I and II, claims under Count III related to investment fee disclosures, and claims under Count IV.

Defendants also contend Plaintiff's claims under Count V must be dismissed even if the other claims survive.   To that end, Defendant notes "Plaintiff must allege that the monitoring fiduciary failed to 'review the performance of its appointees at reasonable intervals … to ensure compliance with the terms of the plan and statutory standards'" in order to state a claim.  (Mot. at 24) (quoting *In re Calpine Corp.*, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005)).   Because Plaintiff "does not allege *any* deficiencies in the monitoring process," Defendants contend the remaining claims under Count V must be dismissed.  (*Id.* at 25) (emphasis in original.)

In response, Plaintiff notes the FAC alleges that Defendants ADI and LT LLC "are successors to LT, which had a duty to monitor the appointed fiduciaries that managed the Plan's investment options."  (Opp'n at 24) (citing FAC ¶¶ 211-15.)  Plaintiff contends that the failure to monitor and replace failing fiduciaries "led to the retention of investment options that charged excessive fees and underperformed cheaper alternatives," and thus the allegations "create a reasonable inference that the corporate Defendants failed to monitor those fiduciaries."  (*Id.*) (citing FAC ¶ 214.)  The Court agrees with Plaintiff.  "Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their performance." *Solis v. Webb*, 931 F. Supp. 2d 936, 952–53 (N.D. Cal. 2012) (emphasis in original). Because Plaintiff plausibly alleges claims for breach of duty of prudence under Counts I and II and Count III related to administrative fee disclosures, he alleges plausible claims under Count V.

**E. Leave to Amend**

Generally, leave to amend is granted "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citation omitted). Here, the deficiencies in Plaintiff's disloyalty claims under Count I and II, claims under Count III related to investment fee disclosures, and claims under Count IV could be cured. Accordingly, the Court grants Plaintiff leave to amend.

### IV.

### CONCLUSION AND ORDER

For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's disloyalty claims under Count I and II, Plaintiff's claims under Count III related to investment fee disclosures, and Plaintiff's claims under Count IV. The balance of the motion is denied. Plaintiff may file a Second Amended Complaint within 30 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: June 23, 2020

Hon. Dana M. Sabraw
United States District Judge